# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DEAN MYSLIVECEK, PAUL CAPUTO, CHRISTOPHER CHOW, KEVIN SCHAFFNER, and MICHAEL BUSOVICKI, on behalf of themselves and all others similarly situated, | Case No.: |
| | Hon. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| FCA US LLC, a Delaware corporation, | |
| Defendant. | |

The allegations in this complaint are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel.

## INTRODUCTION

1.     This is a putative class action against FCA US, LLC ("FCA," "Jeep," or "Defendant") on behalf of individuals who purchased or leased any of the following Jeep vehicles equipped with a manual transmission (hereinafter, the "Class Vehicles"):

- 2018-2023 Jeep Wrangler (2 door)

- 2018-2023 Jeep Wrangler Unlimited (4 door)

- 2020-2023 Jeep Gladiator

2.      The clutches and engines are the same or substantially the same in all Class Vehicles.  Every Class Vehicle is equipped with same 3.6L V6 engine that produces an advertised 285 horsepower and 260 lb-ft of torque.  The window sticker on every Class Vehicle specifies it would have a suitable 6-speed manual transmission able to handle the engine's power output.

3.      As described in greater detail below, a clutch is a vital component normally found in the drivetrains of manual transmission vehicles.  In short, the clutch provides a mechanism that couples the engine to the transmission which primarily allows a user to engage and disengage gears in the transmission to move

the vehicle.  A clutch, and its component parts – namely the friction plate and pressure plate – must be designed and manufactured with enough strength to stay engaged with the engine flywheel under normal conditions in order for the engine to transmit power to the ground.  When a clutch is not able to handle the power, the friction plate will start to slip on the flywheel, creating high temperatures.  These high temperatures in turn create a failure condition that causes the vehicle to be unusable.  Additionally, due to the forces, materials, and mechanisms involved, a malfunctioning or incorrectly designed clutch can create dangerous conditions, including fires.  That is precisely what is happening to the Class Vehicles at issue here as a result of the "Clutch Defect."

4.     As FCA has explained, the "Clutch Defect" in the Class Vehicles occurs because "the clutch pressure plate may become overheated through friction, which may lead the pressure plate to fracture.  A fractured pressure plate may crack or fracture the transmission case, allowing heated debris to contact ignition sources on the vehicle, potentially leading to a vehicle fire.  A fractured pressure plate may also lead to a loss of propulsion, or generation of road debris."

5.     The Clutch Defect is a severe safety defect that can not only cause the vehicle to lose power in traffic or other dangerous situations, but also in many instances can cause the vehicle to catch fire or for dangerous debris to be ejected. In fact, the situation is so dangerous that FCA has decided to recall all Class

Vehicles.  The only problem is that FCA's "remedy" is anything but.

6.      FCA has known about this problem for years but has been unable to fix it.  This includes two previous recalls following investigations that resulted in simply replacing the clutch with identical, failure prone units and installing ineffective software. Indeed, FCA recently has issued a third recall, yet no consumers have received the supposed "fix."  Throughout, FCA continued to sell the Class Vehicles as safe, reliable, and fit for their ordinary purpose.  As a result, owners of the Class Vehicles have suffered damages, including, *inter alia*: (1) out-of-pocket expenses to repair or replace failed clutch and damaged parts; (2) costs for future repairs or replacements; (3) sale of their vehicle at a loss; and/or (4) diminished value of their vehicles.

7.      This is not the first putative class action regarding the Clutch Defect. Plaintiffs Dean Myslivecek, Paul Caputo, Christopher Chow, Kevin Schaffner, and Michael Busovicki previously filed an action in this District on February 16, 2022. *See Myslivecek v. FCA US LLC*, 5:21-cv-10346 (E.D. Mich.) (ECF No. 1).  After the plaintiffs filed an amended complaint, Defendant prevailed on a motion to dismiss based in large part on false statements that Jeep's second recall fixed the Clutch Defect and therefore mooted Plaintiffs' claims.

8.      On February 23, 2023, three weeks after Plaintiffs Myslivecek, Schaffner, Chow, and Caputo filed their notice of voluntary dismissal, FCA

announced NHTSA Recall No. 23V-116, a **third** recall related to the Clutch Defect
(the "Third Recall"). The Third Recall explicitly acknowledged that Defendant still
has not fixed the Clutch Defect. To date, Jeep has not been able to remedy this
dangerous Clutch Defect.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C.
§ 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds
the sum or value of $5,000,000 and is a class action in which there are more than
100 Class members, members of the Classes (as defined below) are citizens of
states different from FCA, and greater than two-thirds of the members of the
Classes reside in states other than the states in which FCA is a citizen.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391
because FCA resides in and is headquartered in this district, regularly transacts
substantial business in this district, is subject to personal jurisdiction in this district,
and therefore is deemed to be a citizen of this district. Additionally, FCA has
advertised in this district and has received substantial revenue and profits from its
sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of
the events and/or omissions giving rise to the claims occurred, in part, within this
district.

11.     This Court has personal jurisdiction over FCA because it is

headquartered and has otherwise conducted substantial business in this judicial

district, and intentionally and purposefully placed Class Vehicles into the stream of

commerce within Michigan and throughout the United States.

**PARTIES**

**A.      Plaintiff**

12.      Plaintiff Dean Myslivecek is a citizen of New York and resides in

Spencerport, NY.  Plaintiff Myslivecek owns a 2021 Jeep Wrangler, which he

purchased for his personal or household use in November 2020 from an authorized

Jeep dealer, West Herr Dodge, Chrysler, and Jeep, in Rochester, NY.  Prior to his

purchase, Plaintiff Myslivecek reviewed and relied on the window sticker and other

materials.  He also spoke with a sales representative about the Class Vehicle he

purchased.  None of the sources of information Plaintiff Myslivecek reviewed

disclosed the Clutch Defect.  If there had been such a disclosure, Plaintiff

Myslivecek would not have bought his Class Vehicle, or would have paid less for it.

Plaintiff Myslivecek experienced the Clutch Defect when his Class Vehicle

produced a burning clutch smell during normal operation.  The clutch in Plaintiff

Myslivecek's begain to fail in late September 2023, and completely failed on

September 27, 2023.  Plaintiff Myslivcek brought his vehicle to his authorized Jeep

dealer, West Herr Dodge, Chrysler, and Jeep, in Rochester, NY, the following day.

He was charged a $250 deductible, and did not receive his vehicle back until

November 2, 2023.  The clutch in his purportedly repaired vehicle immediately began to fail again.

13.     Plaintiff Michael Busovicki is a citizen of Michigan and resides in Berkley, MI.  Plaintiff Busovicki owns a 2021 Jeep Wrangler Rubicon, which he purchased for his personal or household use in December 2020 from an authorized Jeep dealer, Szott Auto Group in Highland, MI.  Prior to his purchase, Plaintiff Busovicki reviewed and relied on the window sticker and other materials.  He also spoke with a sales representative about the Class Vehicle he purchased.  None of the sources of information Plaintiff Busovicki reviewed disclosed the Clutch Defect.  If there had been such a disclosure, Plaintiff Busovicki would not have bought his Class Vehicle, or would have paid less for it.  Plaintiff Busovicki's Class Vehicle had the recall performed in March 2021.  To date, Plaintiff Busovicki has only driven his Class Vehicle 16,000 miles in limited circumstances – he has not yet towed, and feels the need to downshift his Jeep whenever he is driving on any incline at highway speeds.

14.     Plaintiff Paul Caputo is a citizen of Florida and resides in Clearwater, FL.  Plaintiff Caputo owns a 2021 Jeep Gladiator, which he purchased for his personal or household use in October 2020 from an authorized Jeep dealer, Johnson Dodge Chrysler Jeep Ram in Bud Lake, NJ.[1]  Prior to his purchase, Plaintiff Caputo

---

[1] At the time of his purchase, Plaitniff Caputo was residing in Hackettstown, NJ.

reviewed and relied on the window sticker and other materials.  He also spoke with

a sales representative about the Class Vehicle he purchased.  None of the sources of

information Plaintiff Caputo reviewed disclosed the Clutch Defect.  If there had

been such a disclosure, Plaintiff Caputo would not have bought his Class Vehicle,

or would have paid less for it.  After having the recall performed on his Class

Vehicle in April 2021, Plaintiff Caputo has experienced a loss of torque in routine

driving conditions requiring him to downshift where he previously did not, and also

noticed faint burning smells.

15.     Plaintiff Christopher Chow is a citizen of California and resides in

San Diego, CA.  Plaintiff Chow owns a 2018 Jeep Wrangler, which he purchased

for his personal or household use in May 2019 from an authorized Jeep dealer, San

Diego Chrysler Dodge Jeep Ram in San Diego, CA.  Prior to his purchase, Plaintiff

Chow reviewed and relied on the window sticker and other materials.  He also

spoke with a sales representative about the Class Vehicle he purchased.  None of

the sources of information Plaintiff Chow disclosed the Clutch Defect.  If there had

been such a disclosure, Plaintiff Chow would not have bought his Class Vehicle, or

would have paid less for it.  Plaintiff Chow experienced the Clutch Defect multiple

times during normal operation, indicated by an intermittent smell of a burnt clutch,

particularly when driving up hills.  Plaintiff Chow has not had the recall performed.

16.     Plaintiff Kevin Schaffner is a citizen of New York and resides in

Cazenovia, NY.  Plaintiff Schaffner owns a 2021 Jeep Gladiator, which he purchased for his personal or household use in January 2021 from an authorized Jeep dealer, Victor Chrysler, Dodge, and Jeep in Victor, NY.  Prior to his purchase, Plaintiff Schaffner reviewed and relied on the window sticker and other materials. He also spoke with a sales representative about the Class Vehicle he purchased. None of the sources of information Plaintiff Schaffner reviewed disclosed the Clutch Defect.  If there had been such a disclosure, Plaintiff Schaffner would not have bought his Class Vehicle, or would have paid less for it.  Within the first 500 miles of ownership, Plaintiff Schaffner experienced the Clutch Defect when the engine compartment filled with smoke and a burning smell coming from the transmission.  Plaintiff Schaffner has also noticed a burning smell at times when 4-wheel-drive is engaged.

**B.    FCA**

17.    Defendant FCA US LLC ("FCA") is a limited liability company organized and existing under the laws of the State of Delaware.  FCA's principal place of business and headquarters is in Auburn Hills, Michigan, in the Eastern District of Michigan.

18.    In January 2021, Fiat Chrysler Automobiles N.V., a Dutch corporation headquartered in London, United Kingdom combined with Peugeot S.A. a French company headquartered in Paris, France to form Stellantis N.V., a

Franco-Italian-American multinational automotive manufacturing corporation headquartered in Amsterdam, Netherlands. FCA US LLC exists as a corporate entity in the United States under Stellantis N.V. Stellantis N.V. generally holds all assets of FCA and has successor liability for the claims at issue in this case.

19.    FCA (sometimes referred to as "Chrysler") is a motor vehicle "Manufacturer" and a licensed "Distributor" of new, previously untitled Jeep brand motor vehicles. FCA's Chrysler brand is one of the "Big Three" American automobile brands. FCA engages in commerce by distributing and selling new passenger cars and motor vehicles under its Jeep brand. Other major divisions of FCA include Ram, Chrysler, Fiat, Mopar- its automotive parts and accessories division, and SRT- its performance automobile division. As of 2015, FCA is the seventh largest automaker in the world by unit production. Stellantis will be the fourth largest automaker in the world following completion of the merger.

20.    FCA's business operations in the United States include the manufacture, distribution, and sale of motor vehicles and parts through its network of independent, franchised motor vehicle dealers. FCA is engaged in interstate commerce in that it sells vehicles through this network located in every state of the United States.

21.    FCA sells its vehicles through FCA franchise dealerships. FCA distributes information, including window stickers, about the Class Vehicles to its

dealers for the purpose of passing that information to consumers.  FCA also

understands that its dealers pass on information from FCA about the characteristics,

benefits, and quality of the Class Vehicles to consumers.  The dealers act as FCA's

agents in selling the Class Vehicles and disseminating information about them to

customers and potential customers.

## TOLLING OF STATUTES OF LIMITATIONS

22.    Any applicable statute(s) of limitations have been tolled by FCA's

knowing and active concealment and denial of the facts alleged herein.  Plaintiffs

and Class members could not have reasonably discovered the true nature of the

defects at issue here, and FCA's role in causing the defects, until shortly before this

class action litigation was commenced.  Indeed, Plaintiffs previously tried to initiate

a class action, and Jeep denied that the Clutch Defect remained an issue until after

that action was dismissed on the basis that their Second Recall purportedly made

Plaintiffs whole.  But as is clear from the Third Recall, Plaintiffs remain damaged.

23.    FCA was and remains under a continuing duty to disclose to Plaintiffs

and the members of the Class the true character, quality and nature of the Class

Vehicles, *i.e.* that the clutch is defective and will require costly repairs, pose safety

concerns, and diminish the resale value of the Class Vehicles.  As a result of the

active concealment by FCA, any and all applicable statutes of limitations otherwise

applicable to the allegations herein have been tolled. Indeed, FCA has continued to

conceal the true character, quality and nature of the Class Vehicles through two prior recalls, both of which it asserted fixed the Clutch Defect. But as acknowledged by the Third Recall, Jeep is still unable to fix the problem.

## PRE-SUIT NOTICE

24. On February 16, 2021, Plaintiff Myslivecek sent via certified mail a notice letter to FCA. Among other information, the letter described the Clutch Defect and provided notice that Plaintiffs intended to commence a lawsuit. The letter further stated that it was "sent on behalf of all similarly situated U.S. owners of Jeep vehicles equipped with a manual transmission, regardless of model year (the 'Class Vehicles')." The letter further stated that it provided notice under California Civil Code § 1782, "any other state-law consumer protection statute requiring pre-suit notice," and to the extent applicable, notice of breach of warranty.

25. Defendant has been provided extensive further notice due to the previously filed action, *Myslivecek v. FCA US LLC*, 5:21-cv-10346 (E.D. Mich.).

26. FCA was also on notice of allegations underlying Plaintiffs' claims as result of the First, Second, and Third Recalls of the Class Vehicles due to the Clutch Defect in 2020, 2021, and 2023 respectively.

## FACTUAL ALLEGATIONS

### A. Manual Transmissions And Clutches

27. Among other components, transmissions are vital in transmitting a

vehicle's engine power to the ground in order to propel the vehicle. The transmission takes the power outputted from an engine and, using different gears, adapts the output speed of the engine (rpm) to match the rotational speed of the driven wheels. The gears, in turn, multiply the torque (power) available at the driven wheel. These principles are similar to that of changing gears on a bicycle.

28.     The most common transmissions outfitted on vehicles are manual and automatic transmissions. This case deals only with vehicles with manual transmissions. Manual transmissions normally use a mechanical linkage (a clutch) operated by the user to engage and disengage the transmission from the engine and a gear selector to select gears manually. The ability to couple and decouple the engine from the transmission is required to be able to shift the transmission gears.

29.     The clutch is normally operated by the user via a third pedal to the left of the brake pedal. When the clutch pedal is pressed *in,* the clutch is *disengaged,* and the user can shift gears because the engine and transmission are decoupled. When the clutch pedal is *not* pressed, the clutch is *engaged* such that engine power is transferred from the engine to the transmission and to the driven wheels.

30.     While engines, clutches, and transmissions have complicated mechanical components, the parts at issue here can be described simply. There are three basic parts: (1) the engine flywheel, (2) the clutch pressure plate, and (3) the clutch friction disc.

31.     The engine outputs power to the flywheel, which is a large spinning

metal disc.  When the clutch is *engage*d, the clutch pressure plate – which is simply

a large spring – presses the clutch friction plate into the flywheel causing friction,

thereby transmitting power between the engine, clutch, and transmission (which are

now coupled and spin together):



32.     When the clutch is *disengaged* the pressure plate is kept from putting

pressure on the friction plate, and the engine is then allowed to spin separately from

the clutch and transmission.



