## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DEAN MYSLIVECEK, *et al.*,

                Plaintiffs,

vs.

FCA US LLC,

                Defendant.

_____/

Case No. 5:23-cv-12980

Hon. Judith E. Levy

Magistrate Judge Elizabeth A. Stafford

## DEFENDANT FCA US LLC'S MOTION TO DISMISS
## CLASS ACTION COMPLAINT UNDER RULES 12(b)(1) AND 12(b)(6)

FCA US LLC ("FCA US") moves to dismiss Plaintiff's Class Action Complaint (ECF #1) under Federal Rules of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a plausible claim for relief. In support, FCA US relies on the attached brief and accompanying exhibits.

On January 25, 2024, pursuant to E.D. Mich. LR 7.1(a), defense counsel had a telephone conference with Plaintiffs' counsel during which FCA US explained the nature and legal bases of the motion and requested, but did not obtain, concurrence in the relief sought.

WHEREFORE, FCA US respectfully requests that the Court grant its motion and dismiss Plaintiff's Class Action Complaint with prejudice.

Dated: January 29, 2024

Respectfully submitted,

THOMPSON COBURN LLP

By: */s/ Thomas L. Azar, Jr.*
   Stephen A. D'Aunoy (MO/54961)
   Thomas L. Azar, Jr. (MO/56634)
   One US Bank Plaza
   St. Louis, Missouri 63101
   (314) 552-6000
   sdaunoy@thompsoncoburn.com
   tazar@thompsoncoburn.com

KLEIN THOMAS LEE & FRESARD
Fred Fresard (P43694)
Ian Edwards (P82021)
101 W. Big Beaver Road, Suite 1400
Troy, Michigan 48084
(248) 509-9270
Fred.Fresard@kleinthomaslaw.com
Ian.Edwards@kleinthomaslaw.com

*Counsel for Defendant FCA US LLC*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DEAN MYSLIVECEK, *et al.*,

        Plaintiffs,

vs.

FCA US LLC,

        Defendant.

_____/

Case No. 5:23-cv-12980

Hon. Judith E. Levy

Magistrate Judge Elizabeth A. Stafford

---

## DEFENDANT FCA US LLC'S BRIEF
## IN SUPPORT OF ITS MOTION TO DISMISS
## CLASS ACTION COMPLAINT
## UNDER RULES 12(b)(1) AND 12(b)(6)

---

**TABLE OF CONTENTS**

ISSUES PRESENTED......................................................................... vii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ ix

INDEX OF EXHIBITS ........................................................................x

I.   INTRODUCTION ...................................................................1

II.  BACKGROUND ......................................................................3

    A.   The Defect Allegations. .................................................3

    B.   The NHTSA-Approved Recalls. ....................................3

    C.   Plaintiffs' Vehicle Experiences......................................6

    D.   The Warranties Covering Plaintiffs' Vehicles.............................8

    E.   The Proposed Classes, Claims, And Relief Sought..................9

III. ARGUMENT...........................................................................10

    A.   The Governing Legal Standards. ..............................10

    B.   Dismissal Under Rule 12(b)(1)...............................12

        **1.**   Lack of Standing & Mootness. ......................12

        **2.**   The Nationwide Class Claims (Counts I, II, III). ...........16

    C.   Dismissal Under Rule 12(b)(6)...............................17

        **1.**   No Breach of Express Warranty (Count I)....................17

        **2.**   No Breach of Implied Warranty (Counts II, VIII). ........19

        **3.**   No Claim For Unjust Enrichment (Count III). ..............20

        **4.**   The Statutory Fraud Claims (Counts IV, V, VI, VII, IX). ......................................................21

IV.  CONCLUSION .....................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F.Supp.2d 496 (D.N.J. 2006) ..................................................................................................21

*Alban v. BMW of N.Am.*, 2011 WL 900114 (D.N.J. 2011).....................................23

*Ambrose v. Gen. Motors LLC*, 2022 WL 3701946 (E.D.Mich. 2022) ....................16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................11

*Beck v. FCA US LLC*, 273 F.Supp.3d 735 (E.D.Mich. 2017) ....................18, 20, 24

*Berger v. Mazda Motor of Am., Inc*., 2019 WL 1428449 (E.D.N.Y. 2019) ..................................................................................................19

*Chamber of Commerce v. United States Dept. of Energy*, 627 F.2d 289 (D.C.Cir. 1980) ..................................................................12, 13

*Chiarelli v. Nissan N. Am., Inc.*, 2015 WL 5686507 (E.D.N.Y. 2015)...................22

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ...............................................12

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) ......................20

*Coba v. Ford Motor Co.*, 932 F.3d 114 (3d Cir. 2019) ...........................................17

*Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177 (N.Y. 2012) ...............................21

*Crawford v. FCA US LLC*, 2021 WL 3603342 (E.D.Mich. 2021)..........................16

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ...........................................10

*Danielkiewicz v. Whirlpool Corp.*, 426 F.Supp.3d 426 (E.D.Mich. 2019) ..................................................................................................17

*Diaz v. Ford Motor Co.,* 2023 WL 6164455 (E.D.Mich. 2023)..............................14

*Flores v. FCA US LLC*, 2020 WL 7024850 (E.D.Mich. 2020)...............................15

*Flores v. FCA US LLC*, 2021 WL 1122216 (E.D.Mich. 2021)..................17, 18, 24

*Ford v. Hyundai Motor Am.* (C.D.Cal. 2021) ...........................................................19

*Garcia v. Chrysler Grp. LLC*, 127 F.Supp.3d 212 (S.D.N.Y. 2015) .....................17

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013) ...........................11, 13

*Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320 (6th Cir. 2007) .............................................................................................................11

*Glass v. BMW N. Am., LLC*, 2011 WL 6887721 (D.N.J. 2011) .............................21

*Glauberzon v. Pella Corp.*, 2011 WL 1337509 (D.N.J. 2011) ...............................21

*Gordon v. Home Loan Ctr., LLC*, 2011 WL 1261179 (E.D.Mich. 2011) ...............................................................................................................23

*Gould v. Helen of Troy Ltd.*, 2017 WL 1319810 (S.D.N.Y. 2017) ........................20

*Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507 (6th Cir. 1999) .....................4

*Hadley v. Chrysler Grp., LLC*, 624 Fed.Appx. 374 (6th Cir. 2015) ............13, 14, 15

*Hall v. Gen. Motors, LLC*, 2020 WL 1285636 (E.D.Mich. 2020) ...................23, 24

*Harrison v. Gen. Motors, LLC*, 2023 WL 348962 (E.D.Mich. 2023) .....................16

*Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of Mich.*, 2013 WL 2285453 (E.D.Mich. 2013) ...............................................................................23

*Hollingsworth v. Perry*, 570 U.S. 693 (2013) ........................................................12

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Economy Mktg. & Sales Practices Litig.*, 2022 WL 551221 (E.D.Mich. 2022) ..............................17

*In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F.Supp.3d 618 (E.D.Mich. 2019) ..............................................................21

*In re Gen. Motors LLC Ignition Switch Litig.*, 257 F.Supp.3d 372 (S.D.N.Y. 2017) ..........................................................................................21, 25

*Kahn v. FCA US LLC*, 2019 WL 3955386 (C.D.Cal. 2019) ..................................21

*Kaye v. Grossman*, 202 F.3d 611 (2d Cir. 2000) ...................................................21

*Kommer v. Ford Motor Co.*, 2017 WL 3251598 (N.D.N.Y. 2017) .........................25

*Los Angeles Cty. v. Davis*, 440 U.S. 625 (1979)..................................................11, 13