33.     One of the critical design criteria for a clutch is the amount of power that can be transmitted when coupled.  Clutches can be designed to fit the power, weight, and use of a vehicle by varying the size of the friction disc, the strength and size of the pressure plate, and the materials used, among other variables.  All of these design options are ultimately balanced with factors such as cost, packaging, and efficiency.  If the clutch is improperly designed or has deficient characteristics, the clutch friction plate will slip on the engine flywheel and power will be transferred to heat and even fail all together.  This is the case here.

**B.     FCA's First Recall Due To The Clutch Defect**

34.     Since at least late 2019, FCA and their Vehicle Safety and Regulator Compliance ("VSRC") organization has formally investigated the Clutch Defect issue following numerous customer inputs for fire incidents, including scrambles to

incident vehicles and conducting their own lab analysis:

> • On November 27, 2019, the FCA US LLC ("FCA US") Vehicle Safety and Regulatory Compliance ("VSRC") organization opened an investigation as a result of customer inputs for fire incidents on 2018-2020 MY Jeep Wrangler and the 2020 MY Jeep Gladiator vehicles.

35.     On February 25, 2020, FCA US determined, through the VSRC, to conduct a voluntary safety recall of the affected Class Vehicles.  This decision followed the analysis of VSRC's Materials Engineering Lab that "the clutch pressure plate reached 1100 degrees Celsius demonstrating the pressure plate is a competent ignition source:"

> • On February 5, 2020, FCA US VSRC Materials Engineering Lab completed an analysis of the transmission components and determined the clutch pressure plate reached 1100 degrees Celsius demonstrating the pressure plate is a competent ignition source. The supplier duplicated the failed pressure plate demonstrating the pressure plate was not a fire effect.

36.     On March 3, 2020, NHTSA Recall No. 20V-124 was publicly released (the "First Recall").  The First Recall covered all 2018-2020 Jeep Wranglers and all 2020 Jeep Gladiators equipped with manual transmissions.  Using production records, FCA determined that the defective Wranglers were those manufactured between August 23, 2017 and February 13, 2020.  FCA similarly determined that the defective Gladiators were those manufactured between December 21, 2018 and February 20, 2020.  At the time, FCA represented (incorrectly) that only an estimated 1% of Class Vehicles were at risk of the Clutch Defect:

**Population :**

Number of potentially involved : 33,237
Estimated percentage with defect :   1 %

37.     As the First Recall details, the Clutch Defect occurs because "the clutch pressure plate may become overheated through friction, which may lead the pressure plate to fracture.  A fractured pressure plate may crack or fracture the transmission case, allowing heated debris to contact ignition sources on the vehicle, potentially leading to a vehicle fire.  A fractured pressure plate may also lead to a loss of propulsion, or generation of road debris:"

| Description of the Defect : | In some circumstances, the clutch pressure plate may become overheated through friction, which may lead the pressure plate to fracture. A fractured pressure plate may crack or fracture the transmission case, allowing heated debris to contact ignition sources on the vehicle, potentially leading to a vehicle fire. A fractured pressure plate may also lead to a loss of propulsion, or generation of road debris. |
|---|---|

38.     There is no question the Clutch Defect poses a serious safety risk due to propensity for fire and loss of a propulsion when it manifests, which can cause the Class Vehicles to crash without prior warning:

| Description of the Safety Risk : | If the heated clutch components ignite a fuel source, a vehicle fire can result, which increases the risk of occupant injury and injury to persons outside the vehicle, as well as property damage. Also, a cracked or fractured transmission case can generate road debris and/or result in loss of propulsion, which can cause a vehicle crash without prior warning. |
|---|---|

39.     The First Recall also identifies the burnt clutch odor or increased clutch travel as warning signs of the Clutch Defect:

| Identification of Any Warning that can Occur : | In some circumstances, the operator may smell a burnt clutch odor, or have excessive or abnormal clutch pedal travel prior to the failure. |
|---|---|

40.     At the time the First Recall was announced in March 2020, FCA's

remedy was "unknown" because the "remedy action [was then] under

development."  Nonetheless, FCA identified the "Clutch plate and disc" or "Clutch

Kit pressure plate and disc" as components to be replaced in affected Class

Vehicles:

**Description of Remedy :**

| | |
|---|---|
| Description of Remedy Program : | FCA US will conduct a voluntary safety recall on affected vehicles; the remedy action is currently under development.<br><br>FCA US has a longstanding policy and practice of reimbursing owners who have incurred the cost of repairing a problem that subsequently becomes the subject of a field action. To ensure consistency, FCA US, as part of the owner letter, will request that customers send the original receipt and/or other adequate proof of payment to the company for confirmation of the expense. |
| How Remedy Component Differs from Recalled Component : | Part Name: Clutch Kit pressure plate and disc<br><br>Part Description: Clutch plate and disc<br><br>Part Number: 68273845AB,68273845AC<br><br>Part Comment: Remedy unknown |

41.     As is clear from FCA's Second Recall and Third Recall due to the

clutch defect, FCA did not fix the problem and the Class Vehicles continued to

pose a serious risk to occupants and others.

**C.     FCA's Second Recall Due To The Clutch Defect**

42.     Approximately nine months later, on January 28, 2021, FCA

announced NHTSA Recall No. 21V-028, a second recall related to the Clutch

Defect (the "Second Recall").

43.     The Second Recall covers all 2018-2021 Jeep Wranglers equipped

with a manual transmission manufactured between August 23, 2017 and January 22, 2021, as well as all 2020-2021 Jeep Gladiators equipped with a manual transmission manufactured between December 21, 2018 and January 22, 2021:

> The suspect period began on August 23, 2017, when production of Jeep Wrangler vehicles equipped with manual transmissions started, and concluded on January 22, 2021, when shipment of Jeep Wrangler vehicles with manual transmissions ended.
>
> The suspect period began on December 21, 2018, when production of Jeep Gladiator vehicles equipped with manual transmissions started, and concluded on January 22, 2021, when shipment of Jeep Gladiator vehicles with manual transmissions ended.

44.    For the Second Recall, FCA increased the "[e]stimated percentage [of Class Vehicles] with defect" from 1% of 33,327 Class Vehicles **to 100% of 42,887 Class Vehicles**:

**Population :**

Number of potentially involved : 42,887
Estimated percentage with defect : 100 %

45.    The Second Recall confirms that every Class Vehicle is subject to the Clutch Defect in that "the clutch pressure plate may become overheated through friction, which may lead the pressure plate to rapidly fracture:"

> Description of the Defect :    In some circumstances, the clutch pressure plate may become overheated through friction, which may lead the pressure plate to rapidly fracture. When a pressure plate fractures, it may result in cracks or holes in the transmission case, allowing heated debris to be expelled from the transmission case.

46.    The Second Recall further confirms that there remains no question that the Clutch Defects continue to pose a serious safety risk to occupants and others:

| Description of the Safety Risk : | Heated debris expelled from the transmission case may come in contact with combustible materials in the vehicle, potentially leading to a fire. A fire can result in increased risk of occupant injury and injury to persons outside the vehicle. In addition, this condition may lead to generation of road debris, which may be a hazard to other drivers. |
|---|---|

47.    As is clear from FCA's Third Recall due to the Clutch Defect, FCA did not fix the problem and the Class Vehicles continued to pose a serious risk to occupants and others.  The safety risk remains.

| Description of the Safety Risk : | Heated debris expelled from the transmission bellhousing may come in contact with an ignition source in the vehicle or surrounding area, potentially leading to a fire. A fire can result in increased risk of occupant injury and injury to persons outside the vehicle. |
|---|---|

## D.    Plaintiffs' Previous Suit Against FCA and FCA's False Claims

48.    In February 2021, Plaintiffs filed suit against FCA in Michigan federal court for issues arising from the Clutch Defect (the "Previous Suit".)  In its Motion to Dismiss, FCA argued (and provided testimony under oath) that Plaintiff's claims were prudentially moot due to the Second Recall and offer for free repair.  Acting on belief that the Second Recall would properly fix the issue and FCA would provide free repair, Plaintiffs voluntarily dismissed their claims. As evidenced by the Third Recall and numerous consumer complaints following the Second recall, Defendant's claims were false.

49.    A mere twenty days after Plaintiffs voluntarily dismissed their claims based on FCA's false statement of the issue being fixed with the Second Recall, a Third Recall was issued.  To be sure, FCA knew that the remedy offered by the

Second Recall was insufficient when they argued that Plaintiffs' claims were moot. Plaintiffs relied on FCA's false statements. The Court relied on FCA's false statements. Even after a Third Recall consumers are still not being offered a proper repair for their unreasonably dangerous vehicles. See [cite below]

50.    FCA knew and intentionally misled the Court, or at least remained willfully blind to the fact that the remedies offered in the Second Recall were insufficient. Though Plaintiffs acted on belief that the Second Recall was insufficient, they took FCA's sworn-to-be-true statements as such in the Previous Suit. FCA was able to escape liability by lying to Plaintiffs and the Court. Though FCA may try to offer the same prudential mootness argument as they did in the Previous Suit, we now know it to be a farse. FCA has never offered an adequate fix to render Plaintiffs' claims moot and the same is true of the Third Recall.

**E.    FCA's Third Recall Due To The Clutch Defect**

51.    Approximately two years after the Second Recall, on February 23, 2023, FCA announced NHTSA Recall No. 23V-116, a third recall related to the Clutch Defect (the "Third Recall").

52.    The Third Recall covers all 2018-2023 Jeep Wranglers equipped with a manual transmission manufactured between August 23, 2017 and February 16, 2023, as well as all 2020-2023 Jeep Gladiators equipped with a manual transmission manufactured between December 21, 2018 and February 16, 2023:

The suspect period began on August 23, 2017, when production of Jeep Wrangler vehicles equipped with manual transmissions started, and ended on February 16, 2023, when FCA US LLC ("FCA US") suspended shipment of vehicles with manual transmissions. The suspect period was determined using field data, engineering change and production records.

53.     For the Third Recall, FCA noted the "[e]stimated percentage [of Class Vehicles] with defect" as **100% of 69,201 Class Vehicles**.

**Population :**

Number of potentially involved : 69,201
Estimated percentage with defect : 100 %

54.     The Third Recall confirms, just like the prior recalls, that every Class Vehicle is subject to the Clutch Defect in that "the clutch pressure plate may become overheated through friction, which may lead the pressure plate to rapidly fracture":

Description of the Defect :   In some circumstances, the clutch pressure plate may become overheated through friction, which may lead the pressure plate to rapidly fracture. When a pressure plate fractures, it may result in cracks or holes in the transmission case, allowing heated debris to be expelled from the transmission case.

55.     The Third Recall further confirms that there remains no question that the Clutch Defects continue to pose a serious safety risk to occupants and others:

Description of the Safety Risk :   Heated debris expelled from the transmission bellhousing may come in contact with an ignition source in the vehicle or surrounding area, potentially leading to a fire. A fire can result in increased risk of occupant injury and injury to persons outside the vehicle.

## F.     FCA's Knowledge Of The Clutch Defect

56.     Design and specification tolerances of clutches and engines is a well

understood relationship.  FCA must have anticipated the Clutch Defect from the

moment it decided on the engine output and clutch specification, and at the least

from the moment it put the feature on the market.  FCA also would have known

about the defect through sources not available to Plaintiffs and Class members,

including, but not limited to: pre-production testing, pre-production design failure

mode and analysis data, production design failure mode and analysis data, early

consumer complaints made exclusively to FCA's network of dealers and directly to

FCA, aggregate warranty data compiled from FCA's network of dealers, testing

conducted by FCA in response to consumer complaints, and repair order and parts

data received by FCA from its network of dealers and suppliers.

57.    In addition to their own investigations, FCA must have gained

knowledge of the Clutch Defect and consumers' dissatisfaction with the First,

Second, and Third recalls and remedies.

58.    For many years, FCA also would have been aware of customer

complaints about the Clutch Defect's existence and fires, and the insufficiency of

their recall as a result of online reputation management (or "ORM") efforts.  ORM

is now a standard business practice among most major companies and entails

monitoring consumer forums, social media and other sources on the internet where

consumers can review or comment on products.  "Specifically, [online] reputation

management involves the monitoring of the reputation of an individual or a brand

on the internet, addressing content which is potentially damaging to it, and using

customer feedback to try to solve problems before they damage the individual's or

brand's reputation."[2]  The growth of the internet and social media, along with the

advent of reputation management companies, has led to ORM becoming an integral

part of many companies' marketing efforts.

59.    For many years, owners have been complaining about the Clutch

Defect on Jeep enthusiast websites like jlwranglerforums.com.  FCA would have

learned about these complaints in connection with its ORM efforts. The unusually

high number of consistent complaints spanning many years would have put FCA on

notice of the Clutch Defect.  Examples are quoted below, but many more are

available online. For instance, a thread started in March of 2020 now spans over

100 pages on jlwranglerforums.com.[3]  Some posts include:

- March 2020: "Anyone know at this point if it is still safe to drive?
  Someone posted pictures of pieces shooting through their engine. Just
  trying to figure out. Lucky for me, I have another vehicle to drive if I
  need too. As a note, I have smelt the burning smell coming from the
  clutch, and thought it was because it was new. Now, I am beginning to

---

[2]https://en.wikipedia.org/wiki/Reputation_management#Online_reputation_manage
ment.
[3] https://www.jlwranglerforums.com/forum/threads/clutch-recall-fca-w12-20v-124-
on-2018-2020-jl-manuals-overheating-clutch-pressure-plate.47887/.

wonder."[4]

> o <u>March 11 Response to post above</u>:  "I'm interested to know if it
>   is safe to drive as well. Like you, I'm fortunate to have another
>   car to drive."

- <u>April 2020</u>:  "Waiting an unknown amount of time is problematic to
  me by itself. Then, there is the possibility that they may not have a
  reason to open the bell housing, and choose to shield components from
  the supersonic pieces of a fractured pressure plate. I live in an area
  with a lot of hills and I know my clutch slips when it isn't supposed to.
  I'm trying to get ahead of the issue, and FCA isn't helping."[5]

- <u>June 2020</u>: "New 2020 JL with 505 miles total clutch failure driving in
  3rd on residential street. Clutch felt a little loose right off the dealers
  lot to both me and my wife, we've driven standards for >100 years
  between us, this is our 4th Wrangler. Service manager at first tried to
  blame it on our driving, never acknowledged recall until we asked
  (supposedly fix done before we bought it) FCA warranted repair, we
  are taking it to another dealer to check out. Hope yall have better

---

[4] https://www.jlwranglerforums.com/forum/threads/clutch-recall-fca-w12-20v-124-on-2018-2020-jl-manuals-overheating-clutch-pressure-plate.47887/post-1050046.
[5] https://www.jlwranglerforums.com/forum/threads/clutch-recall-fca-w12-20v-124-on-2018-2020-jl-manuals-overheating-clutch-pressure-plate.47887/post-1093131.

luck."[6]

- <u>Aug. 2020</u> "This just happen to my jeep thank god no fire. They are investigating it. It did exactly as recall said it would. I also notice burn smell at short times and thought it was because it was new. Should not even be investigated in my view."[7]



---

[6] https://www.jlwranglerforums.com/forum/threads/clutch-recall-fca-w12-20v-124-on-2018-2020-jl-manuals-overheating-clutch-pressure-plate.47887/post-1147954.
[7] https://www.jlwranglerforums.com/forum/threads/clutch-recall-fca-w12-20v-124-on-2018-2020-jl-manuals-overheating-clutch-pressure-plate.47887/post-1209198.



60.    Moreover, owners of the Class Vehicles have complained about the

Clutch Defect to the National Highway Traffic Safety Administration NHTSA.

61.    Since 2018 at the latest, Defendant has constantly tracked the NHTSA

database to track reports concerning problems with its vehicles, including

problems with the clutches in Class Vehicles.  From this source, Defendant knew

that vehicles were experiencing unusually high levels of problems with the manual

---

[8] Notably, this picture shows a hole in the floorboard where hot debris entered the passenger cabin.  The poster warned other owners:  "Take it in make sure your on list for repair and don't drive or they will blame you."  As the poster further explained, " "So they did honor the recall.  Please don't drive till fixed my granddaughter was in passenger seat where hole is floor matte saved her from injury.  I'm still real upset it was sold like that to me. Came from California they stated they fixed it in May after they acknowledged the recall.  Two grandsons 5 and 6 in back and 11 year old in front.  I have seen them burned to ground in searching.". *See* https://www.jlwranglerforums.com/forum/threads/clutch-recall-fca-w12-20v-124-on-2018-2020-jl-manuals-overheating-clutch-pressure-plate.47887/post-1215037.

transmissions due to the Clutch Defect.