*Matanky v. Gen. Motors LLC*, 370 F.Supp.3d 772 (E.D.Mich. 2019) .............16, 17

*McKee v. Gen. Motors LLC*, 376 F.Supp.3d 751 (E.D.Mich. 2019)................16, 24

*Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005)..........................................................11

*Milman v. FCA US LLC*, 2019 WL 3334612 (C.D.Cal. 2019) ...............................21

*Myslivecek v. FCA US LLC*, 2022 WL 17904526 (E.D.Mich. 2022) ..........1, 11, 15

*Myslivecek v. FCA US LLC*, Case No. 21-cv-10346 (E.D.Mich.)..................*passim*

*Oden v. Boston Scientific Corp.*, 330 F.Supp.3d 877 (E.D.N.Y. 2018) .................19

*Pacheco v. Ford Motor Co.*, 2023 WL 2603937 (E.D.Mich. 2023) .......................15

*Pistorio v. FCA US LLC*, 2022 WL 141524 (E.D.Mich. 2022) ........................16, 17

*Robinson v. Unilever United States, Inc.*, 2019 WL 2067941 (C.D.Cal. 2019) ....................................................................................................................22

*Roe v. Ford Motor Co.*, 2019 WL 3564589 (E.D.Mich. 2019)...............................24

*Rosipko v. FCA US, LLC*, 2015 WL 8007649 (E.D.Mich. 2015) ..........................23

*Rutkofske v. Norman*, 114 F.3d 118, 1997 WL 299382 (6th Cir. 1997) ................11

*Schultz v. Tecumseh Prods.*, 310 F.2d 426 (6th Cir. 1962) .....................................17

*Sharp v. FCA US LLC*, 637 F.Supp.3d 454 (E.D.Mich. 2022) ..............................15

*Sheris v. Nissan N.Am., Inc.*, 2008 WL 2354908 (D.N.J. 2008) .............................19

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976)................................10, 12

*Slebodnik v. Reynolds & Reynolds Co.*, 2014 WL 6609132 (D.N.J. 2014) ....................................................................................................................19

*Smith v. Gen. Motors LLC*, 988 F.3d 873 (6th Cir. 2021)......................................24

*Solak v. Ford Motor Co.*, – F.Supp.3d –, 2023 WL 4628456 (E.D.Mich. 2023) ............................................................................................15, 24

- iv -

*Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016) ........................................................12

*Stevenson v. Mazda Motor of Am., Inc.*, 2015 WL 3487756 (D.N.J. 2015) ........................................................................................................22, 23

*Storey v. Attends Healthcare Prods., Inc.*, 2016 WL 3125210 (E.D.Mich. 2016) ...................................................................................21

*Tomasino v. Estee Lauder Cos., Inc.*, 44 F.Supp.3d 251 (E.D.N.Y. 2014) ..................................................................................................22

*Troup v. Toyota Motor Corp.*, 545 Fed.Appx. 668 (9th Cir. 2013)........................17

*United States v. Phila. Nat'l Bank*, 374 U.S. 321 (1963) ........................................15

*United States v. Street*, 933 F.2d 1010, 1991 WL 85255 (6th Cir. 1991) ......................................................................................................12

*Uzelac v. Mercedes-Benz USA, LLC*, 2020 WL 13577557 (E.D.Mich. 2020) ......................................................................................................15

*Warth v. Seldin*, 422 U.S. 490 (1975) ....................................................................10

*Wayside Church v. Van Buren Cty.*, 847 F.3d 812 (6th Cir. 2017) ..........................3

*Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208 (10th Cir. 2012) ................................................................................................13, 15

*Wisecarver v. Moore*, 489 F.3d 747 (6th Cir. 2007)...............................................11

*Withrow v. FCA US LLC*, 2021 WL 2529847 (E.D.Mich. 2021) ...........................16

*Wozniak v. Ford Motor Co.*, 2019 WL 108845 (E.D.Mich. 2019) .........................23

*Zanger v. Gulf Stream Coach, Inc.*, 2006 WL 1494952 (E.D.Mich. 2006) ......................................................................................................19

**Statutes and Constitutional Provisions**

49 U.S.C. § 30118 ....................................................................................................15

49 U.S.C. § 30120 ....................................................................................................15

49 U.S.C. § 30165 ....................................................................................................15

Cal. Bus. & Prof. Code § 17200, *et seq.* ...........................................................10, 22

Cal. Civ. Code § 1750, *et seq.*..............................................................................9, 22

Cal. Civ. Code § 1790, *et seq.*.............................................................................10, 19

N.J. Stat. Ann. § 56:8-2, *et seq.* ...............................................................................10

N.Y. Gen. Bus. Law § 349 ..........................................................................9, 22, 25

N.Y. Gen. Bus. Law § 350..........................................................................9, 22, 25

**Rules**

Fed. R. Civ. P. 8 .........................................................................................22

Fed. R. Civ. P. 9 .........................................................................................22

Fed. R. Civ. P. 12 ...............................................................................*passim*

## ISSUES PRESENTED

1. Should all of Plaintiffs' claims be dismissed for lack of standing and as moot, when they are simply based on a speculative fear the remedies provided under recalls approved by the National Highway Traffic Safety Administration ("NHTSA") might prove ineffective, and the recalls provide Plaintiffs and all affected vehicle owners a free repair and reimbursement for any prior repairs?

   This Court should respond "Yes."

2. Should Plaintiffs' claims on behalf of a nationwide class be dismissed when they cannot plead any viable claims under the laws of all fifty states?

   The Court should respond "Yes."

3. Should Plaintiffs' claims for breach of express warranty be dismissed when the warranties at issue do not cover the design defect alleged, Plaintiffs allege no facts which would establish any breach, their written warranties are the only express warranties FCA US provided for their vehicles, and Plaintiffs do not allege they saw any other promise before purchasing their vehicles?

   The Court should respond "Yes."

4. Should Plaintiffs' claims for breach of implied warranty be dismissed when they plead no facts to suggest their vehicles are unfit for providing transportation, and Plaintiffs Myslivecek, Chow, and Schaffner admit they lack the privity required for such a claim?

   The Court should respond "Yes."

5. Should Plaintiffs' claims for unjust enrichment be dismissed when express warranties exist to define the parties' rights and expectations, no direct benefit to FCA US is alleged, there are no facts pleaded showing Plaintiffs' legal remedies are inadequate, and their unjust enrichment claims are duplicative of their warranty and consumer fraud claims?

   The Court should respond "Yes."

6.     Should Plaintiffs' claims for violation of the consumer fraud statutes of California, New Jersey, and New York be dismissed when they have failed to plead any actionable misrepresentations or omissions under Rule 8(a) and Rule 9(b)?

        The Court should respond "Yes."

7.     Should Plaintiffs' omission-based claims be dismissed when they have failed to plead facts plausibly suggesting that FCA US had pre-sale knowledge of any alleged defect?

        The Court should respond "Yes."

8.     Should Plaintiff Myslivecek's and Schaffner's claims for violation of New York General Business Laws § 349 and § 350 be dismissed when they plead no manifestation of the alleged defect in their own vehicles and no facts plausibly showing any actual injury?

        The Court should respond "Yes."