62.    Defendant would have monitored and been aware of these complaints because Federal law requires automakers to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data.  *See TREAD Act*, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

63.    Automakers also have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements.  *Id*.  Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id*.

64.    Defendant also monitors NHTSA complaints, knowing that it is often the case that for every person who complains about a defect, there are many other people who experienced the same defect but who do not complain to NHTSA. Thus, monitoring NHTSA complaints can serve as an early warning system for car defects.

65.    Defendant also knew or should have known about the Clutch Defect because of the similarity of complaints.  The fact that so many customers made similar complaints indicates that the complaints were not the result of user error or

anomalous incidents, but instead a systemic problem with the Class Vehicles.
Here, the reports and complaints from consumers were similar enough to put
Defendant on notice that the incidents described were the result of a defect, and
that the Class Vehicles were experiencing unusually high levels of complaints
about the Clutch Defect.

66.     The complaints to NHTSA listed below are examples only.  They are
not the universe of complaints Defendant would have seen.

*2018 Jeep Wrangler (2 door)*



May 15, 2018 NHTSA ID NUMBER: 11093877
**Components: POWER TRAIN**

**NHTSA ID Number:** 11093877

**Incident Date** May 7, 2018

**Consumer Location** TETON VILLAGE, WY

**Vehicle Identification Number** 1C4HJXFG5JW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | VEHICLE WAS PARKED AND WOULD NOT ENGAGE INTO A GEAR. I TURNED OFF AND RESTARTED AND WAS ABLE TO GET INTRO GEAR, AND ENGINE LIGHT WAS ON, IT WOULD NOT GET OUT OF 6TH GEAR, BROUGHT TO DEALER AND THEY SAID TRANSMISSION NEEDED A RE FLASH, AND IT WAS GOOD, NEXT DAY IT WOULD NOT GO INTO GEAR, I SHIFTED TRANSFER CASE FROM 2H TO 4H BACK TO 2H AND ENGINE LIGHT WAS ON, I WAS ABLE TO DRIVE TO DEALERSHIP. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

I WAS TOLD THAT THEY ARE PUTTING IN A NEW
TRANSMISSION AND AM WAITING FOR COMPLETION.

I DO NOT FEEL SAFE WITH THIS VEHICLE AND AM LOOKING
FOR A BUY BACK FROM MANUFACTURE, VEHICLE ONLY HAS
1,500 MILES ON IT. *TT

UPDATED 9/20/18*JB

### October 15, 2018 NHTSA ID NUMBER: 11140284
## Components: STRUCTURE, ENGINE, POWER TRAIN

**NHTSA ID Number:** 11140284

**Incident Date** October 15, 2018

**Consumer Location** NEWTOWN, PA

**Vehicle Identification Number** 1C4AJWBG9JL****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | VEHICLE DRIVEN FO APPROXIMATELY 30 MINUTES WITH NO APPARENT ISSUES. AVERAGE SPEED ABOUT 40 TO 50 MPH. DRIVER SMELLED A CONCERNING ODOR, PULLED INTO A PARKING, GOT OUT OF VEHICLE AND NOTICED A FLAME. SHE CALLED 911AND VEHICLE BECAME FULLY ENGULFED. VEHICLE IS A TOTAL LOSS. AFTER SOME RESEARCH, IT APPEARS THIS IS AN ISSUE WITH JEEP. |
| FIRE | Yes | |
| INJURIES | 0 | |
| DEATHS | 0 | |

### April 9, 2019 NHTSA ID NUMBER: 11194837
## Components: POWER TRAIN

**NHTSA ID Number:** 11194837

**Incident Date** April 3, 2019

**Consumer Location** WYNANTSKILL, NY

**Vehicle Identification Number** 1C4HJXEN5JW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | PURCHASED NEW 2018 JEEP WRANGLER ON MONDAY APRIL 1,2019. NOTICED VEHICLE WAS LEAKING IN DRIVEWAY LESS THEN 24 HOURS AFTER PURCHASE. CALLED DEALER AND RETURNED VEHICLE FOR EVALUATION OF LEAK. ISSUE- FACTORY DEFECTIVE TRANSMISSION. HAD NOT BEEN THOROUGHLY INSPECTED PRIOR TO DELIVERY AND WAS DELIVERED TO US WITH FACTORY DEFECTIVE TRANSMISSION DUE TO CRACKED CASING. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**April 22, 2019** NHTSA ID NUMBER: 11202895

## Components: POWER TRAIN

**NHTSA ID Number:** 11202895

**Incident Date** November 16, 2018

**Consumer Location** GREENLAWN, NY

**Vehicle Identification Number** 1C4HJXEG0JW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | MANUAL TRANSMISSION STARTED POPPING OUT OF 2ND GEAR AROUND 9500 MILES. TRANSMISSION HAD TO BE REPLACED. AT 11,500 CREEKING NOISE WHEN TURNING LEFT/RIGHT. HAD TO HAVE REAR AXLES & REAR DIFFERENTIAL REPLACED. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product** ▾

February 9, 2020 NHTSA ID NUMBER: 11307999 

**Components: FUEL/PROPULSION SYSTEM, POWER TRAIN, UNKNOWN OR OTHER**

**NHTSA ID Number:** 11307999

**Incident Date** December 21, 2019

**Consumer Location** SPRING GROVE, PA

**Vehicle Identification Number** 1C4HJXDG6JW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | VEHICLE WAS BEING DRIVEN APPROX 30MPH ON A CITY ROAD WHEN A LOUD BANG WAS HEARD. IMMEDIATELY PULLED OVER AND LUCKILY A STRANGER FOLLOWING BEHIND QUICKLY ESCORTED THE DRIVER OUT AS THE VEHICLE COMPLETELY WENT UP IN FLAMES. METAL CHUNKS AND PIECES COULD BE HEARD FALLING UNDERNEATH THE VEHICLE. UPON CLOSER INSPECTION THE TRANSMISSION HAD COMPLETELY EXPLODED AND EJECTED THE CLUTCH ASSEMBLY SHEARING THE INPUT SHAFT AND RUPTURING A FUEL LINE. THE VEHICLE WAS A COMPLETE TOTAL LOSS WITH FLAMES IMMEDIATELY ENTERING THE PASSENGER CABIN IN SECONDS. IF IT WAS NOT FOR A BRAVE BYSTANDER SERIOUS INJURY OR DEATH WOULD HAVE OCCURRED. THIS IS A NEW TRANSMISSION INTRODUCED IN THE NEW JL WRANGLER AND GLADIATOR AND HAS BEEN HAPPENING MORE AND MORE. ITS A SERIOUS SAFETY ISSUE THAT JEEP REFUSES TO LOOK INTO AND NEEDS TO BE INVESTIGATED IMMEDIATELY. TRANSMISSION EXPLOSION TO THIS DEGREE NOT ONLY CAN RESULT IN A FIRE BUT ALSO METAL PROJECTILES HITTING BYSTANDERS AND COMING THROUGH THE FLOOR BOARDS AND POSSIBLY RESULTING IN INJURY OR DEATH. IF YOU ARE READING THIS AND HAVE A MANUAL JEEP WRANGLER HAVE IT CHECKED IMMEDIATELY! THIS WAS A COMPLETELY UNKNOWN PROBLEM SHOWING NO SYMPTOMS WHATSOEVER.*JB |
| FIRE | Yes | |
| INJURIES | 0 | |
| DEATHS | 0 | |

September 3, 2020 NHTSA ID NUMBER: 11353085 ⊖

**Components: POWER TRAIN**

**NHTSA ID Number:** 11353085

**Incident Date** July 5, 2020

**Consumer Location** TOBYHANNA, PA

**Vehicle Identification Number** 1C4BJWEG1JL****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | THE CLUTCH BROKE INTO PIECES AS I WAS DRIVING ON THE HIGHWAY. THE JEEP BARELY REACHED 50,000 MILES. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |



**September 8, 2020** NHTSA ID NUMBER: 11353833

**Components: STRUCTURE, ELECTRICAL SYSTEM, POWER TRAIN**

**NHTSA ID Number:** 11353833

**Incident Date** September 30, 2019

**Consumer Location** MERRITT ISLAND, FL

**Vehicle Identification Number** 1C4HJXEG1JW****

**Summary of Complaint**

| CRASH | No | WHILE MY 16-YEAR-OLD DAUGHTER AND I WERE DRIVING ON THE FL 528/BEACHLINE EXPRESSWAY THE ENTIRE CLUTCH PRESSURE PLATE ASSEMBLY EXPLODED OFF MY VEHICLE. FLUIDS DRAINED AND IGNITED. THE ENTIRE VEHICLE WAS BURNED TO ASHES. THE FULL ACCIDENT INVESTIGATION REPORT IS INCLUDED IN THE UPLOAD. |
|---|---|---|
| FIRE | Yes | |
| INJURIES | 0 | |
| DEATHS | 0 | |



**August 5, 2020** NHTSA ID NUMBER: 11343495

**Components: POWER TRAIN**

**NHTSA ID Number:** 11343495

**Incident Date** May 26, 2020

**Consumer Location** VENTURA, CA

**Vehicle Identification Number** 1C4HJXFG1JW****

**Summary of Complaint**

| CRASH | No | I WAS NOTIFIED OF A SAFETY RECALL ON MY 2018 JEEP WRANGLER BY THE NHTSA BACK IN MAY OF 2020. I CALLED MY DEALERSHIP (CROWN CHRYSLER AND DODGE) TO SCHEDULE THE REPAIR AT THE END OF MAY. I WAS TOLD THEY WERE GOING TO ORDER THE NECESSARY PARTS TO FIX THE ISSUE AND WOULD CALL ME BACK. I NEVER RECEIVED A TELEPHONE CALL BACK FROM THEM, EVEN AFTER I CALLED BACK SEVERAL MORE TIMES OVER THE COURSE OF 3 1/2 MONTHS, TRYING TO GET THIS SAFETY RECALL FIXED. THEY ARE REFUSING TO RETURN CALLS ON THIS MATTER, REFUSING TO PERFORM THE RECALL FIX AND REFUSING TO TAKE A WRITTEN COMPLAINT FROM ME OVER THE MATTER. NOW WHEN I CALL THEM ASKING FOR AN APPOINTMENT TO FIX THE RECALL, THEY SIMPLY HANG UP ON ME. PER THIS SAFETY RECALL, MY VEHICLE HAS THE POTENTIAL TO CATCH FIRE WHILE BEING DRIVEN, PUTTING MYSELF AND FAMILY IN DANGER. |
|---|---|---|
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |



**January 11, 2021** NHTSA ID NUMBER: 11387566

**Components: POWER TRAIN**

**NHTSA ID Number:** 11387566

**Incident Date** December 31, 2020

**Consumer Location** BROOKLYN, NY

**Vehicle Identification Number** 1C4GJXAG4JW****

**Summary of Complaint**

| CRASH | No |
|---|---|
| FIRE | Yes |
| INJURIES | 0 |
| DEATHS | 0 |

TL* THE CONTACT CALLED ON BEHALF OF HIS CLIENT WHO OWNED 2018 JEEP WRANGLER. THE CONTACT STATED AFTER THE CLIENT PURCHASED THE VEHICLE AND DROVE OFF THE LOT, WHEN HE SAW SMOKE EXITING THE HOOD. THE CLIENT WAS ABLE TO PARK SAFELY ON THE SIDE OF THE ROAD AND EXIT THE VEHICLE. THE CLIENT ALSO STATED HE VEHICLE CAUGHT FIRE. THE FIRE DEPARTMENT WAS ABLE TO EXTINGUISH THE FIRE. THE FIRE DEPARTMENT AND POLICE FILED A REPORT. THE VEHICLE WAS NOT DRIVABLE AND WAS DEEMED TOTAL LOSS FROM THE INSURANCE COMPANY. THE CLIENT DID NOT HAVE ANY INJURIES. THE CLIENT INFORMED THE DEALER REGARDING TO THE FAILURE. THE CONTACT STATED UPON INVESTIGATION, THE VIN WAS ASSOCIATED TO NHTSA CAMPAIGN NUMBER: 20V124000 (POWER TRAIN). THE MANUFACTURER HAD BEEN INFORMED OF THE FAILURE. THE FAILURE MILEAGE WAS 36,033.



**March 14, 2021** NHTSA ID NUMBER: 11402923

**Components: POWER TRAIN**

**NHTSA ID Number:** 11402923

**Incident Date** February 22, 2020

**Consumer Location** WALPOLE, MA

**Vehicle Identification Number** 1C4HJXFG3JW****

**Summary of Complaint**

| CRASH | No |
|---|---|
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

MY JEEP HAS A CLUTCH BURNING SMELL. THEY RECALLED IT LAST YEAR AND SAID PROBLEM FIXED. STILL HAVE BURNING CLUTCH SMELL AND NOW ANOTHER RECALL FOR THE SAME PROBLEM

**March 14, 2021** NHTSA ID NUMBER: 11402813

## Components: STRUCTURE, ENGINE, POWER TRAIN

**NHTSA ID Number:** 11402813

**Incident Date** March 13, 2021

**Consumer Location** ROY, UT

**Vehicle Identification Number** 1C4HJXFG7JW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | WAS DRIVING ON THE FREEWAY WITH MY WIFE AND FIVE YR |
| FIRE | Yes | OLD SON WHEN WE HEARD A LOUD POP UNDERNEATH OUR |
| | | 2018 JEEP WRANGLER AND INSTANTLY SAW A TRAIL OF |
| INJURIES | 0 | SMOKE BEHIND US. WE IMMEDIATELY PULLED OVER TO FIND |
| | | TRANSMISSION GUILD GUSHING FROM UNDERNEATH WITH |
| DEATHS | 0 | TONS OF SMOKE AS WELL. WE WERE HOPING THE SMOKE |

WAS PROBABLY JUST FROM FLUID ON THE MANIFOLD BUT WE
SMALL FLASHES OF FIRE STARTING AT THE TRANSMISSION
AND CLUTCH AREA. I QUICKLY GRABBED MY SON SITTING IN
BACK AND WE JUMPED OVER THE CONCRETE BARRIER ON
THE SIDE AND RAN AWAY FROM THE JEEP AS IT QUICKLY
BECAME ENGULFED. IT STILL HAD THE TEMP TAGS HAVING
ONLY HAD IT THREE WEEKS. IT WAS A 2018 WITH 15K MILES.

**June 10, 2022** NHTSA ID NUMBER: 11468685

## Components: POWER TRAIN

**NHTSA ID Number:** 11468685

**Incident Date** June 4, 2022

**Consumer Location** FOREST HILL, MD

**Vehicle Identification Number** 1C4HJXDG0JW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | The contact owns a 2018 Jeep Wrangler. The contact stated |
| | | while driving approximately 48 MPH, there was a burning rubber |
| FIRE | No | odor and a loud popping sound coming from the vehicle. The |
| | | vehicle lost motive power and stalled. The contact stated that |
| INJURIES | 0 | Roadside Assistance was called; while the vehicle was being |
| | | raised up on the tow truck fuel started leaking from a damaged |
| DEATHS | 0 | fuel line. The vehicle was towed to the local dealer who |

diagnosed that the clutch plate had malfunctioned and came
apart creating a hole in the bell housing and damaging the fuel
lines. The contact was informed that the transmission, clutch
assembly, and fuel lines needed to be replaced. The vehicle was
not yet repaired. The contact indicated that the vehicle was
previously serviced under the NHTSA campaign 20V124000
(Power Train) for the same failure. The failure mileage was
53,000.