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

### ***Lack of Standing/Mootness***

*Hadley v. Chrysler Grp., LLC*, 624 Fed.Appx. 374 (6th Cir. 2015)

*Diaz v. Ford Motor Co.,* 2023 WL 6164455 (E.D.Mich. 2023)

*Solak v. Ford Motor Co.*, – F.Supp.3d – , 2023 WL 4628456 (E.D.Mich. 2023)

*Pacheco v. Ford Motor Co.*, 2023 WL 2603937 (E.D.Mich. 2023)

*Sharp v. FCA US LLC*, 637 F.Supp.3d 454 (E.D.Mich. 2022)

*Myslivecek v. FCA US LLC*, 2022 WL 17904526 (E.D. Mich. 2022)

### ***No Standing for "Nationwide Class" Claims***

*Harrison v. Gen. Motors, LLC*, 2023 WL 348962 (E.D.Mich. 2023)

*Ambrose v. Gen. Motors LLC*, 2022 WL 3701946 (E.D.Mich. 2022)

*Pistorio v. FCA US LLC*, 2022 WL 141524 (E.D.Mich. 2022)

### ***No Pre-Sale Knowledge (Fraud-Based Claims)***

*Smith v. Gen. Motors LLC*, 988 F.3d 873 (6th Cir. 2021)

# INDEX OF EXHIBITS

| Exhibit | Description |
|:---:|:---|
| **A** | Redline Comparison of Class Action Complaint (ECF #1) with First Amended Complaint in *Myslivecek v. FCA US LLC*, Case No. 21-cv-10346 (E.D.Mich.) |
| **B** | Declaration of David Case |
| **C** | Customer Notification Letter for NHTSA Recall 23V-116 (*also available at* https://static.nhtsa.gov/odi/rcl/2023/RCONL-23V116-6584.pdf) |
| **D** | Part 573 Safety Recall Report for NHTSA Recall 23V-116 (updated Sept. 12, 2023) (*also available at* https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V116-9985.PDF) |
| **E** | NHTSA Recall 23V-116 Dealer Remedy Instructions (Nov. 2023) (*also available at* https://static.nhtsa.gov/odi/rcl/2023/RCRIT-23V116-5870.pdf) |
| **F** | NHTSA Recall 23V-116 Dealer Remedy Instructions (Dec. 2023) (*also available at* https://static.nhtsa.gov/odi/rcl/2023/RCRIT-23V116-5818.pdf) |
| **G** | Part 573 Safety Recall Report for NHTSA Recall 20V-124 (July 2021 Supp.) (*also available at* https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V124-5768.PDF) |
| **H** | NHTSA Recall 20V-124 Dealer Service Instructions (Apr. 2020) (*also available at* https://static.nhtsa.gov/odi/rcl/2020/RCRIT-20V124-1465.pdf) |

**I**    Part 573 Safety Recall Report for NHTSA Recall 20V-128 (July 2021 Supp.) (*also available at* https://static.nhtsa.gov/odi/rcl/2021/RCLRPT-21V028-6783.PDF)

**J**    2021 Jeep Warranty Information

**K**    2018 Jeep Warranty Information

# I. <u>INTRODUCTION</u>

This case is a refiling of a putative class action that was dismissed after this Court found Plaintiffs' allegations insufficient to demonstrate their standing or any non-moot claim. In *Myslivecek v. FCA US LLC*, Case No. 21-cv-10346 (E.D.Mich.) ("*Myslivecek I*"), the same Plaintiffs here asserted warranty, fraud, and other claims regarding certain model-year 2018-2021 Jeep Wrangler and model-year 2020-2021 Jeep Gladiator vehicles based on two recalls that FCA US was conducting under the supervision of the National Highway Traffic Safety Administration ("NHTSA").[1]

In the prior case, Plaintiffs just pointed to the announced recalls to argue their vehicles had a "clutch defect," and speculated one of the recalls might "neuter" their vehicles' engines.[2] After FCA US presented a factual attack on jurisdiction, this Court held Plaintiffs had "not provided enough evidence to establish standing for their claims or to support that their claims are not rendered moot in light of the recall," but offered them another opportunity to present evidence.[3] Plaintiffs declined that invitation and instead dismissed their case.[4]

Now, the same Plaintiffs have filed an almost identical complaint – the only

---

[1] *See Myslivecek I*, Case No. 21-cv-10346, Dkt. #11, ¶¶ 6, 32-50 (PageID.159, 170-76); *Myslivecek v. FCA US LLC*, 2022 WL 17904526, **1-8 (E.D.Mich. 2022).

[2] *See Myslivecek*, 2022 WL 17904526, at **1-2.

[3] *Id.* at **7-8.

[4] *See Myslivecek I*, Case No. 21-cv-10346, Dkt. #38.

substantive differences are that they expand the scope of the "Class Vehicles" through model-year 2023, delete their allegations about a recall "neutering" their vehicles' engines, and point to a third NHTSA-approved recall (NHTSA Recall No. 23V-116) that was issued after this Court's prior order.[5]  The third recall simply expands the remedies provided to customers under the second recall (now offering a free replacement of the entire clutch assembly with new parts, in addition to software updates/improvements and reimbursement for any prior repairs).[6]

This third recall does not negate this Court's prior findings on lack of standing and mootness; rather, it confirms they were correct.  It shows that FCA US and the NHTSA are committed to remedying (for free) any potential defect in the vehicles through the federally regulated recall process.  Notably, ***none*** of the Plaintiffs allege they have obtained the new recall repair or experienced any problems with it.

---

[5] *See* Class Action Complaint ("Comp."), ECF #1, ¶¶ 1, 8 (PageID.2, 4-5).  For the Court's convenience, FCA US also includes a redline comparison showing the limited changes between the First Amended Complaint in *Myslivecek I* (Dkt. #11 in that case) and the complaint here as Exhibit A.

[6] *See* Exhibit B, Declaration of David Case ("Case Decl."), ¶¶ 4-7, 13; *see also* Exhibit C, Customer Notification Letter for NHTSA Recall 23V-116, p. 1 (*also available at* https://static.nhtsa.gov/odi/rcl/2023/RCONL-23V116-6584.pdf); Exhibit D, Part 573 Safety Recall Report for NHTSA Recall 23V-116, p. 4 (updated Sept. 12, 2023) (*also available at* https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V116-9985.PDF); Exhibit E, NHTSA Recall 23V-116 Dealer Remedy Instructions, p. 1 (Nov. 2023) (*also available at* https://static.nhtsa.gov/odi/rcl/2023/RCRIT-23V116-5870.pdf); Exhibit F, NHTSA Recall 23V-116 Dealer Remedy Instructions, p. 1 (Dec. 2023) (*also available at* https://static.nhtsa.gov/odi/rcl/2023/RCRIT-23V116-5818.pdf).

Indeed, the recall remedy only became available in November 2023 for model-year 2023 vehicles, and in December 2023 for model-year 2018 vehicles – with repairs for other model years scheduled to roll out over the coming months.[7] Nevertheless, Plaintiffs have again rushed to file a lawsuit upon hearing of the recall, in the hope of reaping some monetary windfall from it. This Court's prior analysis and a host of authority confirm Plaintiffs lack standing, and that their claims are moot. And, their claims also suffer from a host of other fatal defects. Dismissal is required.

## II. BACKGROUND

### A. The Defect Allegations.

Plaintiffs base their claims on allegations of a defect in the "Class Vehicles," which are defined as model-year "2018-2023 Jeep Wrangler (2 door)," "2018-2023 Jeep Wrangler Unlimited (4 door)," and "2020-2023 Jeep Gladiator" vehicles "equipped with a manual transmission." *See* Comp, ¶¶ 1, 3 (PageID.2-3). But, as before, Plaintiffs just describe the defect they are suing over by pointing to various NHTSA-approved recalls. *Id.* at ¶¶ 4, 34-55 (PageID.3, 15-23).

### B. The NHTSA-Approved Recalls.[8]

***NHTSA Recall 20V-124*** – FCA US announced the first recall in March 2020

---

[7]*See* Exhibit D, p. 4 (recall schedule).