**January 5, 2023** NHTSA ID NUMBER: 11500277

**Components: POWER TRAIN, UNKNOWN OR OTHER**



**NHTSA ID Number:** 11500277

**Incident Date** January 5, 2023

**Consumer Location** SANDOWN, NH

**Vehicle Identification Number** 1C4HJXDG5JW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | This vehicle has undergone two recalls for an issue involving the clutch and other parts in the same vicinity blowing apart, shooting out like a grenade, and causing catastrophic damage to the transmission, hoses, and whatever else might be in the way of the projectiles. This happened to me after I bought the car used, with very low mileage, and still under power train warranty. The dealer balked at first and tried to blame my tires until I mentioned the recalls. They then fixed it under the power train warranty. No less than 2 weeks later the same exact issue occurred yet again! (I had been nowhere near the clutch pedal and had not shifted for quite some time during either occurance) I pulled over immediately and shut down because I knew what had happened. It felt exactly the same. Now the dealership is insisting this isn't the case and that I get my auto insurance carrier involved. Simply because it projected a different way!!!!! I have been driving a manual transmission for almost 30 years now and have NEVER had any kind of issues in the past with any vehicles I have driven. This is ridiculous! Does someone have to lose their life before anything real is done????? |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**May 23, 2023** NHTSA ID NUMBER: 11523469

**Components: POWER TRAIN**



**NHTSA ID Number:** 11523469

**Incident Date** May 23, 2023

**Consumer Location** SHELBY, NC

**Vehicle Identification Number** 1C4HJXDG1JW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | The clutch on my jeep is acting up and there is a recall for it. But Jeep states they have no fix and are not able to tell me when they will come up with one. I feel they should just let aftermarket companies replace their defective clutches since they aren't really worried about the few folks with clutch issues. So currently I am driving a ticking timebomb. Once my transmission gets hot from the clutch it will cause a fire which Jeep is all aware of. This is a major safety issue. Imagine a car catching fire while driving on the highway. That would cause a massive pile up for sure. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**June 8, 2023** NHTSA ID NUMBER: 11526101

## Components: POWER TRAIN

⊖

NHTSA ID Number: 11526101

Incident Date November 19, 2022

Consumer Location Unknown

Vehicle Identification Number 1C4HJXDG1JW****

Summary of Complaint

| CRASH | No |
|---|---|
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

The contact owns a 2018 Jeep Wrangler. The contact stated while driving approximately 35 MPH up a highway ramp, the vehicle started to lose motive power. The contact stated that he was manually shifting the vehicle from second gear to third gear. The contact was able to shift the vehicle into fourth gear. The contact stated that he had heard an abnormal grinding sound after releasing the clutch pedal. The contact stated no warning light was illuminated. The vehicle was taken to a local dealer who was unable to schedule a diagnostic test. The contact retrieved the vehicle from the dealer and stated that the failure had become a recurring failure. The contact took the vehicle to an independent mechanic who diagnosed the vehicle and determined that the clutch pressure plate needed to be replaced. The mechanic advised the contact that there was a recall for the year, make and model for the pressure plate. The vehicle was repaired. The contact received notification of NHTSA Campaign Number: 23V116000 (Power Train) however, the part to do the recall repair was unavailable. The contact attempted to seek reimbursement but was advised by the manufacturer that reimbursement was pending a remedy being available. The contact stated that the manufacturer had exceeded a reasonable amount of time for the recall repair. The manufacturer was made aware of the issue. The failure mileage was approximately 49,000. VIN tool confirms parts not available.

**June 16, 2023** NHTSA ID NUMBER: 11527372

## Components: POWER TRAIN

⊖

NHTSA ID Number: 11527372

Incident Date March 15, 2023

Consumer Location Unknown

Vehicle Identification Number 1C4GJXAGXJW****

Summary of Complaint

| CRASH | No |
|---|---|
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

The contact owns a 2018 Jeep Wrangler. The contact stated that while driving at 45 MPH, she smelled a burning odor inside the cabin of the vehicle and the vehicle experienced abnormal clutch engagement while shifting gear. The vehicle was taken to the dealer, who related the failure to NHTSA Campaign Number: 23V116000 (Power Train). The vehicle was repaired at the contact's expense. The manufacturer was notified of the failure and a case was opened. The contact stated that the reimbursement claim was denied. The contact was informed that because the permanent remedy was not yet to be developed, the vehicle was possibly repaired with a defective part. The failure mileage was 33,000.

### 2019 Jeep Wrangler (2 door)



**March 11, 2019** NHTSA ID NUMBER: 11185949
**Components: POWER TRAIN**

**NHTSA ID Number:** 11185949

**Incident Date** March 5, 2019

**Consumer Location** BOWIE, MD

**Vehicle Identification Number** 1C4HJXFG4KW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | WHILE DRIVING TO WORK HAD PROBLEMS WITH ENGINE REVVING TRYING TO SHIFT THERE WAS A LOUD BANG, PULLED OFF THE ROAD, STARTED SEEING SMOKE COME FROM THE VEHICLE THEN WAS ENGULFED IN FLAMES AND BURNED COMPLETELY UP. THERE IS A COMPLAINT WITH FCA CASE NUMBER 58132542 THE VEHICLE WAS TRAVELING AT 40 MPH ON 295 PARKWAY WHEN THE PROBLEM STARTED. I DID NOT TAKE ANY PICTURES THERE IS A POLICE REPORT IF NEEDED. THE VEHICLE HAD ONLY BEEN IN MY POSITION SENSE 26 JAN 2019 WITH ONLY 1000 MILES ON IT WHEN IT HAD A CATASTROPHIC FAILURE THAT RESULTED JEEP TOTALLY BURNING UP. *DT*JB |
| FIRE | Yes | |
| INJURIES | 0 | |
| DEATHS | 0 | |



**March 15, 2020** NHTSA ID NUMBER: 11318152
**Components: POWER TRAIN**

**NHTSA ID Number:** 11318152

**Incident Date** December 31, 2019

**Consumer Location** BLYTHEWOOD, SC

**Vehicle Identification Number** 1C4GJXAG6KW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | WHILE DRIVING UP A MOUNTAIN ROAD REQUIRING UP AND DOWN SHIFTING THE CLUTCH OVER HEATED. IT WAS NOT THE BRAKES SINCE WE I WAS CLIMBING. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**March 12, 2021** NHTSA ID NUMBER: 11402551

## Components: POWER TRAIN



**NHTSA ID Number:** 11402551

**Incident Date** January 1, 2021

**Consumer Location** HACKETTSTOWN, NJ

**Vehicle Identification Number** 1C4GJXAG8KW****

**Summary of Complaint**

| CRASH | No |
|---|---|
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

TL* THE CONTACT OWNS A 2019 JEEP WRANGLER. THE CONTACT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 21V028000 (POWER TRAIN) HOWEVER, THE PART TO DO THE RECALL REPAIR WAS UNAVAILABLE. THE MANUFACTURER WAS CONTACTED AND CONFIRMED THAT THE PART WAS NOT YET AVAILABLE. THE CONTACT STATED THAT THE MANUFACTURER EXCEEDED A REASONABLE AMOUNT OF TIME FOR THE RECALL REPAIR. THE LOCAL DEALER WAS NOT NOTIFIED. VIN TOOL CONFIRMS PARTS NOT AVAILABLE.

**December 30, 2022** NHTSA ID NUMBER: 11499565

## Components: POWER TRAIN

**NHTSA ID Number:** 11499565

**Incident Date** December 30, 2022

**Consumer Location** LEBANON, MO

**Vehicle Identification Number** 1C4HJXDG5KW****

**Summary of Complaint**

| CRASH | No |
|---|---|
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

I have had both w12 & y07 recalls done and didn't have any problems with my clutch before then, now my clutch is making a strange noise and slipping. A software update to degrade power to my engine doesn't fix a clutch problem. Recalls are suppose to fix problems, not create more.

**March 11, 2023** NHTSA ID NUMBER: 11511333

## Components: POWER TRAIN

**NHTSA ID Number:** 11511333

**Incident Date** March 1, 2023

**Consumer Location** Unknown

**Vehicle Identification Number** 1C4HJXEG2KW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | Vehicle has a recall notice but no remedy yet available. My clutch often gets close to over heating as I feel it start to slip in normal traffic conditions in heavy traffic. I often encounter very heavy traffic and must let the vehicles clutch cool down on the side of the road. Jeep dealerships tell me nothing they can do but replace factory clutch at owners expense. This is not fair, this SUV only has 35,000 miles and cost a fortune monthly. I do not have the funds to replace the clutch myself and do not have a second vehicle to wait for the company to come up with a 'remedy'. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**March 13, 2023** NHTSA ID NUMBER: 11511632

## Components: POWER TRAIN

⊖

**NHTSA ID Number:** 11511632

**Incident Date** January 8, 2023

**Consumer Location** Unknown

**Vehicle Identification Number** 1C4HJXDG9KW****

**Summary of Complaint**

| | |
|---|---|
| CRASH | No |
| FIRE | Yes |
| INJURIES | 0 |
| DEATHS | 0 |

Clutch blew two holes through my transmission. I was driving home from skiing. Early that morning an error code came on stating my clutch was getting too hot. I was in stop and go traffic for like 15 min when it happened. I mostly kept my car in neutral and only used the clutch when I needed to move forward more than my car could roll on its own. Driving home from the mountain I was on the freeway when an emblem turned on with a Sterling wheel and and exclamation point. Right soon after that as I was getting off the freeway I downshifted to 3rd gear and my car shot up to 5 rpm's so I shifted to 4th gear and my car shot up to 5 rpm's so I shifted to 5th gear and my car shot up to 5 rpm's so I shifted to 6th gear and my car shot up to 5 rpm's and then I head a loud explosion and my car and I hurried and pulled over. I had two other cars pull over because they saw my car of fire. They yelled at me to get out of my car and then quickly checked everything and found the fire had put itself out. I had my 6 year old nephew in the car and I was worried about his safety if the car was on fire but also the safety of having his outside of the car on a major highway. We determined the car wasn't at a full engulfed in flames risk so I kept him in the car. I then towed my car to the dealership who misdiagnosed it so I towed it to a clutch shop when showed me there were actually two holes through my transmission. My warranty wouldn't cover it and the recall refused it because they had "don't the recall" aka looked at it and did a software update and said that's all the were required to do. I ended up finding a used transmission and was able to get that installed as well as a clutch. I was out of a car for 6 weeks and the emotional stress of being jerked around and not being helped when it's clear with the recalls this is a huge issue that is getting ignored. The GM of the dealership is now involved and trying to help me get this solved.



**March 13, 2023** NHTSA ID NUMBER: 11511578

**Components: POWER TRAIN, UNKNOWN OR OTHER**

**NHTSA ID Number:** 11511578

**Incident Date** March 5, 2023

**Consumer Location** Unknown

**Vehicle Identification Number** 1C4HJXDG1KW****

**Summary of Complaint**

| CRASH | No |
| FIRE | Yes |
| INJURIES | 0 |
| DEATHS | 0 |

New recall has come out for the Jeep 2019 Manual Transmission. This is the third recall and there is still no fix. Recently my clutch blew on the highway, first it started to smoke and then the clutch exploded. Going speed of approx 70mph with a child in the car. This is well know issue without a fix and i do not want to drive this vehicle any longer. Jeep will not fix the clutch, i have to pay $3600 for it and "if" or "when" the fix happens, then i can get reimbursed. the clutch could go again at any time not safe. and jeep does not care.

## *2020 Jeep Wrangler (2 door)*



**May 8, 2020** NHTSA ID NUMBER: 11323805

**Components: POWER TRAIN**

**NHTSA ID Number:** 11323805

**Incident Date** May 7, 2020

**Consumer Location** BELMONT, NC

**Vehicle Identification Number** 1C4HJXCG1LW****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

I BELIEVE THE VEHICLE CLUTCH FAILED AND THE VEHICLE LOST FORWARD PROPULSION. PRIOR TO THE LOSS OF CLUTCH PRESSURE AND PROPULSION, A STRONG BURNING SMELL WAS NOTED COMING FORM THE VEHICLE, FOLLOWED BY SMOKE. THE VEHICLE WAS IN MOTION, GOING THROUGH STOP AND GO TRAFFIC, ON A CITY STREET. I BELIEVE THIS IS RELATED TO RECALL 20V124000. THE VEHICLE HAS 138 MILES ON IT AND WAS BEING DRIVEN HOME AFTER BEING PURCHASED NEW FROM THE DEALERSHIP. *TR

41

January 11, 2022 NHTSA ID NUMBER: 11447109

## Components: POWER TRAIN

NHTSA ID Number: 11447109

Incident Date December 21, 2021

Consumer Location PACIFIC PALISADES, CA

Vehicle Identification Number 1C4HJXFG3LW****

Summary of Complaint

| | | |
|---|---|---|
| CRASH | No | I have a 2020 JL Rubicon with manual transmission and 15,970 miles on the vehicle. I have taken it into my local dealer twice for clutch recall issues, the latest in November 2021. 3 weeks later my clutch failed in the middle of a 5 lane highway; there was a terrible grinding noise and a burning smell and the vehicle came to a halt within 30 seconds. I was extremely lucky to be able to get over to the shoulder before it died in the middle of the highway. I had the vehicle towed to the nearest dealer and they say the clutch failed due to user error and I need to pay $4500 for repair. I opened a case and it was summarily closed one day later, with FCA providing the same user error answer based on the notes from the dealership. The issue with the manual transmission in this model is well known, as any search of Jeep forums will tell you, and FCA has consistently denied any responsibility. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

September 2, 2022 NHTSA ID NUMBER: 11482603

## Components: POWER TRAIN

NHTSA ID Number: 11482603

Incident Date July 15, 2021

Consumer Location EAGLE, CO

Vehicle Identification Number 1c4hjxfg0lw****

Summary of Complaint

| | | |
|---|---|---|
| CRASH | No | Clutch pedal intermittently sticks when pressed to the floor. If you press and hold the clutch to the floor and release it slowly you can feel it bind up. 3 things normally happen. #1. It will stick to the floor #2. It will stick for a short time and as you raise your foot, the pedal will hit the bottom of your foot, jerking the jeep forward. #3 it does release as normal. I have taken the Jeep to the dealer last year 8/21 and they couldn't replicate the issue. However they reported a leaky hose that they replaced. I couldn't identify any hoses that were newly replaced. It has gotten progressively worse and now I can replicate the issue after a few attempts. When at a complete stop pointing uphill there is a risk of rolling back into another vehicle if the clutch doesnt engage. Transitioning from a complete stop to moving forward is not very smooth if the clutch pops up on its own. Sometimes it ends up in the engine stopping and having to restart the vehicle. The Jeep is available for inspection. I have tried to schedule another repair but waiting for a response from the Dealer. The Jeep has other recalls for the clutch and I believe all recalls have been applied to the vehicle. I have an email that I sent to the dealer with photos that I sent to the dealer when I first noticed this issue. I can also try to find the invoice from last year. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

January 20, 2023 NHTSA ID NUMBER: 11502775
## Components: POWER TRAIN

⊖

**NHTSA ID Number:** 11502775

**Incident Date** December 13, 2022

**Consumer Location** MILFORD, NH

**Vehicle Identification Number** 1C4HJXEG6LW****

### Summary of Complaint

| CRASH | No |
| FIRE | Yes |
| INJURIES | 0 |
| DEATHS | 0 |

I was driving my 2020 Jeep Wrangler Sahara with 34,950 miles on it on the night of 12/13/2022 along I 89 in New Hampshire at a steady 65mph in 6th gear in the far-left lane. Suddenly the tachometer started soaring towards the redline. Before it hit redline, there was an explosion underneath the Jeep. As I looked in the mirror to get to the side of the road, I saw two chunks of glowing hot metal exiting the underside. There were no warning lights or other indication of what was about to happen. I got it safely to the breakdown lane. Someone called in a small brush fire because a fire truck showed up, then a couple of State Police Troopers showed up and helped call a tow truck. It cost $350 for the tow to the nearest dealership and the Uber home. At the dealership I could see a huge crack in the transmission case. From the repair order included, there was damage to the clutch, transmission, starter, flywheel, electrical harness and main seal. I was told the faulty parts were returned to Jeep for inspection. There was a recall on the clutch pressure plate (21V-028) and the "repair" had been completed on my vehicle. The "repair" did not work and people are going to get hurt. Although no one was injured this time, this could have ended very badly if the hot metal shrapnel cut a tire or hit a car behind me. From my little bit of research, this failure is becoming quite common and many people are driving a ticking time bomb.