[8]In FCA US's factual attack on jurisdiction, this Court may consider outside evidence and must "weigh [] conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *See Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 817 (6th Cir. 2017). Additionally, because Plaintiffs

to address potential transmission overheating in certain model-year 2018-2020 Jeep Wrangler and model-year 2020 Jeep Gladiator vehicles that could result from a clip damaging a reservoir hose, and provided vehicle owners reimbursement and a free repair (removing the clip, replacing the hose if damaged, and installing a protective sleeve on the hose).  *See* Exhibit G, Part 573 Safety Recall Report for NHTSA Recall 20V-124, pp. 1-4 (July 2021 Supp.) (*also available at* https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V124-5768.PDF); Exhibit H, NHTSA Recall 20V-124 Dealer Service Instructions, pp. 1-2 (Apr. 2020) (*also available at* https://static.nhtsa.gov/odi/rcl/2020/RCRIT-20V124-1465.pdf); *see also* Case Decl., ¶¶ 8-9, 11.[9]

**NHTSA Recall 21V-028** – FCA US announced a second recall in January 2021 for certain model-year 2018-2021 Jeep Wranglers and model-year 2020-2021 Jeep Gladiators equipped with a manual transmission.  *See* Comp., ¶ 43 (PageID.18-19); *see also* Exhibit I, Part 573 Safety Recall Report for NHTSA Recall 20V-128, pp. 1-4 (July 2021 Supp.) (*also available at* https://static.nhtsa.gov/odi/rcl/2021/RCLRPT-21V028-6783.PDF).  This recall addressed the possibility of overheating

---

cite, quote, and rely on the various NHTSA recall filings and written warranties for their vehicles in the complaint, this Court may properly consider them even when ruling on the Rule 12(b)(6) portions of this motion to dismiss.  *See, e.g.*, *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).

[9]As Plaintiffs acknowledge, NHTSA Recall 20V-124 did **not** actually pertain to the model-year 2021 vehicles that Myslivecek, Busovicki, Caputo, and Schaffner purchased (their vehicles were not built with the clip design that was addressed in this recall).  *See* Comp., ¶ 36 (PageID.16); Case Decl., ¶ 11.

in a vehicle's transmission if the clutch was repeatedly misused (for example, by a driver launching the vehicle in second or third gear or not fully depressing the clutch pedal during shifting), providing a software update so drivers could more easily see what gear had been selected and receive warning chimes if clutch misuse caused an elevated temperature in the clutch pressure plate, and also programmed vehicles to briefly limit torque if extended clutch misuse was causing transmission temperatures to exceed a safe threshold.  *See id.* at p. 4*; see also* Case Decl., ¶¶ 10, 12; *Myslivecek I*, Case No. 21-cv-10346, Dkt. #14-2, ¶¶ 7-8 (PageID.288-89) (Declaration of Dave Valley submitted in *Myslivecek I*).

*NHTSA Recall 23V-116* – This is the third recall (and the focus of Plaintiffs' current complaint) which expands the remedies provided under Recall 21V-028. FCA US opened its initial investigation on January 10, 2023, inspected a vehicle that had exhibited a clutch failure on January 23, 2023, and announced the recall on February 23, 2023.  *See* Exhibit D, pp. 1, 3.  The expanded recall remedy is a replacement of the entire clutch assembly in addition to software updates.  *See* Case Decl., ¶ 13; Exhibit C, p. 1; Exhibit E, p. 1 (Nov. 2023); Exhibit F, p. 1 (Dec. 2023).

The NHTSA Recall 23V-116 repair procedure became available in November 2023 for model-year 2023 vehicles, and in December 2023 for model-year 2018 vehicles.  *Id.*  Repairs for other model years are scheduled to be available between April and August of this year.  *See* Exhibit D, p. 5.  The recall provides these repairs

to customers for free, and also provides reimbursement for any prior repairs.  *See* Exhibit C, p. 1; Exhibit D, p. 4; *see also* Case Decl., ¶¶ 4-7, 13.[10]

## C.   **Plaintiffs' Vehicle Experiences.**

Very little has changed in Plaintiffs' allegations about their own experiences from what they pleaded in *Myslivecek I*.  *See* Exhibit A (redline between complaints), pp. 6-10, ¶¶ 12-16.  As before, each pleads they purchased a manual-transmission Jeep vehicle from a third-party dealership, specifically:

- Myslivecek purchased a model-year 2021 Jeep Wrangler in November 2020 from a dealership in New York (*see* Comp., ¶ 12 (PageID.6));

- Busovicki purchased a model-year 2021 Jeep Wrangler in December 2020 from a dealership in Michigan (*id.* at ¶ 13 (PageID.6));

- Caputo purchased a model-year 2021 Jeep Gladiator in October 2020 from a dealership in New Jersey (*id.* at ¶ 14 (PageID.6));

- Chow purchased a purchased a model-year 2018 Jeep Wrangler in May 2019 from a dealership in California (*id.* at ¶ 15 (PageID.7)); and

- Schaffner purchased a model-year 2021 Jeep Gladiator in January 2021 from a dealership in New York (*id.* at ¶ 16 (PageID.7-8)).

Each Plaintiff again pleads identical allegations that they reviewed "the window

---

[10]Plaintiffs repeatedly (and baselessly) accuse FCA US of employing "false statements" in briefing the motion to dismiss in the prior case.  *See, e.g.*, Comp., ¶¶ 7, 49-50 (PageID.4, 20-21).  This is absurd.  Not only do Plaintiffs fail to identify *any* false statements, the undisputed timeline shows FCA US simply determined (based on an investigation opened seven months *after* it filed its motion to dismiss, and months *after* the Court's ruling on standing/mootness) that the remedy provided under NHTSA Recall 20V-128 could be improved by not only offering free software enhancements, but also by providing every vehicle owner with an entirely new clutch assembly, for free, under the third recall.

sticker and other materials," and had undescribed conversations with unknown persons at the dealerships.  *See id.* at ¶¶ 12-16 (PageID.6-8).  The window stickers are just alleged to identify the type of engine and transmission in each vehicle (*e.g.*, a "3.6L V6 24V VVT Engine Upg I With Start Stop" and "6-Speed Manual Transmission").  *See id.* at ¶¶ 69-70 (PageID.58-59).  But, there is no allegation that any of this information is false.  *See*, *generally*, Comp.

Plaintiff Myslivecek repeats his prior allegation of noticing a "burning clutch smell" in his vehicle, and adds allegations that his vehicle's clutch "failed" (in some undescribed way) in September 2023, that he was charged a $250 "deductible," and that the clutch "immediately began to fail again" – with no further details.  *See id.* at ¶ 12 (PageID.6); *see also* Exhibit A, p. 7, ¶ 12 (new allegations in blue).  He does not plead that he has obtained any of the recall repairs, or that he cannot obtain reimbursement and a repair under them.  *See*, *generally*, Comp.

Plaintiff Busovicki just pleads that he has now driven his vehicle 16,000 miles, that he had "the recall" performed on it in March 2021, and adds an averment that he "feels the need to downshift … whenever he is driving on any incline at highway speed."  *Id.* at ¶ 13 (PageID.7).  There is no allegation he ever sought any diagnosis or repair of this.  *See*, *generally*, Comp.

Caputo pleads the same allegations as in *Myslivecek I*, aside from updating his state of residence (from New Jersey to Florida).  *See id.* at ¶ 14 (PageID.7-8); *see*

*also* Exhibit A, p. 8, ¶ 14.  Just as before, he alleges that after receiving "the recall" he "has experienced a loss of torque … and also noticed faint burning smells" – but still pleads nothing to suggest he has ever sought any repair or diagnosis of what is causing this.  *See*, *generally*, Comp.