*2021 Jeep Wrangler (2 door)*



February 8, 2021 NHTSA ID NUMBER: 11395249

**Components: POWER TRAIN**

**NHTSA ID Number:** 11395249

**Incident Date** January 18, 2021

**Consumer Location** EASTVALE, CA

**Vehicle Identification Number** 1C4HJXEG2MW****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

DRIVING ON THE FREEWAY AND "SERVICE SHIFTER" WARNING APPEARED ON AND OFF. ALSO, WHILE DRIVING ON A CITY STREET THE WARNING CAME ON AND OFF. LIGHTS ON THE SHIFTER FLASHED. DEALERSHIP SAYS THE VALVE BODY IN THE TRANSMISSION IS DEFECTIVE AND NEEDS TO BE REPLACED OR THE WHOLE TRANSMISSION NEEDS TO BE REPLACED. THEY STATED IT'S A SERIOUS SAFETY CONCERN BECAUSE THE CAR CAN STOP SHIFTING ALTOGETHER WHILE DRIVING.



February 9, 2021 NHTSA ID NUMBER: 11395429

**Components: POWER TRAIN**

**NHTSA ID Number:** 11395429

**Incident Date** February 9, 2021

**Consumer Location** MIAMI, FL

**Vehicle Identification Number** 1C4HJXDG5MW****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

THERE IS AN ACTIVE RECALL FOR THIS JEEP MODEL. I TOOK IT TO THE DEALER TODAY, FEBRUARY 9, 2021, TO GET IT FIX AND THEY DO NOT HAVE THE PARTS. THE DEALER (PLANET DODGE IN MIAMI, FL) INSTRUCTED ME TO CALL FCA GROUP (FIAT CHRYSLER AUTOMOBILE -- OWNERS OF JEEP), WHICH I DID IN FRONT OF THEM, AND NO FIXING OR RESOLUTION. PART OF THE RECALL STATES HEATED DEBRIS EXPELLED FROM THE TRANSMISSION CASE MAY COME IN CONTACT WITH COMBUSTIBLE MATERIALS IN THE VEHICLE, POTENTIALLY LEADING TO A FIRE.

### February 14, 2021 NHTSA ID NUMBER: 11396161
**Components: POWER TRAIN**

**NHTSA ID Number:** 11396161

**Incident Date** February 6, 2021

**Consumer Location** CARLSBAD, NM

**Vehicle Identification Number** 1C4HJXFGXMW****

**Summary of Complaint**

| | |
| --- | --- |
| CRASH | No |
| FIRE | Yes |
| INJURIES | 0 |
| DEATHS | 0 |

ONLY 500 MILES ON VEHICLE, WENT OFF-ROADING FOR THE FIRST TIME AND WITHIN A SHORT TIME AFTER CLIMBING A STEEP HILL, SMOKE CAME FROM UNDER VEHICLE AND CLUTCH WENT TO FLOOR AND STAYED. TURNED JEEP OFF, PUMPED CLUTCH WHICH SEEMED FINE BUT SMOKE CONTINUED FOR A MINUTE. WENT UNDER VEHICLE AFTER SMOKE STOPPED AND SAW BURNT FIBERS COMING OUT FROM TRANSMISSION CASE. RESTARTED VEHICLE AND NO MOVEMENT. TOWED JEEP OUT TO HOME. JEEP ROADSIDE TOOK IT TO DEALERSHIP. APPARENTLY THE CLUTCH SWITCH PLATE OVERHEATED, FLASHED, AND COMPLETELY BURNED AWAY! THERES A RECALL I WAS UNAWARE OF BUT NOW 500 MILES ON BRAND NEW JEEP AND CLUTCH PLATE, PRESSURE PLATE, ETC MUST BE REPLACED.

JEEP IS AT TATE BRANCH JEEP IN CARLSBAD NM WHERE THEY CAN GIVE DETAILS ON DAMAGE.

### May 11, 2022 NHTSA ID NUMBER: 11464217
**Components: POWER TRAIN**

**NHTSA ID Number:** 11464217

**Incident Date** April 11, 2022

**Consumer Location** BATON ROUGE, LA

**Vehicle Identification Number** 1c4hjxdg9mw****

**Summary of Complaint**

| | |
| --- | --- |
| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

The contact owns a 2021 Jeep Wrangler. The contact stated while driving 80 MPH, the clutch fractured, causing the vehicle to lose motive power. The vehicle was towed to the dealer. The dealer related the failure to NHTSA Campaign Number: 21V028000 (Power Train) associated with the VIN and informed the contact that the clutch needed to be replaced. The dealer declined to perform the recall repair. The contact stated that he had not received notification of NHTSA Campaign Number: 21V028000 (Power Train). The vehicle was not repaired and remained at the dealer. The manufacturer was made aware of the failure but informed the contact that it was at the dealer's discretion to honor the recall repair and provided no further assistance. The failure mileage was approximately 31,000.

July 23, 2022 NHTSA ID NUMBER: 11475463

**Components: POWER TRAIN**

**NHTSA ID Number:** 11475463

**Incident Date** June 22, 2022

**Consumer Location** Unknown

**Vehicle Identification Number** 1C4HJXDG0MW****

**Summary of Complaint**

| | |
|---|---|
| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

The clutch plate overheated, fragmented and destroyed my transmission on 6/22/2022 as I was driving on the Pennsylvania Turnpike at around mile marker 61, at a speed of 65 miles/hour. When I got on the turnpike in Monroeville Pa, I could smell a burning smell, but I figured that I was passing through an area where someone was burning something outdoors. Around mile marker 60-61 I started having difficulty keeping the RPM's up and my speed up to the speed limit. shortly after I heard a banging/clunking noise and I got off the highway. My Jeep was towed to Monroeville Jeep. Monroeville Jeep called the next day 6/23/2022 and said that the clutch plate overheated, fragmented and destroyed the transmission and it is not covered under warranty since the transmission did not fail. I had previously taken my Jeep in to Diehl Automotive on 7/19/2021 for recall #Y07/NHTSA 21V-028 to have the recall done. What happened to my Jeep on 6/22/2022 is exactly what the recall said would happen if I did not have the recall work done. In the weeks prior to 6/22/2022 I did notice the RPM's acting erratically but not being a mechanic I had no clue what was going on. other than that, there was no warning signs. There is now at least 30 other Jeep owners who had the recall done, some had both recalls done and the recalls failed to prevent the clutch plate from overheating, fragmenting and destroying the transmission

*2019 Jeep Wrangler Unlimited (4 door)*

March 11, 2019 NHTSA ID NUMBER: 11185949
**Components: POWER TRAIN**

NHTSA ID Number: 11185949

Incident Date March 5, 2019

Consumer Location BOWIE, MD

Vehicle Identification Number 1C4HJXFG4KW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | WHILE DRIVING TO WORK HAD PROBLEMS WITH ENGINE REVVING TRYING TO SHIFT THERE WAS A LOUD BANG, PULLED OFF THE ROAD, STARTED SEEING SMOKE COME FROM THE VEHICLE THEN WAS ENGULFED IN FLAMES AND BURNED COMPLETELY UP. THERE IS A COMPLAINT WITH FCA CASE NUMBER 58132542 THE VEHICLE WAS TRAVELING AT 40 MPH ON 295 PARKWAY WHEN THE PROBLEM STARTED. I DID NOT TAKE ANY PICTURES THERE IS A POLICE REPORT IF NEEDED. THE VEHICLE HAD ONLY BEEN IN MY POSITION SENSE 26 JAN 2019 WITH ONLY 1000 MILES ON IT WHEN IT HAD A CATASTROPHIC FAILURE THAT RESULTED JEEP TOTALLY BURNING UP. *DT*JB |
| FIRE | Yes | |
| INJURIES | 0 | |
| DEATHS | 0 | |

March 15, 2020 NHTSA ID NUMBER: 11318152
**Components: POWER TRAIN**

NHTSA ID Number: 11318152

Incident Date December 31, 2019

Consumer Location BLYTHEWOOD, SC

Vehicle Identification Number 1C4GJXAG6KW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | WHILE DRIVING UP A MOUNTAIN ROAD REQUIRING UP AND DOWN SHIFTING THE CLUTCH OVER HEATED. IT WAS NOT THE BRAKES SINCE WE I WAS CLIMBING. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

### November 28, 2021 NHTSA ID NUMBER: 11441884
## Components: POWER TRAIN

⊖

**NHTSA ID Number:** 11441884

**Incident Date** November 1, 2021

**Consumer Location** LEXINGTON, KY

**Vehicle Identification Number** 1C4HJXEG5KW****

### Summary of Complaint

| | | |
|---|---|---|
| CRASH | No | The entire clutch system failed and the vehicle passenger compartment filled with smoke. It was difficult to breath and burned my eyes I had to pull over immediately. I had the the vehicle towed to the dealer, upon arrival the dealer indicated that there was a safety recall that was limited to "computer components" and involved a software fix. They then proceed to tell me that the the entire clutch system had failed and they could not tell if it was my driving or the recall parts that had impacted. They then proceed to hand me a $2,000+ repair bill, this is a top of the line vehicle less than three 4 years old with no more than 43k miles. I reached out to Jeep/Mopar/FCA/Stallantis whatever they are going by today, and was referred back to the dealer without any resolution. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

### December 30, 2022 NHTSA ID NUMBER: 11499565
## Components: POWER TRAIN

⊖

**NHTSA ID Number:** 11499565

**Incident Date** December 30, 2022

**Consumer Location** LEBANON, MO

**Vehicle Identification Number** 1C4HJXDG5KW****

### Summary of Complaint

| | | |
|---|---|---|
| CRASH | No | I have had both w12 & y07 recalls done and didn't have any problems with my clutch before then, now my clutch is making a strange noise and slipping. A software update to degrade power to my engine doesn't fix a clutch problem. Recalls are suppose to fix problems, not create more. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

48



March 11, 2023 NHTSA ID NUMBER: 11511333

**Components: POWER TRAIN**

**NHTSA ID Number:** 11511333

**Incident Date** March 1, 2023

**Consumer Location** Unknown

**Vehicle Identification Number** 1C4HJXEG2KW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | Vehicle has a recall notice but no remedy yet available. My |
| FIRE | No | clutch often gets close to over heating as I feel it start to slip in normal traffic conditions in heavy traffic. I often encounter very |
| INJURIES | 0 | heavy traffic and must let the vehicles clutch cool down on the side of the road. Jeep dealerships tell me nothing they can do |
| DEATHS | 0 | but replace factory clutch at owners expense. This is not fair, this SUV only has 35,000 miles and cost a fortune monthly. I do not have the funds to replace the clutch myself and do not have a second vehicle to wait for the company to come up with a 'remedy'. |

## *2020 Jeep Wrangler Unlimited (4 door)*



May 8, 2020 NHTSA ID NUMBER: 11323805

**Components: POWER TRAIN**

**NHTSA ID Number:** 11323805

**Incident Date** May 7, 2020

**Consumer Location** BELMONT, NC

**Vehicle Identification Number** 1C4HJXCG1LW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | I BELIEVE THE VEHICLE CLUTCH FAILED AND THE VEHICLE |
| FIRE | No | LOST FORWARD PROPULSION. PRIOR TO THE LOSS OF CLUTCH PRESSURE AND PROPULSION, A STRONG BURNING |
| INJURIES | 0 | SMELL WAS NOTED COMING FORM THE VEHICLE, FOLLOWED BY SMOKE. THE VEHICLE WAS IN MOTION, GOING THROUGH |
| DEATHS | 0 | STOP AND GO TRAFFIC, ON A CITY STREET. I BELIEVE THIS IS RELATED TO RECALL 20V124000. THE VEHICLE HAS 138 MILES ON IT AND WAS BEING DRIVEN HOME AFTER BEING PURCHASED NEW FROM THE DEALERSHIP. *TR |

**January 11, 2022** NHTSA ID NUMBER: 11447109

## Components: POWER TRAIN

⊖

**NHTSA ID Number:** 11447109

**Incident Date** December 21, 2021

**Consumer Location** PACIFIC PALISADES, CA

**Vehicle Identification Number** 1C4HJXFG3LW****

### Summary of Complaint

| | |
|---|---|
| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

I have a 2020 JL Rubicon with manual transmission and 15,970 miles on the vehicle. I have taken it into my local dealer twice for clutch recall issues, the latest in November 2021. 3 weeks later my clutch failed in the middle of a 5 lane highway; there was a terrible grinding noise and a burning smell and the vehicle came to a halt within 30 seconds. I was extremely lucky to be able to get over to the shoulder before it died in the middle of the highway. I had the vehicle towed to the nearest dealer and they say the clutch failed due to user error and I need to pay $4500 for repair. I opened a case and it was summarily closed one day later, with FCA providing the same user error answer based on the notes from the dealership. The issue with the manual transmission in this model is well known, as any search of Jeep forums will tell you, and FCA has consistently denied any responsibility.

**November 22, 2022** NHTSA ID NUMBER: 11494603

## Components: POWER TRAIN

⊖

**NHTSA ID Number:** 11494603

**Incident Date** March 29, 2022

**Consumer Location** WEST SUFFIELD, CT

**Vehicle Identification Number** 1C4HJXDG7LW****

### Summary of Complaint

| | |
|---|---|
| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

Shifter cables on my 2020 Jeep Wrangler have fallen off FIVE times leaving me unable to shift the car or drive it and it is necessary to pull over or coast over to the side of the road wherever I may be. The inability to shift is accompanied by a terrible burning smell. The dealership has attempted to repair it by putting the cables back on and by replacing the cables with new cables to no avail, the problem continues to occur. My safety and the safety of others is put at risk because the car is not able to function properly and maintain speed. Without warning this can occur and cause an accident on the road or highway. I have filed a Lemon Law complaint with the Jeep manufacturer. The problem has occurred FIVE times 3/29/22, 9/20/22, 10/14/22, 10/17/22, 11/22/22. All five times were without warning.