Plaintiff Chow also pleads the same allegations as before – *i.e.*, that his model-year 2018 Jeep Wrangler has produced "an intermittent smell [of] a burnt clutch, particularly when driving up hills," and that he "has not had the recall performed." *See id.* at ¶ 15 (PageID.8).  Just as before, there is still no allegation he ever sought any repair or diagnosis of his vehicle's reported issues.  *See*, *generally*, Comp.

Finally, Plaintiff Schaffner also pleads the same allegations as before – *i.e.*, that at some point his vehicle's "engine compartment filled with smoke and [emitted] a burning smell coming from the transmission," without any allegation of ever obtaining a diagnosis of that issue or what caused it, and without any allegation he has obtained any recall repair.  *See id.* at ¶ 16 (PageID.8-9).

None of the Plaintiffs allege they have received the repair being provided under NHTSA Recall 23V-116, were ever unable to safely drive their vehicles, ever stopped driving their vehicles, cannot drive them today, or ever requested any repair from FCA US or a dealership that was not provided.  *See*, *generally*, Comp.

**D.     The Warranties Covering Plaintiffs' Vehicles.**

When sold new, Plaintiffs' vehicles were covered by a 3-year/36,000 mile

Basic Limited Warranty which provides, in relevant part:

> The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective **in material, workmanship or factory preparation**…

*See* Exhibit J, 2021 Jeep Warranty Information, p. 5 (emphasis added); *see also* Exhibit K, 2018 Jeep Warranty Information; Comp. ¶ 74 (PageID.61).  The vehicles were also sold with a 5-year/60,000 mile Powertrain Limited Warranty (also limited to repairs of "workmanship and materials" defects), but Plaintiffs acknowledge this warranty does not apply to manual transmission clutch components.  *See* Exhibit J, p. 9; Exhibit K, p. 9; *see also* Comp., ¶ 77 (PageID.63).

## E.    <u>The Proposed Classes, Claims, And Relief Sought.</u>

With certain exceptions for those connected to FCA US or the Court, Plaintiffs bring claims on behalf of a class comprised of "[a]ll persons in the United States who purchased, leased, or own a Class Vehicle," as well as four state sub-classes comprised of purchasers, lessees, and owners in California, Michigan, New Jersey, or New York.  Comp., ¶ 86 (PageID.66).  They plead claims for:

- breach of express warranty for all classes (Count I);

- breach of implied warranty under the UCC for all classes Count II);

- unjust enrichment for all classes (Count III);

- violation of N.Y. Gen. Bus. Law § 349 and § 350 for the New York sub-class (Counts IV, V);

- violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §

1750, *et seq.* ("CLRA") for the California sub-class (Count VI);

- violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL") for the California sub-class (Count VII);

- breach of implied warranty under California's Song-Beverly Act, Cal. Civ. Code § 1790, *et seq.* for the California sub-class (Count VIII); and

- violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, *et seq.* ("NJCFA") for the New Jersey sub-class (Count IX).

*See id.* at ¶¶ 95-207 (PageID.70-94).

For relief, Plaintiffs seek, *inter alia*, the following: "out-of-pocket costs"; "costs for future repairs or replacements"; "diminished value"; statutory and punitive damages; restitution; "disgorgement"; a "buyback [of] all Class Vehicles"; and, of course, attorney's fees. *See id.* at ¶ 6; *id.* at Prayer for Relief (PageID.4, 94-95).

## III. <u>ARGUMENT</u>

### A. <u>The Governing Legal Standards.</u>

FCA US moves to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Each carries its own legal standard.

*First*, a lack of jurisdiction requires dismissal under Rule 12(b)(1). *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Thus, Article III standing is a threshold question in every case, and "[a] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006). "That a suit may be a class action … adds nothing to the question of standing." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 fn.20 (1976) (quoting *Warth*, 422 U.S. at 502).

- 10 -

A corollary to the jurisdictional requirement that a federal court entertain only actual "cases" and "controversies" is that "an actual controversy must be extant at all stages of review." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71-72 (2013). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979). Mootness, just like a lack of standing, requires dismissal under Rule 12(b)(1). *Genesis Healthcare*, 569 U.S. at 72.

When, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), "the ***plaintiff*** has the burden of proving jurisdiction in order to survive the motion." *Wisecarver v. Moore*, 489 F.3d 747, 749 (6th Cir. 2007) (internal quotations omitted, emphasis added); *see also Myslivecek*, 2022 WL 17904526, at *3. In resolving the factual attack, "no presumptive truthfulness applies to [Plaintiffs'] allegations." *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Plaintiffs "must submit relevant evidence … or face dismissal." *Rutkofske v. Norman*, 114 F.3d 118 (Table), 1997 WL 299382, **3-4 (6th Cir. 1997).

*Second*, to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory allegations or legal conclusions … will not suffice." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

**B.** **Dismissal Under Rule 12(b)(1).**

    **1.** ***Lack of Standing & Mootness.***

The most obvious flaw (among many) with Plaintiffs' latest complaint is that they are still just suing based on the issuance of recalls offering them a free repair along with reimbursement for any prior repairs, but (again) plead no facts to support their standing or the existence of any non-moot claim.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements," which every plaintiff must demonstrate: (1) an injury-in-fact; (2) fairly traceable to the challenged conduct of the defendant; (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). These essential elements of standing must exist at all stages in a case, and they are Plaintiffs' burden to prove. *See, e.g.*, *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013). Plaintiffs cannot show their standing by pointing to purported injuries of others, *Simon*, 426 U.S. 26, 40 fn.20, or to a "speculative fear" of harm or a "***possible*** future injury," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013) (emphasis in original, quotation omitted).

The doctrine of mootness is related and "has two distinct branches, one stemming from Article III jurisdictional limitations and one stemming from discretionary or prudential considerations." *United States v. Street*, 933 F.2d 1010 (Table), 1991 WL 85255, *2 (6th Cir. 1991); *see also Chamber of Commerce v.*

*United States Dept. of Energy*, 627 F.2d 289, 291 (D.C.Cir. 1980). *First*, a case is jurisdictionally moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979). Thus, if circumstances deprive plaintiffs of a "personal stake in the outcome of the lawsuit," their claims "must be dismissed as moot." *Genesis Healthcare*, 569 U.S. at 72 (quotation omitted).

*Second*, prudential mootness addresses "not the power to grant relief but the court's discretion in the exercise of that power." *Chamber of Commerce*, 627 F.2d at 291. It warrants dismissal where "the relief sought no longer has sufficient utility to justify decision … on the merits." *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012) (Gorsuch, J.) (quotation omitted). Thus, if "the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits, equity may demand not decision but dismissal. When it does, [courts] will hold the case 'prudentially moot.'" *Id.*

In circumstances just like those here, the Sixth Circuit has held that a lack of standing and mootness combine to bar any possible claim once a free recall repair has been offered. In *Hadley v. Chrysler Grp., LLC*, 624 Fed.Appx. 374 (6th Cir. 2015), an automaker announced a recall and, shortly thereafter, the plaintiffs filed a class action lawsuit against that automaker and one of its component suppliers. *Id.* at 375-76. There, as here, the plaintiffs claimed an injury based on "the diminished

value of their vehicle," but the Sixth Circuit explicitly rejected the notion this could create any justiciable controversy in the context of a recall. *Id.* at 378 ("The plaintiffs allege a diminished-value claim against [the supplier] TRW … Nevertheless, the repair of the ORC Module that the plaintiffs received removed the defect upon which the plaintiffs' diminished-value injury claim is based."). And, the court affirmed the dismissal of all the plaintiffs' claims, explaining:

> "[T]he relief sought by the plaintiffs, if granted, would not make a difference to the legal interests of the parties. There was never a dispute between the parties as to whether a safety defect exists in the vehicles or whether New Chrysler would repair that defect. New Chrysler acknowledged the safety defect in the recall notice and promised to repair it, for free, as quickly as possible. New Chrysler also promised … to reimburse people who paid to have their vehicles repaired due to the ORC Module defect … As a result, there is nothing left for this Court to order New Chrysler to do ... Nevertheless, the plaintiffs maintain that, because the effectiveness of the repair is unknown, their claims are not moot. To establish standing, the plaintiffs must allege they suffered an actual or imminent injury, not a conjectural or hypothetical one … The plaintiffs' assertion that the ORC Module repair may not be effective does not evidence an actual or imminent injury. On the record before us, it instead evidences a hypothetical possibility that the plaintiffs' vehicle was not adequately repaired."