*2021 Jeep Wrangler Unlimited (4 door)*

**February 8, 2021** NHTSA ID NUMBER: 11395249
**Components: POWER TRAIN**

**NHTSA ID Number:** 11395249

**Incident Date** January 18, 2021

**Consumer Location** EASTVALE, CA

**Vehicle Identification Number** 1C4HJXEG2MW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | DRIVING ON THE FREEWAY AND "SERVICE SHIFTER" WARNING APPEARED ON AND OFF. ALSO, WHILE DRIVING ON A CITY STREET THE WARNING CAME ON AND OFF. LIGHTS ON THE SHIFTER FLASHED. DEALERSHIP SAYS THE VALVE BODY IN THE TRANSMISSION IS DEFECTIVE AND NEEDS TO BE REPLACED OR THE WHOLE TRANSMISSION NEEDS TO BE REPLACED. THEY STATED IT'S A SERIOUS SAFETY CONCERN BECAUSE THE CAR CAN STOP SHIFTING ALTOGETHER WHILE DRIVING. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**February 9, 2021** NHTSA ID NUMBER: 11395429
**Components: POWER TRAIN**

**NHTSA ID Number:** 11395429

**Incident Date** February 9, 2021

**Consumer Location** MIAMI, FL

**Vehicle Identification Number** 1C4HJXDG5MW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | THERE IS AN ACTIVE RECALL FOR THIS JEEP MODEL. I TOOK IT TO THE DEALER TODAY, FEBRUARY 9, 2021, TO GET IT FIX AND THEY DO NOT HAVE THE PARTS. THE DEALER (PLANET DODGE IN MIAMI, FL) INSTRUCTED ME TO CALL FCA GROUP (FIAT CHRYSLER AUTOMOBILE -- OWNERS OF JEEP), WHICH I DID IN FRONT OF THEM, AND NO FIXING OR RESOLUTION. PART OF THE RECALL STATES HEATED DEBRIS EXPELLED FROM THE TRANSMISSION CASE MAY COME IN CONTACT WITH COMBUSTIBLE MATERIALS IN THE VEHICLE, POTENTIALLY LEADING TO A FIRE. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

51



March 24, 2021 NHTSA ID NUMBER: 11404746

**Components: AIR BAGS, SEAT BELTS**

---

March 18, 2021 NHTSA ID NUMBER: 11403621

**Components: ELECTRICAL SYSTEM, ENGINE, WHEELS**

**NHTSA ID Number:** 11403621

**Incident Date** March 16, 2021

**Consumer Location** RUMSON, NJ

**Vehicle Identification Number** 1C4HJXENXMW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | OUR 2021 JEEP STARTED SMOKING IN THE ENGINE AND WITHIN 10 MINUTES BURST INTO FLAMES. THE ENTIRE FRONT END WAS DAMAGED BEYOND REPAIR / BURNED AND FIRE STATIONS HAD TO PUT OUT THE FIRE. MY DAUGHTER, DOGS AND I WERE ABLE TO MAKE IT OUT OF THE CAR BUT VERY SCARY. |
| FIRE | Yes | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product** ▾



March 30, 2021 NHTSA ID NUMBER: 11405482

**Components: ENGINE, POWER TRAIN**

**NHTSA ID Number:** 11405482

**Incident Date** March 7, 2021

**Consumer Location** LIVE OAK, FL

**Vehicle Identification Number** 1C4HJXFG7MW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | WHILE TOWING THE MANUAL TRANSMISSION JEEP WRANGLER RUBICON (TRANSFER CASE IN NEUTRAL AND TRANSMISSION IN 1ST GEAR) 4 WHEELS DOWN THERE WAS AN EXPLOSION UNDER THE JEEP WITH A BALL OF FIRE. THE VEHICLE WAS INCAPACITATED. THERE WAS NOT ANY SMOKE, NOISE OR INDICATIONS OF AN ISSUE BEFORE AND UP TO THE EXPLOSION. THIS HAPPENED ON A STRAIGHT SMOOTH 4 LANE ROAD AT 40 MPH. |
| FIRE | Yes | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product** ▾

☐ **Request Research** (Services fees apply)



October 6, 2021  NHTSA ID NUMBER: 11435781

**Components: POWER TRAIN**

**NHTSA ID Number:** 11435781

**Incident Date** October 6, 2021

**Consumer Location** ROANOKE, VA

**Vehicle Identification Number** 1C4GJXAG5MW****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

The contact owns a 2021 Jeep Wrangler. The contact stated that while driving at 55 - 60 mph, the RPM gauge went high but the temperature gauge was normal. A burning odor was detected, metal grinding noises were heard, and the vehicle inadvertently lurched forward. The contact pulled over and saw that there was smoke coming from under the hood. The vehicle was towed to the dealer and remained at the dealer, not diagnosed nor repaired. The contact had the vehicle serviced at the dealer in March 2021, for NHTSA Campaign Number: 21V028000 (Power Train). However, the failure recurred related to the recall. The manufacturer was not made aware of the failure. The failure mileage was approximately 9,700.

## *2020 Jeep Gladiator*



September 27, 2019  NHTSA ID NUMBER: 11258523

**Components: POWER TRAIN**

**NHTSA ID Number:** 11258523

**Incident Date** September 21, 2019

**Consumer Location** TUCSON, AZ

**Vehicle Identification Number** 1C6JJTBGXLL****

**Summary of Complaint**

| CRASH | No |
| FIRE | Yes |
| INJURIES | 0 |
| DEATHS | 0 |

DRIVING ON INTERSTATE 70 WITH APPROX SPEED OF 65. CAUGHT ON FIRE. FLAMES AND LOTS OF SMOKE COMING FROM UNDER JEEP. SMOKE ENTERED CAB. WHAT I THINK IS TRANSMISSION FLUID LEFT TRAIL ON INTERSTATE. I HAVE PHOTO.*DT*JB*DT *JS



### March 10, 2020 NHTSA ID NUMBER: 11317226
### Components: POWER TRAIN, STEERING, UNKNOWN OR OTHER

**NHTSA ID Number:** 11317226

**Incident Date** February 3, 2020

**Consumer Location** KNIGHTDALE, NC

**Vehicle Identification Number** 1C6JJTBG7LL****

**Summary of Complaint**

| CRASH | No | UNSURE OF WHAT THE ISSUE IS BUT HAVE OCCASIONAL ISSUES WITH CLUTCH AND STEERING IS VERY LOOSE. |
|---|---|---|
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

### March 14, 2020 NHTSA ID NUMBER: 11318040
### Components: POWER TRAIN

**NHTSA ID Number:** 11318040

**Incident Date** February 22, 2020

**Consumer Location** PLEASANT HILL, IA

**Vehicle Identification Number** 1C6HJTFG3LL****

**Summary of Complaint**

| CRASH | No | I BOUGHT A BRAND NEW 2020 GLADIATOR NOT EVEN A MONTH OLD, 6 SPEED MANUAL. VEHICLE STARTED SMOKING PROFUSELY AND WAS EXPECTING A FIRE, LUCKILY ONLY BURNT CLUTCH SMELL. CONCERNED ABOUT DRIVING IT AND ITS BRAND NEW. THE TRUCK CAN EITHER START ON FIRE OR EXPLODE! THIS IS BASICALLY A ROLLING TICKING TIME BOMB. IT'S IN AT THE DEALERSHIP NOW WITH STILL NO REMEDY. FCA SHOULD BUY THIS BACK FROM ME. W12 RECALL PRESSURE PLATE IS ONLY A GUESS AND FRANKLY ITS BULLSHIT. THE ENTIRE TRANSMISSION NEEDS TO BE REPLACED WITH A MORE ROBUST AND RUGGED SOLUTION THAT MATCHES JEEPS BRAND. |
|---|---|---|
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

54

## February 2, 2021 NHTSA ID NUMBER: 11394299
## Components: POWER TRAIN



**NHTSA ID Number:** 11394299

**Incident Date** December 25, 2020

**Consumer Location** DENVER, CO

**Vehicle Identification Number** 1C6HJTFG8LL****

**Summary of Complaint**

| CRASH | No | I NOTICED A STRONG BURNING SMELL DRIVING MY 2020 JEEP |
|---|---|---|
| FIRE | No | GLADIATOR WHILE DRIVING A FOREST ACCESS ROAD IN COLORADO. WHEN I TURNED THE CAR OFF AND THEN BACK |
| INJURIES | 0 | ON AGAIN THE CAR FAILED TO MOVE WHEN PUT INTO GEAR. AFTER MULTIPLE ATTEMPTS - THE JEEP WOULD GO INTO |
| DEATHS | 0 | GEAR BUT THE WHEELS NEVER ENGAGED. IT WAS TOWED |

FROM THE MOUNTAINS TO THE DEALER IN DENVER WHERE IT WAS DISCOVERED THAT THE CLUTCH WAS "CHARRED". THE JEEP HAD 16,000 MILES ON IT.I HAVE DRIVEN MANUAL TRANSMISSIONS MY ENTIRE LIFE (I AM 60 YRS OLD) AND NEVER HAD A CLUTCH GO UNDER 100K ON 6 VEHICLES

## February 4, 2021 NHTSA ID NUMBER: 11394659
## Components: POWER TRAIN

**NHTSA ID Number:** 11394659

**Incident Date** January 28, 2021

**Consumer Location** CARMEL, ME

**Vehicle Identification Number** 1C6HJTAG4LL****

**Summary of Complaint**

| CRASH | No | THERE ARE NOW 2 RECALLS ON MANUAL TRANSMISSION |
|---|---|---|
| FIRE | No | CLUTCH FAILURES. ORIGINAL RECALL 20V124000 AND A NEW ONE 21V028000. BOTH ARE FOR CATASTROPHIC PRESSURE |
| INJURIES | 0 | PLATE FAILURES FOR CLUTCH SLIPPING, OVERHEATING AND FRAGMENTING. WHAT IS GOING TO HAPPEN TO ALL THESE |
| DEATHS | 0 | PRESSURE PLATES WHEN THE CLUTCH DISK WEARS DOWN |

OVER TIME AS IS NORMAL FOR A MANUAL TRANSMISSION AND STARTS SLIPPING THEN? IT WILL MOST LIKELY OVERHEAT THESE PRESSURE PLATES AND CAUSE FAILURE THEN. IF THESE PRESSURE PLATES ARE DEFECTIVE THEY NEED TO BE COMPLETELY REPLACED AND NOT JUST REROUTE ELECTRICAL LINES AND REPROGRAM THE SOFTWARE TO LIMIT ENGINE TORQUE. FIX THE ISSUE!

## February 6, 2021 NHTSA ID NUMBER: 11394957
### Components: POWER TRAIN

**NHTSA ID Number:** 11394957

**Incident Date** February 3, 2021

**Consumer Location** LIVONIA, MI

**Vehicle Identification Number** 1C6HJTAG1LL****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | VERY CONCERNED ABOUT THE CLUTCH PRESSURE PLATE RECALL, I AM PAYING A LOT OF MONEY FOR THIS JEEP THAT I DONT FEEL SAFE DRIVING AS IT CAN CATCH ON FIRE. THE FACT THAT THERE IS NO FIX RIGHT NOW IS RIDICULOUS. I HAVE DRIVEN JEEPS MY WHOLE LIFE AND NEVER HAD A LIFE THREATENING ISSUE LIKE THIS. IF THERE IS NO SOLID SOLUTION I WILL NEVER GET ANOTHER FCA AGAIN |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

## March 7, 2023 NHTSA ID NUMBER: 11510522
### Components: POWER TRAIN

**NHTSA ID Number:** 11510522

**Incident Date** March 6, 2023

**Consumer Location** Unknown

**Vehicle Identification Number** 1C6JJTEG1LL****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | The clutch has been slipping for a while. Over the last week the situation has become worse. Today the slippage resulted in failing to accelerate ended up in a stall while on the on ramp on a highway and narrowly escaped being rear ended by an 18 wheeler which barely managed to stop 2 feet behind. The clutch on this vehicle has been deffective since I bought it (I have driven a manual truck for 20 years and never had problems). FCA has issued a recall (software update for fire hazard) which has been completed on this vehicle but in my opinion fire is not the only danger for this defective clutch. Clutch slippage and stalling is also a hazard. When this incident happened, and tried to get more information I realized there is a second recall for the same exact issue which the "software update" was supposed to fix. When the incident happened earlier today, the clutch was extremely hot and while it did not catch fire it slipped and put me in a dangerous situation. All the while the software update did not do anything. I urge NHTSA to force FCA/Stellantis to replace the clutch on all affected vehicles, or reimburse customers who like myself will do so at their own cost. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

67.     As a result of the combined factors described above, FCA knew about the defect at the time of sale, but Plaintiffs and Class members did not.  Given the nature of the Clutch Defect, it would have been difficult for Plaintiffs and Class members to discover the defect until after they purchased the Class Vehicles.

68.     As shown above, numerous complaints have been made since FCA argued in its Motion to Dismiss in and subsequent notices and responses to notices of subsequent authority that its Second Recall rendered Plaintiffs' claims prudentially moot.  FCA knew that the Second Recall would not fix the Clutch Defect.  It did not disclose this information to consumers, Plaintiffs, or the Court.

### III.    FCA Never Disclosed The Clutch Defect

69.     FCA had a duty to disclose the Clutch Defect to consumers. However, FCA has never disclosed the Clutch Defect in the window stickers, owner's manuals, sales literature, or anywhere else before purchase.  For example, the window stickers for the Class Vehicles (also known as "Monroney Stickers") highlighted the 3.6L V6 engine and 6-speed manual transmission as a selling feature:

**Base Price:        $38,665**

JEEP WRANGLER UNLIMITED SAHARA
Exterior Color: Sarge Green Clear–Coat Exterior Paint
Interior Color: Black Interior Color
Interior: Cloth Low–Back Bucket Seats
Engine: 3.6L V6 24V VVT Engine Upg I With Start Stop
Transmission: 6–Speed Manual Transmission

70.    The Monroney Stickers are nearly identical across the Class Vehicles.

For example, the Monroney Sticker for a 2021 Wrangler Unlimited above described

a "3.6L V6 24V VVT Engine Upg I With Start Stop" and "6-Speed Manual

Transmission." These representations warranted that the 6-speed manual

transmissions installed in the Class Vehicles were suitable to handle the engine's

power output.

71.    The 3.6L V6 engine in the Class Vehicles was warranted by FCA to

produce 285 horsepower and 260 lb-ft of torque:





72.     FCA warranted that the transmissions in the Class Vehicles – including the clutch components – were suitable for the specifications of the engine's output of 285 horsepower and 260 lb-ft of torque.  Even though these partial

representations created a duty to disclose the Clutch Defect, FCA never disclosed the Clutch Defect or otherwise disclosed that the clutches are prone to failure.

## IV.    FCA Breached Its Warranties

73.    FCA voluntarily warranted through the Monroney Stickers and otherwise that the manual transmissions – including the clutch components – were capable of handling the 285 horsepower and 260 lb-ft of torque produced by the Class Vehicles' engines.  FCA breached that promise by selling Class Vehicles that affected by the Clutch Defect.  FCA further breached that promise when it decided not to replace the clutches in the Class Vehicles, but rather "to add software to reduce engine torque capability when clutch assembly temperatures rise to a level that may damage the inner pressure plate" – an illusory "fix" that has not remedied the Clutch Defect

74.    In addition to these express warranties formed through FCA's voluntary representations, the Class Vehicles are also sold with materially identical "Basic Limited Warranties" (the "Basic Warranty").  The Basic Warranty runs for three years or 36,000 miles, whichever occurs first, and purports to cover the cost of all parts and labor needed to repair any part in the vehicle that is defective in material, workmanship or factory preparation, excluding tires.

### B. What Is Covered

The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation. There is no list of covered parts since the only exceptions are tires and headphones. These warranty repairs or adjustments, including all parts and labor connected with them, will be made by an authorized dealer at no charge, using new or remanufactured parts. You pay nothing for these repairs.

75.     The Basic Warranty begins "the date [the owner] take[s] delivery of the vehicle" or "when the vehicle was first put into service."  However, the "Clutch Discs or Modular Clutch Assembly" in the Class Vehicles are only warranted for 12 months or 12,000 miles:

### E. When It Begins

The Basic Limited Warranty begins on either of the following dates, whichever is earlier:
- The date you take delivery of the vehicle.
- The date when the vehicle was first put into service, for example, as a dealer "demo" or as a FCA US LLC company vehicle.

### F. When It Ends

The Basic Limited Warranty lasts for 36 months from the date it begins or for 36,000 miles on the odometer, whichever occurs first. But the following items are covered only for 12 months or for 12,000 miles on the odometer, whichever occurs first:
- Brakes (rotors, pads, linings, and drums)
- Bulbs
- Clutch Discs or Modular Clutch Assembly (if equipped)
- Wheel Alignment
- Wheel Balancing
- Windshield and Rear Window
- Wiper Blades

76.     The Class Vehicles are also covered by FCA's Powertrain Limited Warranty (the "Powertrain Warranty"), which "lasts for up to five years or 60,000

miles on the odometer, whichever occurs first, calculated from the start date of the

Basic Limited Warranty" and covers the transmission:

### Transmission

Transmission case and all internal parts; torque converter; drive/flex plate; transmission range switch; speed sensors; pressure sensors; transmission control module; bell housing; oil pan; seals and gaskets for listed components only.

77.     However, despite its existing knowledge of the Clutch Defect, FCA

excluded "manual transmission clutch parts" from the Powertrain Warranty:

**NOTE:**
MANUAL TRANSMISSION CLUTCH PARTS ARE NOT COVERED UNDER THE POWERTRAIN LIMITED WARRANTY.

78.     Class Members are able to bring their cars to any authorized FCA

Dealer for warranty repairs.

## 6.  How To Get Warranty Service

### 6.1. Where To Take Your Vehicle

#### A. In the United States (We Include US Possessions And Territories As Part Of The United States For Warranty Purposes)

Warranty service must be done by an authorized Chrysler, Dodge, Jeep or Ram dealer. We strongly recommend that you take your vehicle to your selling dealer. They know you and your vehicle best, and are most concerned that you get prompt and high quality service. If you move within the United States, warranty service may be requested from any authorized Chrysler, Dodge, Jeep or Ram dealer.