*Id.* at 379-80 (quotations omitted). Following *Hadley*, a multitude of courts in this District have dismissed cases for lack of standing, mootness, or on both grounds when a motor-vehicle recall has been announced.[11]

---

[11] *See, e.g.*, *Diaz v. Ford Motor Co.,* 2023 WL 6164455 (E.D.Mich. 2023) ("Plaintiffs' assertion that the defect will remain after the recall repairs are completed is conclusory and speculative. The possibility that the recall repair will fail to fix the problem is not sufficiently concrete to constitute an injury in fact.");

In the prior case, this Court rejected Plaintiffs' argument that they could show standing or some non-moot claim based on speculative fear that the second recall might "neuter" their vehicles' engines. *Myslivecek,* 2022 WL 17904526, at **1, 7. Now, Plaintiffs drop that allegation entirely, and instead just resort to speculation that the updated and expanded repair in the third recall might prove ineffective – *i.e.*, the exact argument rejected in *Hadley* and a host of subsequent cases.[12]  But ***none***

_____

*Solak v. Ford Motor Co.*, – F.Supp.3d – , 2023 WL 4628456, **4-5 (E.D.Mich. 2023) (dismissing claims as moot in light of announced recall); *Pacheco v. Ford Motor Co.*, 2023 WL 2603937, **2, 5 (E.D.Mich. 2023) (dismissing case as moot because "Ford has undertaken the recall process and has offered to remedy the Spontaneous Fire Risk without charge"); *Sharp v. FCA US LLC*, 637 F.Supp.3d 454, 469 (E.D.Mich. 2022) ("This Court can offer little by way of an injunction or declaratory relief that will not already be provided through the recall.  Further, the anticipated repairs will remove the defect upon which Plaintiffs' claim for benefit-of-the-bargain damages is based.  Plaintiffs offer only a hypothetical possibility that their vehicles will not be adequately repaired.  This is insufficient for the Court to proceed with the case."); *Flores v. FCA US LLC*, 2020 WL 7024850, **3-5 (E.D.Mich. 2020) (dismissing case as moot, explaining that plaintiffs had "no actual injury that can be redressed" in light of the issuance of a customer service action offering free repairs); *Uzelac v. Mercedes-Benz USA, LLC*, 2020 WL 13577557, **3-6 (E.D.Mich. 2020) (after recall announced, "Plaintiff's claim of injury is purely speculative and hypothetical" and thus "her claims must be dismissed for lack of standing"); *see also Winzler*, 681 F.3d at 1210-15 ("Perhaps the lawyers would benefit if this would-be class action labored on through certification, summary judgment and beyond.  But it's hard to see how anyone else could.").

[12]*See* fn.11, *supra*.  Further, and notably, NHTSA is empowered to ensure any recall will be effective, and the public is allowed to petition the agency for a hearing on the effectiveness of a recall.  *See* 49 U.S.C. §§ 30118(e), 30120(c)-(e), 30165(a)(1).  The adequacy of the recall is a matter over which NHTSA has primary jurisdiction, counseling in favor of judicial deference to the agency's authority to resolve any disputes about a recall's effectiveness.  *See United States v. Phila. Nat'l Bank*, 374 U.S. 321, 353 (1963).

of the Plaintiffs allege that they received NHTSA Recall 23V-116 repair, which only recently became available.  *See* §§ II.B, .C, *supra*.  And, Plaintiffs Myslivecek, Chow, and Schaffner do not allege they have obtained ***any*** recall repair, not even those they sued over in the prior case.  *See* § II.C, *supra*.  Nor do Plaintiffs plead any facts (or have any evidence) to suggest they cannot obtain a free, effective repair for any possible issue related to clutch overheating, or that they cannot obtain full reimbursement under the recalls for any repairs they might have paid for.  *See*, *generally*, Comp.  This, by itself, mandates dismissal.

### 2.    The Nationwide Class Claims (Counts I, II, III).

Plaintiffs assert claims for breach of express warranty (Count I), breach of implied warranty (Count II), and unjust enrichment (Count III) on behalf of a "Nationwide Class."  *See* Comp., ¶¶ 86, 96, 111, 123 (PageID.66, 70, 74, 76).  But, none allege any injury outside the states where they purchased their vehicles, and they certainly do not plead viable claims under the laws of all 50 states.  *See*, *generally*, Comp.  Thus, they lack standing to assert any claim under other states' laws, and the claims for the Nationwide Class should be dismissed.[13]

---

[13]*See, e.g.*, *Harrison v. Gen. Motors, LLC*, 2023 WL 348962, *3 (E.D.Mich. 2023); *Ambrose v. Gen. Motors LLC*, 2022 WL 3701946, *8 (E.D.Mich. 2022); *Pistorio v. FCA US LLC*, 2022 WL 141524, *6 (E.D.Mich. 2022); *Crawford v. FCA US LLC*, 2021 WL 3603342, *3 (E.D.Mich. 2021); *Withrow v. FCA US LLC*, 2021 WL 2529847, **6-9 (E.D.Mich. 2021); *Matanky v. Gen. Motors LLC*, 370 F.Supp.3d 772, 788 (E.D.Mich. 2019); *McKee v. Gen. Motors LLC*, 376 F.Supp.3d 751, 755-56 (E.D.Mich. 2019).

- 16 -

### C.  <u>Dismissal Under Rule 12(b)(6).</u>

#### 1.  *No Breach of Express Warranty (Count I).*[14]

Plaintiffs' claims for breach of express warranty fail for multiple reasons. *First*, the written warranties at issue cover only defects in "material, workmanship or factory preparation."  *See* § II.D, *supra*.  Thus, these warranties do **not** cover design defects.[15]  And, Plaintiffs' own averments make it abundantly clear a design defect is being alleged here.  *See, e.g.*, Comp., ¶¶ 3, 33 ("incorrectly **designed**" or "improperly **designed**" (emphasis added)); *id.* at ¶ 79 ("The clutch **design** or specification … constitute[s] a **defect in design**") (emphasis added)) (PageID.3, 15, 63-64).  They also plead the defect exists in every Class Vehicle sold over multiple years, and that the relevant components are all "the same" – hallmarks of a design defect claim.[16]  *See id.* at ¶ 2 (PageID.2).  And, even the recall documents they cite

---

[14]The laws of the states where Plaintiffs purchased their vehicles govern their warranty claims.  *See Schultz v. Tecumseh Prods.*, 310 F.2d 426, 428 (6th Cir. 1962); *Danielkiewicz v. Whirlpool Corp.*, 426 F.Supp.3d 426, 431 (E.D.Mich. 2019).