79.     Unbeknownst to Plaintiffs and members of the putative classes at the

time of purchase the Class Vehicles were defective.  The clutch design or

specification contributed to the Clutch Defect and constituted a defect in design, materials, workmanship and factory preparation.  FCA's failure to assemble and manufacture the clutch in such a way as to prevent manifestation of the Clutch Defect during normal operation is a defect in materials, workmanship, factory preparation, as well as design.

80.    Replacing a clutch typically costs approximately $1,000-$2,000 for the part alone, not including the additional costs of labor.  Hence, Plaintiffs and Class members suffer pecuniary harm when their warranty coverage is wrongfully denied, or any other circumstance requiring them to pay for repair or replacement of the clutch.  Additionally, if the Clutch Defect manifests in clutch failure, numerous other components can be damaged causing thousands of dollars in additional damage, leading to potential vehicle loss from fires and personal injury from debris.

81.    FCA breached its express and implied warranties through which it promised to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including the Clutch Defect. Because the Clutch Defect was present at the time of sale or lease of the Class Vehicles, FCA is required to repair or replace the clutch and components under the terms of the warranties.

82.    Despite actual and constructive knowledge of Class Vehicle defects as

described in this complaint, FCA failed to cure Class Vehicle defects within the express warranty period and thereby breached the terms of the express warranty.

83.    All Class Vehicles contained the Clutch Defect, whether latent or manifested, at the time of sale and within the warranty period.  However, despite the existence of the express warranties, FCA fails to honor the terms of the warranties by failing to adequately repair the defect free of charge.  Instead of honoring the warranty, FCA either denies warranty repairs outright, or fails to provide repairs that correct the Clutch Defect.  As well, the purported recall remedy alters the Class Vehicles in a manner that materially changes their specification from that which they were advertised, sold, and warranted.

84.    FCA's written warranties also were unconscionable.  FCA knew about the Clutch Defect at the time of sale or lease, but Plaintiffs and Class members did not.  For instance, when Plaintiff Myslivecek purchased his Class Vehicle in November 2020, FCA had been formally investigating this issue for over a year and had even initiated the First Recall.  Nonetheless, FCA continued manufacturing the Class Vehicles with the defective clutch components without disclosing to Class Members the risk of the Clutch Defect.

85.    The Clutch Defect manifests during or after the warranty period, but prior to the end of the Class Vehicles' useful lives.  Plaintiffs and Class members had no meaningful choice in determining the temporal and/or mileage limits of the

warranties.  The warranties were drafted by FCA, without any input from consumers, and there was a gross disparity in bargaining power in favor of FCA. As a result, the terms of the warranties unreasonably favored FCA.

## CLASS ACTION ALLEGATIONS

86.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2) and/or (b)(3) on behalf of the following Class and Subclasses (together, the "Classes"):

> All persons in the United States who purchased, leased, or own a Class Vehicle (the "Nationwide Class" or "Class");

> All persons in California who purchased, leased, or own a Class Vehicle (the "California Subclass");

> All persons in Michigan who purchased, leased, or own a Class Vehicle (the "Michigan Subclass");

> All persons in New Jersey who purchased, leased, or own a Class Vehicle (the "New Jersey Subclass"); and

> All persons in New York who purchased, leased, or own a Class Vehicle (the "New York Subclass").

87.     Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by an amended complaint, or narrowed at class certification, including through the use of multi-state subclasses.

88.     Specifically excluded from the Classes are FCA, FCA's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives,

employees, principals, servants, partners, joint ventures, or entities controlled by

FCA, and their heirs, successors, assigns, or other persons or entities related to or

affiliated with FCA and/or FCA's officers and/or directors, the judge assigned to

this action, and any member of the judge's immediate family.

89. **Numerosity.** The members of the proposed Classes are geographically

dispersed throughout the United States and are so numerous that individual joinder

is impracticable. Upon information and belief, Plaintiffs reasonably estimate that

there are tens of thousands of individuals that are members of the proposed Classes.

Although the precise number of proposed members is unknown to Plaintiffs, the

true number of Class members is known by FCA. More specifically, FCA and its

network of authorized dealers, maintains databases that contain the following

information: (i) the name of each Class member that leased or purchased a vehicle;

and (ii) the address of each Class member. Thus, Class members may be identified

and notified of the pendency of this action by first class mail, electronic mail,

and/or published notice, as is customarily done in consumer class actions.

90. **Existence and predominance of common questions of law and fact.**

Common questions of law and fact exist as to all Class members and predominate

over any questions affecting only individual Class members. These common legal

and factual questions include, but are not limited to, the following:

(a)     Whether the clutch components installed in the Class Vehicles are

prone to premature failure;

(b)    Whether the clutch components installed in the Class Vehicles contain

a design defect and/or a defect in material, manufacturing and/or

workmanship;

(c)    Whether the Clutch Defect in the Class Vehicles present a safety risk;

(d)    Whether FCA knew or should have known about the Clutch Defect

when it sold the Class Vehicles;

(e)    Whether FCA had a duty to disclose that the clutch components are

defective and/or prone to premature failure and present a safety risk;

(f)    Whether FCA breached a duty to disclose the Clutch Defect;

(g)    Whether FCA intentionally and knowingly concealed, suppressed

and/or omitted material facts about the existence of the Clutch Defect;

(h)    Whether Class members would pay less for a Class Vehicle if FCA, at

the time of purchase or lease, disclosed the Clutch Defect;

(i)    Whether FCA is liable to Plaintiffs and Class members under the

causes of action alleged in this complaint; and

(j)    Whether Plaintiffs and Class members are entitled to damages,

restitution, equitable, injunctive, compulsory, and/or other relief

91.    **Typicality.**  Plaintiffs' claims are typical of the claims of the other

Class members in that Plaintiffs sustained damages arising out of the same illegal

actions and conduct by FCA.

92.     **Adequacy of Representation.**  Plaintiffs will fairly and adequately

protect the interests of Class members.  Plaintiffs have retained counsel that is

highly experienced in complex consumer class action litigation, and Plaintiffs

intend to vigorously prosecute this action on behalf of the Classes.  Furthermore,

Plaintiffs have no interests that are antagonistic to those of the Classes.

93.     **Superiority.**  A class action is superior to all other available means for

the fair and efficient adjudication of this controversy.  The damages or other

financial detriment suffered by Class members is relatively small compared to the

burden and expense of individual litigation of their claims against FCA.  It would,

thus, be virtually impossible for Class members, on an individual basis, to obtain

effective redress for the wrongs committed against them.  Furthermore, even if

Class members could afford such individualized litigation, the court system could

not.  Individualized litigation would create the danger of inconsistent or

contradictory judgments arising from the same set of facts.  Individualized litigation

would also increase the delay and expense to all parties and the court system from

the issues raised by this action.  By contrast, the class action device provides the

benefits of adjudication of these issues in a single proceeding, economies of scale,

and comprehensive supervision by a single court, and presents no unusual

management difficulties under the circumstances.

94.     In the alternative, the Class and Subclasses may also be certified because:

(a)     the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for FCA;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     FCA acted or refused to act on grounds generally applicable to the Class and Subclasses whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

## **CLAIMS FOR RELIEF**

## **COUNT I**
### **Breach of Express Warranty**

95.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

96.     Plaintiffs bring this claim on behalf of themselves and the Classes.

97.     FCA is and was at all relevant times merchants and sellers of motor vehicles as defined under the Uniform Commercial Code.

98.     With respect to leases, FCA is and was at all relevant times lessors of motor vehicles as defined under the Uniform Commercial Code.

99.     The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

100.    As described above, FCA promised, warranted, and/or advertised that the Class Vehicles were equipped with a 6-speed manual transmission suitable for an engine that produces 285 horsepower and 260 lb-ft of torque.  These warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles formed a basis of the bargain that was reached when Plaintiffs and Class members purchased or leased their Class Vehicles.

101.    The Class Vehicles owned by Plaintiffs and Class members are vulnerable to experiencing the Clutch Defect during normal operation and with no warning.  Plaintiffs and Class members had no knowledge of the existence of the defect, which was known and concealed by FCA.  Despite the existence of these warranties, FCA failed to inform Plaintiffs and Class members that the Class Vehicles contained the Clutch Defect.

102.    Plaintiffs and Class members could not have reasonably discovered the Clutch Defect prior to failure.  Due to the fact that the parts affected by the Clutch

Defect are internal, mechanical components, and the failure manifests suddenly and without warning, Plaintiffs and Class members have no warning that the Clutch Defect has manifested until there is a failure.

103.   Because of the Clutch Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of the Class Vehicles to perform the function of safe and reliable transportation.

104.   FCA breached its express warranties by selling and leasing Class Vehicles that were defective with respect to materials, workmanship or factory preparation.  In other words, even though the vehicles are warranted to have a 6-speed manual transmission capable of handling 285 horsepower and 260 lb-ft of torque, the clutch and/or transmission components fail during normal operation.

105.   FCA further breached its express warranties by refusing to repair or replace the faulty clutch and/or transmission components with parts of a more robust and suitable specification. Instead, when FCA has replaced clutch components due to the Clutch Defect, it has simply installed new versions of the same problematic parts.  In connection with the purchase or lease of each of the Class Vehicles, FCA provided warranty coverage for the Class Vehicles, as alleged above.  Under the warranties provided to Plaintiffs and Class members, FCA promised to repair or replace covered defective components arising out of defects in materials, workmanship or factory preparation, excluding tires, at no cost to owners

and lessors of the Class Vehicles.

106.   Even when FCA does repair the Clutch Defect under the Basic

warranty, the repair is ineffective.  That is because FCA's practice of replacing

faulty clutch components with equally defective replacement parts leaves the clutch

susceptible to repeated failure and thus does not effectively remedy the Clutch

Defect. This has been the case with the First Recall, the Second Recall, and will

certainly be the same with the Third Recall.

107.   The limited warranty promising to repair and/or correct a

manufacturing defect fails in its essential purpose because the remedy is insufficient

to make Plaintiffs and Class members whole because, on information and belief,

FCA has failed and/or have refused to adequately provide the promised remedies

within a reasonable time.

108.   Because of FCA's breach of express warranty as set forth herein,

Plaintiffs and Class members assert, as additional and/or alternative remedies, the

revocation of acceptance of the goods and the return to Plaintiffs and Class

members of the purchase or lease price of all Class Vehicles currently owned or

leased, and for such other incidental and consequential damages as allowed.

109.   As a direct and proximate result of FCA's breach of express

warranties, Plaintiffs and Class members have been damaged in an amount to be

determined at trial.

## COUNT II

### Breach of Implied Warranty

110.    Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

111.    Plaintiffs bring this claim on behalf of themselves and the Classes.

112.    FCA marketed and placed the Class Vehicles into the stream of commerce with the intent they be purchased by Plaintiffs and Class Members.

113.    FCA is a "merchant" for purposes of the Uniform Commercial Code because the company regularly sells consumer automobiles of this kind.

114.    As a result of the Clutch Defect, the Class Vehicles were defective and not of merchantable quality when they left FCA's control.  Plaintiffs and Class Members used their Class Vehicles for the ordinary purpose that consumer automobiles are used—to reliably, comfortably, and safely transport passengers and belongings for personal, family, or household purposes.  Despite Plaintiffs' and Class members' ordinary and expected use of their vehicles, the Class Vehicles did not adhere to minimal consumer expectations, were not of fair and average quality, and would not pass without objection in the consumer automotive industry at the time of sale because the 6-speed manual transmissions was not able to handle the 285 horsepower and 260 lb-ft of torque produced by the engines in the Class Vehicles.

115.    Plaintiffs and Class Members reasonably expect to receive a vehicle

that is reasonably safe when purchasing the Class Vehicles, but that is not the case here. The Class Vehicles pose an unreasonable danger to Plaintiffs, Class Members, and anyone within their vicinity. Plaintiffs and Class members should not be subject to their Class Vehicles igniting in flames during normal use.

116.   FCA has been given a reasonable opportunity to cure its breach of the implied warranty of merchantability and/or Plaintiffs and Class members were not required to do so because such an opportunity would be futile.  FCA has known about the Clutch Defect since and failed to repair or replace the Class Vehicles to a minimum standard of quality.

117.   Plaintiffs and other Class members who purchased or leased a Class Vehicle directly from Jeep are entitled to the benefit of their bargain: a Class Vehicle with a 6-speed manual transmission capable of handling the 285 horsepower and 260 lb-ft of torque produced by the Class Vehicles' engines that does not fail during normal operation.

118.   Likewise, Class members who purchased or leased a Certified Pre-Owned Class Vehicle are entitled to the benefit of their bargain: a Class Vehicle with a 6-speed manual transmission capable of handling the 285 horsepower and 260 lb-ft of torque produced by the Class Vehicles' engines that does not fail during normal operation.

119.   Class members who purchased new Class Vehicles from FCA-

affiliated dealerships and Certified Pre-Owned Class Vehicles are the intended

ultimate consumers of the Class Vehicles, and therefore are third-party beneficiaries

for the purposes of their implied warranty claims.

120.    FCA's attempt to disclaim or limit the implied warranty of

merchantability vis-à-vis consumers is unconscionable and unenforceable here.

Specifically, FCA's warranty limitation is unenforceable because FCA knowingly

sold a defective product without informing consumers about the defect.  Further, a

disclaimer of implied warranties is effective only if it is conspicuous and made

available to the consumer prior to the sale of the product.  Any purported disclaimer

here was not conspicuous and not made available to consumers prior to the sale of

the product.

121.    As a direct and proximate result of FCA's breach of implied warranty,

Plaintiffs and Class Members have been damaged in an amount to be determined at

trial.

## **COUNT III**
### **Unjust Enrichment**

122.    Plaintiffs incorporate and reallege each preceding paragraph as though

fully set forth herein.

123.    Plaintiffs bring this claim on behalf of themselves and the Classes.

124.    To the extent required by law, Plaintiffs bring this claim in the

alternative to other legal claims alleged in the complaint, as permitted under Federal

Rule of Civil Procedure 8.

125.   Plaintiffs and members of the Classes conferred a benefit on FCA by leasing or purchasing the Class Vehicles.  FCA was and should have been reasonably expected to provide Class Vehicles free from the Clutch Defect.

126.   FCA unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of its omissions and concealment of the Clutch Defect in the Class Vehicles.  FCA benefited, at Plaintiffs' expense, when it sold or leased Plaintiffs a vehicle that was inferior to the vehicle Plaintiffs thought they were purchasing, yet the price they paid was the price for a supposedly better functioning vehicle they thought they were purchasing.

127.   The unjust enrichment claim is not limited to omissions made at the point of sale.  FCA also unjustly profited at the expense of class members because it knows the Clutch Defect is substantially likely to materialize during the useful life of the Class Vehicles, yet refuses to provide an appropriate repair.

128.   As a proximate result of FCA's omissions and concealment of the Clutch Defect in the Class Vehicles, and as a result of FCA's ill-gotten gains, benefits and profits, FCA has been unjustly enriched at the expense of Plaintiffs and Class Members.  It would be inequitable for FCA to retain its ill-gotten profits without paying the value thereof to Plaintiffs and Class Members.

129.   There is a direct relationship between FCA on the one hand, and

Plaintiffs and Class Members on the other, sufficient to support a claim for unjust enrichment. FCA failed to disclose the Clutch Defect to improve retail sales, which in turn improved wholesale sales. Conversely, FCA knew that disclosure of the Clutch Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact the reputation of FCA's brand among Plaintiffs and Class Members. FCA also knew its concealment and suppression of the Clutch Defect would discourage Plaintiffs and Class Members from seeking replacement or repair of the clutches thereby increasing profits and/or avoiding the cost of such replacement or repairs.

130.   Plaintiffs and members of the Classes are entitled to restitution in the amount of FCA's ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

131.   Plaintiffs and class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct. Plaintiffs and class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## COUNT IV
### Deceptive Acts or Practices, New York GBL § 349

132.   Plaintiffs hereby incorporate by reference and reallege the allegations contained in the preceding paragraphs of this Complaint.

133.    Plaintiffs Myslivecek and Schaffner bring this claim on behalf of themselves and on behalf of the other members of the New York Subclass against Defendant.

134.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices concerning the Clutch Defect.