[15]*See, e.g.*, *Coba v. Ford Motor Co.*, 932 F.3d 114, 122-24 (3d Cir. 2019); *Troup v. Toyota Motor Corp.*, 545 Fed.Appx. 668, 668-69 (9th Cir. 2013); *In re Ford Motor Co. F-150 & Ranger Truck Fuel Economy Mktg. & Sales Practices Litig.*, 2022 WL 551221, *21 (E.D.Mich. 2022); *Pistorio*, 2022 WL 141524, at **6-7; *Flores v. FCA US LLC*, 2021 WL 1122216, **7-9 (E.D.Mich. 2021); *Matanky*, 370 F.Supp.3d at 788; *Garcia v. Chrysler Grp. LLC*, 127 F.Supp.3d 212, 227 (S.D.N.Y. 2015).

[16]*See, e.g.*, *Coba*, 932 F.3d at 123-24 (allegations of a defect in "every product of a line" pleaded only "a design defect"); *Flores*, 2021 WL 1122216, at **8-9 (claim was for design defect where all vehicles across several model-years were alleged to be defective); *Garcia*, 127 F.Supp.3d at 226-27 (claim was necessarily

state that a design defect is being addressed.  *See, e.g.*, Exhibit D, p. 4 ("This recall is not related to a part defect but rather a design specification…").

*Second*, dismissal is also required because Plaintiffs have failed to plead the facts necessary to show any breach.  The written warranties at issue did ***not*** promise any vehicle would be free of defects; rather, they simply promised a "repair" of certain defects if a vehicle is presented at a dealership during the warranty period. *See* Exhibit J, pp. 5-6, 18, 23; Exhibit K, pp. 5-6, 19, 24; *see also* Comp., ¶¶ 74, 78 105 (PageID.61-63, 72).  Plaintiffs plead nothing remotely resembling any breach of this promise, and there are no allegations any request for a repair was refused. *See*, *generally*, Comp.  This is fatal to an express warranty claim.  *See, e.g.*, *Beck v. FCA US LLC*, 273 F.Supp.3d 735, 757-58 (E.D.Mich. 2017).

*Third*, to the extent Plaintiffs are trying to plead express warranty claims based on something other than their vehicles' warranty booklets, such efforts are doomed to fail.  Those booklets clearly state "[t]he warranties contained in this booklet are the ***only*** express warranties that FCA US LLC … makes for your vehicle."  Exhibit J, p. 4 (emphasis added); *see also* Exhibit K, p. 4.  This limitation is fully enforceable and precludes Plaintiffs from pursuing any express warranty claim based on other purported promises.  *See, e.g.*, *Flores*, 2021 WL 1122216, at **6-7.  Additionally,

---

about design despite "offhand references" to manufacturing because a "common defect" was alleged in "every single vehicle").

Plaintiffs do not plead they saw any of the advertisements vaguely mentioned in the complaint, much less that they relied on them, which further precludes any express warranty claim based on them. *See, e.g.*, *Oden v. Boston Scientific Corp.*, 330 F.Supp.3d 877, 895 (E.D.N.Y. 2018). And, Plaintiffs do not plead the breach of any purported "warranty" or promise in the window stickers. *See, generally*, Comp.

For all these reasons, the express warranty claims fail.

### 2. *No Breach of Implied Warranty (Counts II, VIII).*

Plaintiffs assert implied warranty claims under the UCC (Count II) and, for Chow and the California sub-class, the Song-Beverly Act (Count VIII). *See* Comp., ¶¶ 110-121, 182-194 (PageID.74-76, 89-92). These claim fail for two reasons.

<u>Merchantability</u>: Plaintiffs' implied warranty claims fail because they have pleaded no facts showing their vehicles are "unmerchantable." "Merchantability is not a synonym for perfect." *Zanger v. Gulf Stream Coach, Inc.*, 2006 WL 1494952, \*\*3-4 (E.D.Mich. 2006). And, a product is merchantable as long as it provides a "minimum level of quality." *Slebodnik v. Reynolds & Reynolds Co.*, 2014 WL 6609132, \*9 (D.N.J. 2014); *see also Ford v. Hyundai Motor Am*., at \*14 (C.D.Cal. 2021); *Berger v. Mazda Motor of Am., Inc*., 2019 WL 1428449, at \*7 (E.D.N.Y. 2019). "For an automobile, the implied warranty of merchantability is breached ***only*** when a defect renders the vehicle unfit for its ordinary purpose of providing transportation for its owner." *Sheris v. Nissan N.Am., Inc.*, 2008 WL 2354908, \*6

- 19 -

(D.N.J. 2008) (emphasis added).  Simply proffering allegations of a "safety" issue is not sufficient to plead an implied warranty claim where "there is no indication in the complaint that, despite the safety concerns, [plaintiff] has actually stopped driving his vehicle." *Beck*, 273 F.Supp.3d at 762.

Here, Plaintiffs plead no facts supporting the notion their own vehicles are unfit for driving or that they have stopped driving them.  *See*, *generally*, Comp. Thus, all the implied warranty claims in Counts II and VIII must be dismissed.

No Privity:  The UCC implied warranty claims asserted by Myslivecek, Chow, and Schaffner also fail for lack of privity.  These Plaintiffs did not purchase their vehicles from FCA US.  *See* Comp., ¶¶ 12, 15, 16 (PageID.6, 8-9).  And, the laws of California and New York are crystal clear privity is required to state any UCC implied warranty claim.  *See, e.g.*, *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *Gould v. Helen of Troy Ltd.*, 2017 WL 1319810, *5 (S.D.N.Y. 2017).  For this reason too, Count II must be dismissed.

### 3.  *No Claim For Unjust Enrichment (Count III).*

In Count III, Plaintiffs assert claims for unjust enrichment.  *See* Comp., ¶¶ 122-131 (PageID.76-78).  These fail for four reasons:

*First*, no unjust enrichment claim is viable where a written warranty exists to

define the parties' rights and expectations.[17]  Plaintiffs admit their vehicles were sold with such warranties.  *See id.* ¶¶ 74-76 (PageID.61-63).  Thus, dismissal is required.

*Second*, Plaintiffs admit they purchased their vehicles from third-party dealerships, meaning they conveyed no ***direct*** benefit on FCA US.  *See id.* at ¶¶ 12-16 (PageID.6-9).  This also precludes any viable unjust enrichment claim.[18]

*Third*, there are no pleaded allegations showing Plaintiffs' legal remedies to be inadequate.  *See*, *generally*, Comp.  This is a threshold requirement for pleading any equitable claim, and its absence also requires dismissal.[19]

*Fourth*, and finally, Myslivecek's and Schaffner's unjust enrichment claims are also barred because, under New York law, "unjust enrichment … is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).

### 4.    The Statutory Fraud Claims (Counts IV, V, VI, VII, IX).

All Plaintiffs except Busovicki assert claims under consumer fraud statutes

---

[17]*See, e.g.*, *Kahn v. FCA US LLC*, 2019 WL 3955386, *8 (C.D.Cal. 2019); *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F.Supp.3d 618, 634-35 (E.D.Mich. 2019); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F.Supp.3d 372, 433 (S.D.N.Y. 2017); *Glauberzon v. Pella Corp.*, 2011 WL 1337509, *12 (D.N.J. 2011).

[18]*See, e.g.*, *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000); *Storey v. Attends Healthcare Prods., Inc.*, 2016 WL 3125210, **12-13 (E.D.Mich. 2016); *Glass v. BMW N. Am., LLC*, 2011 WL 6887721, *16 (D.N.J. 2011).