135.    The foregoing deceptive acts and practices were directed at consumers.

136.    The foregoing deceptive acts and practices are misleading in a material way because, in the course of Defendant's business, they willfully failed to disclose and actively concealed the Clutch Defect as described above.  Further, Defendant misrepresented the true nature of the Class Vehicles.  Accordingly, Defendant made untrue, deceptive or misleading representations of material facts and omitted and/or concealed material facts.

137.    Defendant engaged in deceptive acts or practices when it failed to disclose material information concerning the Class Vehicles which was known to Defendant at the time of the sale.  Defendant deliberately withheld the information about the defect in order to postpone or prevent its warranty obligations and to induce the consumer to enter into a transaction.

138.    The reliability of the Class Vehicles was material to Plaintiffs and the other members of the New York Subclass.  Had Plaintiffs and the other members of the New York Subclass known that their Class Vehicles had the Clutch Defect, they

would not have purchased the Class Vehicles, or would have done so on materially different terms.

139.    Because Defendant's deception takes place in the context of automobile safety, that deception affects the public interest.

140.    Plaintiffs Myslivecek and Schaffner purchased his vehicle in New York.

141.    Defendant's unlawful conduct constitutes unfair acts or practices that have the capacity to and that do deceive consumers and have a broad impact on consumers at large.

142.    Plaintiffs and the other members of the New York Subclass suffered injury caused by Defendant's failure to disclose material information.  Plaintiffs and the other members of the New York Subclass overpaid for their vehicles and did not receive the benefit of their bargain.  The defective Class Vehicles do not operate reliably and pose a grave safety threat.  The value of the Class Vehicles has diminished now that the defect has come to light, and that the class vehicles are not safe.

143.    On behalf of themselves and other members of the New York Subclass, Plaintiffs Myslivecek and Schaffner seek to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, and reasonable attorneys' fees, and any other relief permitted under New

York Gen. Bus. Law § 349.

## COUNT V

### False Advertising, New York Gen. Bus. Law § 350

144.  Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

145.  Plaintiffs Myslivecek and Schaffner bring this claim on behalf of themselves and on behalf of the members of the proposed New York Subclass.

146.  Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

147.  The foregoing acts were directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

148.  This misrepresentations and omissions at issue here resulted in consumer injury or harm to the public interest.

149.  Plaintiffs Myslivecek and Schaffner and New York Subclass members were injured as a direct and proximate result of Defendant's violation because (a) they would not have purchased Defendant's Products had they known the products were defective, (b) they overpaid for the class vehicles, and (c) the Products did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiffs Myslivecek and Schaffner and members of the New York Subclass have been damaged.

150.    On behalf of themselves and other members of the New York

Subclass, Plaintiffs Myslivecek and Schaffner seek to enjoin the unlawful acts and

practices described herein, to recover actual damages or five hundred dollars per

violation, whichever is greater, and reasonable attorneys' fees, and any other relief

permitted under New York Gen. Bus. Law § 350.

## COUNT VI
### California's Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.* ("CLRA")

151.    Plaintiffs incorporate and reallege each preceding paragraph as though

fully set forth herein.

152.    Plaintiff Chow brings this claim on behalf of himself and the other

members of the California Subclass against FCA.

153.    FCA is a "person" as defined by California Civil Code § 1761(c).

154.    Plaintiff Chow and the other California Subclass members are

"consumers" within the meaning of California Civil Code § 1761(d).

155.    By failing to disclose and concealing the Clutch Defect, FCA violated

California Civil Code § 1770(a), as it represented that the Class Vehicles had

characteristics and benefits that they do not have, represented that the Class

Vehicles were of a particular standard, quality, or grade when they were of another,

and advertised the Class Vehicles with the intent not to sell them as advertised.  *See*

Cal. Civ. Code §§ 1770(a)(5), (7) & (9).

156.   FCA's unfair and deceptive acts or practices occurred repeatedly in FCA's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

157.   FCA knew that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

158.   FCA was under a duty to Plaintiffs and the other members of the California Subclass to disclose the defective nature of the Class Vehicles' clutch and/or the associated repair costs because: a) FCA was in a superior position to know the true state of facts about Clutch Defect; b) Plaintiffs and the Class members could not reasonably have been expected to learn or discover that their Class Vehicles have a dangerous safety defect until after they purchased the Class Vehicles; and c) FCA knew that Plaintiffs and the other Class members could not reasonably have been expected to learn about or discover the Clutch Defect.

159.   By failing to disclose the Clutch Defect, FCA knowingly and intentionally concealed material facts and breached its duty not to do so.

160.   The facts concealed or not disclosed by FCA are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.  Had Plaintiffs and the other Class members known about the Clutch Defect at the time

of purchase, they would not have purchased the Class Vehicles or would have paid less for them.

161.   As a result of FCA's misconduct, Plaintiff Chow and other Class members have been harmed and have suffered actual damages in that the Class Vehicles are defective and require repairs or replacement.

162.   As a direct and proximate result of FCA's unfair or deceptive acts or practices, Plaintiff Chow and the other Class members have suffered and will continue to suffer monetary losses.

163.   On or about February 16, 2021, prior to filing this action, a CLRA notice letter was served on FCA that complies in all respects with California Civil Code § 1782(a).

164.   Plaintiffs and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the violations of the CLRA at issue here.  Legal remedies available to Plaintiffs and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce

evidence to support an award of damages.  Damages and restitution are not the

same amount.  Unlike damages, restitution is not limited to the amount of money

defendant wrongfully acquired plus the legal rate of interest.  Equitable relief,

including restitution, entitles the plaintiffs to recover all profits from the

wrongdoing, even where the original funds taken have grown far greater than the

legal rate of interest would recognize.  In short, significant differences in proof and

certainty establish that any potential legal claim cannot serve as an adequate remedy

at law.

165.   In connection with their CLRA claim, Plaintiff Chow and the

California Subclass members seek all relief available under the statute.

166.   Defendant's willful, malicious, and fraudulent conduct, in particular its

continued instance throughout the prior-filed action that the Second Recall fully

eliminated the Clutch Defect, makes punitive damages appropriate here.

### COUNT VII
**Cal. Unfair Competition Law ("UCL"),**
**Bus. & Prof. Code § 17200 *et seq.***

167.   Plaintiffs hereby incorporate by reference and reallege the allegations

contained in the preceding paragraphs of this Complaint.

168.   Plaintiff Chow brings this cause of action on behalf of himself and the

other members of the California Subclass against FCA.

169.   California Business & Professions Code Section 17200 prohibits acts

of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

170.   FCA knew that the Class Vehicles suffered from a latent Clutch Defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

171.   In failing to disclose the Clutch Defect, FCA knowingly and intentionally concealed material facts and breached its duty to disclose, thereby engaging in a fraudulent business act or practice within the meaning of the UCL.

172.   FCA was under a duty to Plaintiff Chow and the other members of the California Subclass to disclose the Clutch Defect because: a) FCA was in a superior position to know the true state of facts about the safety defect in the Class Vehicles; b) FCA made partial disclosures about the Class Vehicles without revealing the Clutch Defect; and c) FCA actively concealed the Clutch Defect from Plaintiff Chow and the other Class members at the time of sale and thereafter.

173.   The facts concealed or not disclosed by FCA are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease the Class Vehicles, or to pay less for them.  Had Plaintiff Chow and the Class members known about the Clutch Defect at the time of purchase, they would not have purchased or leased the Class Vehicles or would have paid less for them.

174.   FCA's omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of the UCL, in that FCA's conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.  Plaintiff Chow also asserts a violation of public policy arising from FCA's withholding of material safety facts from consumers.  FCA's violation of consumer protection and unfair competition laws resulted in harm to consumers.

175.   FCA's omissions of material facts, as well as post-sale refusal to remedy the Clutch Defect or pay for necessary repairs, also constitute unlawful business acts or practices because they violate consumer protection laws, warranty laws and the common law as set forth herein.

176.   FCA's omissions of material facts, as well as post-sale refusal to remedy the Clutch Defect or pay for necessary repairs, also constitute "unfair" conduct under the UCL, because FCA's conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  There is no utility to FCA's conduct; or alternatively, any such utility is outweighed by the gravity of harm to Plaintiff Chow and to class members.  Furthermore, the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury is one that consumers could not have reasonably avoided.

177.   FCA knowingly sold Class Vehicles with unreliable and defective

clutches, and then refused to pay for necessary repairs, in order to save money. FCA knew that Plaintiff Chow and class members would suffer financial harm as a result of the Clutch Defect in the form of repair costs and diminution in value to their Class Vehicles, and in fact Plaintiff Chow and class members have suffered such financial harm.

178.    FCA's unfair or deceptive acts or practices occurred repeatedly in FCA's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

179.    As a direct and proximate result of FCA's unfair and deceptive practices, Plaintiff Chow and the other members of the California Subclass have suffered and will continue to suffer out-of-pocket losses.

180.    Plaintiff Chow and the members of the California Subclass have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the violations of the UCL at issue here.  Legal remedies available to Plaintiff Chow and California Subclass members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines

that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.

Damages and restitution are not the same amount.  Unlike damages, restitution is

not limited to the amount of money defendant wrongfully acquired plus the legal

rate of interest.  Equitable relief, including restitution, entitles the plaintiffs to

recover all profits from the wrongdoing, even where the original funds taken have

grown far greater than the legal rate of interest would recognize.  In short,

significant differences in proof and certainty establish that any potential legal claim

cannot serve as an adequate remedy at law.

181.   In connection with their UCL claim, Plaintiff Chow and the California

Subclass members seek restitution, disgorgement, injunctive relief, and any other

relief available under the statute.

### COUNT VIII
**Breach of Implied Warranty Under the Song-Beverly Act,
Cal. Civ. Code § 1790 *et seq.***

182.   Plaintiffs hereby incorporate by reference and reallege the allegations

contained in the preceding paragraphs of this Complaint.

183.   Plaintiff Chow brings this cause of action on behalf of himself and the

other members of the California Subclass against FCA.

184.   Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code

§ 1790, et seq., every sale of consumer goods in California is accompanied by both

a manufacturer's and retail seller's implied warranty that the goods are

merchantable, as defined in that Act.

185.   The Class Vehicles at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

186.   Plaintiff Chow and the California Subclass members who purchased the Class Vehicles are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

187.   FCA is in the business of manufacturing, assembling, producing and/or selling the Class Vehicles to retail buyers, and therefore are a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

188.   FCA impliedly warranted to Plaintiff Chow and Class members that the Class Vehicles were equipped with a 6-speed manual transmission suitable for an engine that produces 285 horsepower and 260 lb-ft of torque.  However, the propensity of the Clutch Defect to cause clutches to fail prematurely renders the Class Vehicle to not be of the quality that buyer or lessee would reasonably expect, and therefore not merchantable.

189.   FCA impliedly warranted to retail buyers that the Class Vehicles were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Class Vehicles.  However, the clutch in the Class Vehicles is not suitable for use during normal and foreseeable driving conditions because of the clutch defect. FCA breached implied warranties because the Class Vehicles were unsafe and

defective.  Therefore, the Class Vehicles would not pass without objection in the trade or industry, were not fit for the ordinary purpose for which they are used.

190.   The Class Vehicles were defective at the time of sale when they left the exclusive control of FCA or FCA's agents.  The defect described in this complaint was latent in the product and not discoverable at the time of sale.  The Class Vehicles thus were not merchantable at the time of sale as they do not conform to FCA's promises or affirmations of fact that the Class Vehicles were equipped with a 6-speed manual transmission suitable for an engine that produces 285 horsepower and 260 lb-ft of torque.

191.   FCA knew that the Class Vehicles would be purchased and used without additional testing by Plaintiffs and Class members.

192.   Even if FCA's express warranty purportedly included a disclaimer, the disclaimer was legally insufficient to bar this claim.  Under section 1792.3 of the Song-Beverly Act, implied warranties of merchantability and fitness may only be waived when the sale of consumer goods is made on an "as is" or "with all faults" basis.  The Class Vehicles were not sold on an "as is" or "with all faults" basis.

193.   As a direct and proximate cause of FCA's violation of the Song-Beverly Act, Plaintiff Chow and California Subclass members have been injured and harmed because they would not have purchased Class Vehicles if they knew about the Clutch Defect, or would not have purchased them on the same terms.

194.    Plaintiff Chow and the California Subclass members seek all relief available under the Song-Beverly Act.

## COUNT IX
## New Jersey Consumer Fraud Act ("NJCFA")

195.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully set forth herein.

196.    Plaintiff Caputo brings this cause of action on behalf of himself and the other members of the New Jersey Subclass against FCA.

197.    Plaintiff Caputo and New Jersey Subclass members have suffered an injury in fact and lost money or property as a result of FCA's violations of New Jersey's Consumer Fraud Act ("NJCFA").  Mr. Caputo's ascertainable loss includes diminution in value due to the Clutch Defect and overpayment for his Class Vehicle.

198.    The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . ."  N.J. Stat. Ann. § 56:8-2.

199.    Plaintiff Caputo and New Jersey Subclass members are consumers who purchased and/or leased Class Vehicles for personal, family or household use.

200.    FCA engaged in unlawful conduct by deliberately and knowingly failing to disclose the Clutch Defect to secure the sale and/or lease of the Class

Vehicles at a premium price.  FCA also failed to disclose the Clutch Defect during

the limited warranty period to avoid having to perform warranty repairs.

201.   For the reasons alleged above, FCA knew that the Class Vehicles

contained the Clutch Defect and that the defect would manifest before that

product's expected useful life.

202.   FCA did not fully and truthfully disclose to its customers the true

nature of the Clutch Defect in the Class Vehicles, nor was this defect readily

discoverable at the time of purchase or lease.

203.   FCA intended that Plaintiffs and the Class members rely on FCA's

omissions, so that consumers would purchase and/or lease the Class Vehicles.

204.   Accordingly, FCA has engaged in unfair and deceptive trade practices,

including advertising Class Vehicles with the intent to not sell them as advertised

(i.e., with a clutch suitable for the application); and otherwise engaging in conduct

likely to deceive.  Further, FCA's acts and practices described herein offend

established public policy because the harm caused to consumers outweighs any

benefit associated with such practices, and because FCA fraudulently concealed the

defective nature of the Class Vehicles from consumers.

205.   FCA's actions as set forth above occurred in the conduct of trade or

commerce.

206.   By engaging in the above-described practice and the actions and

omissions herein alleged, Defendant has committed one or more unlawful acts in violation of the NJCFA.

207.    Plaintiff Caputo seeks, on behalf of himself and the New Jersey Subclass, all relief available under the NJCFA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully ask this Court to enter judgment against FCA and in favor of Plaintiffs and the Classes, and award the following relief:

A.    An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs representative of the Class and Subclasses, and Plaintiffs' counsel as counsel for the Class and Subclasses;

B.    An order awarding declaratory relief and enjoining FCA from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

C.    Injunctive and equitable relief in the form of a comprehensive program to repair the Clutch Defect, and/or buyback all Class Vehicles, and to fully reimburse and make whole all Class and Subclass members for all costs and economic losses;

D.    A declaration that FCA is financially responsible for all Class notice and the administration of Class relief;

E.    An order awarding to the extent available under governing law, restitution, disgorgement, punitive damages, treble damages, exemplary damages and statutory damages; and compensatory damages for economic loss and out-of-pocket costs in an amount to be determined at trial;

F.    A declaration that FCA is required to engage in corrective advertising;

G.    An order requiring FCA to pay both pre- and post- judgment interest on any amounts awarded;

H.    An award of costs, expenses, and attorneys' fees as permitted by law; and

I.    Such other or further relief as the Court may deem appropriate, just, and equitable.

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated:  November 7, 2023                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____*/s/ Joel D. Smith*_____

Joel D. Smith
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email:  jsmith@bursor.com


**BURSOR & FISHER, P.A.**
Matthew A. Girardi
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  mgirardi@bursor.com

*Attorneys for Plaintiffs*

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Nick Suciu III
6905 Telegraph Road Suite 115
Bloomfield Hills, MI 48301
Telephone: 313-303-3472
Email: nsuciu@milberg.com

*Local Counsel*