[19]*See, e.g.*, *Milman v. FCA US LLC*, 2019 WL 3334612, *9 (C.D.Cal. 2019); *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F.Supp.2d 496, 505 (D.N.J. 2006).

enacted in the states where they purchased their vehicles. *See* Comp, ¶¶ 132-181, 195-207 (PageID.78-89, 92-94). These claims are each based on the same vague allegations of "misrepresentations" or "omissions" in the sale of the vehicles. *Id.* They fail for multiple, independent reasons.

<u>No Actionable Misrepresentations or Omissions Pleaded:</u>  Plaintiffs' fraud allegations do not satisfy Rule 8(a), much less the heightened pleading requirements of Rule 9(b).[20]  The only affirmative representations Plaintiffs allege are "window sticker[s]," some "other materials," and conversations with "sales representatives" (Comp., ¶¶ 12-14 (PageID.6-9)), but Plaintiffs fail to describe them, identify anything *false* in them, plead how they relied on any purported misrepresentation, or explain how it caused them injury (*see*, *generally*, Comp.).  This is fatal.

Plaintiffs' omission-based claims fare no better.  To state such a claim, they were required to "detail the omissions made, state the person responsible for the failure to speak, provide the context in which the omissions were made, and explain

---

[20]The particularity requirements of Rule 9(b) apply to Plaintiffs' claims under the CLRA, UCL, and NJCFA (Counts VI, VII, IX). *See, e.g.*, *Robinson v. Unilever United States, Inc.*, 2019 WL 2067941, *4 (C.D.Cal. 2019) (CLRA, UCL); *Stevenson v. Mazda Motor of Am., Inc.*, 2015 WL 3487756, *4 (D.N.J. 2015) (NJCFA).  While the Rule 9(b) standard may not apply to claims under N.Y. Gen. Bus. Law § 349 and § 350 (Counts IV, V), such claims nonetheless require pleaded *facts* identifying the particular representations at issue, showing how they are "materially misleading," and explaining how they caused the alleged injury. *See, e.g.*, *Tomasino v. Estee Lauder Cos., Inc.*, 44 F.Supp.3d 251, 257-58 (E.D.N.Y. 2014); *Chiarelli v. Nissan N. Am., Inc.*, 2015 WL 5686507, *13 (E.D.N.Y. 2015).

how the omissions deceived [them]." *Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of Mich.*, 2013 WL 2285453, *28 (E.D.Mich. 2013).  Yet, there are no facts pleaded as to the person(s) responsible for the failure to disclose, or showing the "context of the omissions," such as the circumstances of Plaintiffs' vehicle purchases, who they talked to in the course of making their purchases, what was said, how any supposed omission misled them, or what FCA US obtained through the alleged fraud.  *See*, *generally*, Comp.  Such vague and conclusory allegations have been consistently rejected.[21]

No Pre-Sale Knowledge:  To the extent Plaintiffs are trying to base their claims on alleged omissions, they must plead facts showing FCA US "knew of [the] defect before sale."  *Hall v. Gen. Motors, LLC*, 2020 WL 1285636, *3 (E.D.Mich. 2020) (quoting *McKee*, 376 F.Supp.3d at 761).  And, an even-higher knowledge standard applies to Caputo's NJCFA claim (Count IX), which requires facts showing FCA US knew ***"with certainty"*** his particular vehicle would fail.  *See Alban v. BMW of N.Am.*, 2011 WL 900114, *10 (D.N.J. 2011) (emphasis added).  Plaintiffs attempt to plead such knowledge with vague "information and belief" allegations that FCA US "must have anticipated" the "Clutch Defect" based on: 1) "pre-production testing" and "data"; 2) "aggregate warranty data"; 3) "repair order and parts data";

---

[21]*See, e.g.*, *Wozniak v. Ford Motor Co.*, 2019 WL 108845, *3 (E.D.Mich. 2019); *Rosipko v. FCA US, LLC*, 2015 WL 8007649, **3-5 (E.D.Mich. 2015); *Gordon v. Home Loan Ctr., LLC*, 2011 WL 1261179, *11 (E.D.Mich. 2011).

and 4) "consumer complaints."[22]  *See* Comp., p. 1 & ¶ 56 (PageID.2, 22-23).

This is nowhere close to sufficient.  As the Sixth Circuit has explained, when a safety-related vehicle defect is alleged, a plaintiff must plead ***"specific facts"*** showing the defendant actually knew of that safety hazard before his/her purchase. *Smith v. Gen. Motors LLC*, 988 F.3d 873, 885-86 (6th Cir. 2021) (emphasis added). Thus, allegations of pre-sale testing "without accompanying verification that the tests occurred ***and revealed a safety defect***" are insufficient to plead knowledge. *Id.* at 885 (emphasis added).  So are generalized allegations about increases in warranty claims or consumer complaints – particularly where, as here, only "information and belief" allegations are offered to suggest the defendant viewed them as more than a "blip" on the radar.  *Id.* at 885-86.[23]  And, the notion that Plaintiffs could plausibly plead ***pre-sale*** knowledge when they outright admit FCA US only ***later*** discovered potential issues, and then immediately issued recalls providing free repairs, is utterly nonsensical.  All of the fraud- and omission-based claims should be dismissed.

---

[22]The 56 (total) complaints Plaintiffs cite span multiple years and different vehicle models, include several repeat postings of the exact same complaints, include numerous complaints made long after Plaintiffs' own vehicle purchases, and include postings where consumers report no actual problems with their own vehicles, but are simply complaining about delays in dealerships getting parts or just noting they have heard about a recall.  *See* Comp., ¶¶ 59, 66 (PageID.24-27, 29-57).

[23]*See also, e.g.*, *Norman v. FCA US, LLC*, – F.Supp.3d – , 2023 WL 6388926, **14-16 (E.D.Mich. 2023); *Flores*, 2021 WL 1122216, at **18-23; *Hall*, 2020 WL 1285636, at *3; *Roe v. Ford Motor Co.*, 2019 WL 3564589, **7-8 (E.D.Mich. 2019); *McKee*, 376 F.Supp.3d at 761-62; *Beck*, 273 F.Supp.3d at 753.

<u>The § 349 and § 350 Claims</u>:  These claims also fail because 1) New York law holds no such claim is viable where, as here, it is based on an unmanifested defect (*see, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F.Supp.3d at 429); and 2) such claims require an "actual injury" and the incurring of some expense, which cannot exist here in light of the free recall repair/reimbursement (*see, e.g.*, *Kommer v. Ford Motor Co.*, 2017 WL 3251598, \*\*4-5 (N.D.N.Y. 2017)).

## IV.  <u>CONCLUSION</u>

For the reasons set forth herein, Defendant FCA US LLC respectfully requests that this Court dismiss the Class Action Complaint in its entirety.

Respectfully submitted,

THOMPSON COBURN LLP
By: *_/s/ Thomas L. Azar, Jr._*
  Stephen A. D'Aunoy (MO/54961)
  Thomas L. Azar, Jr. (MO/56634)
  One US Bank Plaza
  St. Louis, Missouri 63101
  (314) 552-6000
  sdaunoy@thompsoncoburn.com
  tazar@thompsoncoburn.com

KLEIN THOMAS LEE & FRESARD
Fred Fresard (P43694)
Ian Edwards (P82021)
101 W. Big Beaver Road, Suite 1400
Troy, Michigan 48084
(248) 509-9270
Fred.Fresard@kleinthomaslaw.com
Ian.Edwards@kleinthomaslaw.com

*Counsel for Defendant FCA US LLC*