## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DEAN MYSLIVECEK, PAUL CAPUTO, CHRISTOPHER CHOW, KEVIN SCHAFFNER, and MICHAEL BUSOVICKI, on behalf of themselves and all others similarly situated,<br><br>                     Plaintiffs,<br><br>v.<br><br>FCA US LLC,<br><br>                     Defendant. | Case No.: 5:23-cv-12980<br><br>Hon. Judith E. Levy<br><br>Magistrate Judge Elizabeth A. Stafford |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT FCA US LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION <u>COMPLAINT UNDER RULES 12(b)(1) AND 12(b)(6)</u>

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... iii

STATEMENT OF QUESTIONS PRESENTED ....................................... ix

TABLE OF MOST CONTROLLING OR PERSUASIVE AUTHORITIES ......... xi

I.     INTRODUCTION .................................................................................1

II.    BACKGROUND...................................................................................2

III.   ARGUMENT ........................................................................................3

   A.   Plaintiffs Have Standing and Their Claims Are Not Moot ....................3

      1.   Plaintiffs seek damages from harm they already suffered......................3

      2.   Plaintiffs have standing to assert nationwide class allegations. .............11

   B.   Plaintiffs Adequately Plead Their Warranty Claims ............................12

      1.   FCA breached its express warranty. ....................................................12

      2.   Plaintiffs' implied warranty claims are well pled..................................15

         a.   The Class Vehicles are not merchantable. ..........................................15

         b.   Plaintiffs Myslivecek and Schaffner's implied warranty claims do not
              fail for lack of privity. ..........................................................................16

   C.   Plaintiffs Adequately Plead Their Fraud Claims ..................................17

      1.   Plaintiffs plead actionable omissions. ..................................................17

      2.   Plaintiffs sufficiently allege pre-sale knowledge..................................18

      3.   The economic loss doctrine does not apply here. ..................................22

   D.   The NY GBL Claims Should Survive ....................................................23

   E.   Plaintiffs Adequately Plead Their Unjust Enrichment Claims..............24

IV.    CONCLUSION ...................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Afzal v. BMW N. Am., LLC*,
　2017 WL 3207232 (D. N.J. July 27, 2017) ................................................... 26, 27

*Barakezyan v. BMW of N. Am., LLC*,
　715 Fed. Appx. 762 (9th Cir. 2018) ...................................................................... 18

*Beck v. FCA US LLC*,
　273 F. Supp. 3d 735 (E.D. Mich. 2017) ....................................................... 20, 22

*Benkle v. Ford Motor Co.*,
　2017 WL 9486154 (C.D. Cal. Dec. 22, 2017) ..................................................... 21

*Berger v. Mazda Motor of Am., Inc.*,
　2019 WL 1428449 (E.D.N.Y. Mar. 30, 2019) ..................................................... 22

*Bolooki v. Honda Motor Co. Ltd.*,
　2023 WL 2627015 (C.D. Cal. Mar. 10, 2023) ..................................................... 17

*Campbell-Ewald Co. v. Gomez*,
　577 U.S. 153 (2016) .............................................................................................. 14

*Chapman v. Gen. Motors LLC*,
　531 F. Supp. 3d 1257 (E.D. Mich. 2021) ..................................................... 22, 35

*Cole v. Gen. Motors Corp.*,
　484 F.3d 717 (5th Cir. 2007) ............................................................................... 10

*Colpitts v. Blue Diamond Growers*,
　527 F. Supp. 3d 562 (S.D.N.Y. 2021) ................................................................. 33

*Counts v. Gen. Motors, LLC*,
　237 F. Supp. 3d 572 (E.D. Mich. 2017) .............................................................. 15

*Crawford v. FCA US LLC*,
　2021 WL 3603342 (E.D. Mich. Aug. 13, 2021) ............................................. 9, 34

*Crawford v. FCA US LLC*,
　2024 WL 919830 (E.D. Mich. Mar. 4, 2024) ......................................... 4, 8, 9, 13

*Diaz v. Ford Motor Co.*,
　2023 WL 6164455 (E.D. Mich. Sept. 21, 2023) ................................................. 12

*Droesser v. Ford Motor Co.*,
  2023 WL 2746792 (E.D. Mich. Mar. 31, 2023) ........................................... 15, 22

*ESG Cap. Partners, LP v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016) ...................................................................35

*Flores v. FCA US LLC*,
  2020 WL 7024850 (E.D. Mich. Nov. 30, 2020)..................................................12

*Ford v. Hyundai Motor Am.*,
  2021 WL 7448507 (C.D. Cal. Oct. 5, 2021).........................................................22

*Francis v. Gen. Motors, LLC*,
  504 F. Supp. 3d 659 (E.D. Mich. 2020) ...................................................... *passim*

*Genaw v. Garage Equip. Supply Co.*,
  856 F. App'x 23 (6th Cir. 2021) ...........................................................30

*Greenbaum v. U.S. E.P.A.*,
  370 F.3d 527 (6th Cir. 2004) ................................................................14

*Gregorio v. Ford Motor Co.*,
  522 F. Supp. 3d 264 (E.D. Mich. 2021) ............................................................18

*Hadley v. Chrysler Grp.,*
  *LLC*, 624 Fed. Appx. 374 (6th Cir. 2015) ................................................ 9, 10, 11

*Harrison v. Gen. Motors, LLC*,
  2023 WL 348962 (E.D. Mich. Jan. 19, 2023) ....................................................19

*Hill v. Whitmer*,
  2021 WL 3877920 (6th Cir. 2021) .........................................................................3

*In re Chevrolet Bolt EV Battery Litig.*,
  633 F. Supp. 3d 921 (E.D. Mich. 2022) ...................................................... *passim*

*In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*,
  2023 WL 8602971 (E.D. Mich. Dec. 11, 2023) ...................................................19

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
  2022 WL 4011225 (E.D. Mich. Sept. 2, 2022) ...............................................7, 22

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
  280 F. Supp. 3d 975 (E.D. Mich. Nov. 15, 2017) ..................................... 4, 17, 27

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
  355 F. Supp. 3d 582 (E.D. Mich. 2018) (Michigan) ............................................32

*In Re Ford Motor Co.*,
  86 F.4th 723 (6th Cir. 2023) ....................................................5

*In re Gen. Motors Air Conditioning. Mktg. and Sales Pracs. Litig.*,
  406 F. Supp. 3d 618 (E.D. Mich. 2019) ...................................... 26, 27

*In re Gen. Motors LLC Ignition Switch Litig.*,
  257 F. Supp. 3d 372 (S.D.N.Y. 2017) (New York) ..............................31

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014) ....................................20

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ..................................................4

*JM Adjustments Servs., LLC v. J.P. Morgan Chase Bank, N.A.*,
  2016 WL 3913712 (E.D. Mich. July 20, 2016) ...................................25

*Johnson v. FCA US LLC*,
  555 F. Supp. 3d 488 (E.D. Mich. 2021) ...........................................15

*Kimball v. Volkswagen Grp. Of Am., Inc.*,
  2023 WL 5533343 (D. N.J. Aug. 28, 2023) ......................................20

*Leon v. Continental AG*,
  301 F. Supp. 3d 1203 (S.D. Fla. 2017) ...................................5

*Los Angeles Cnty. v. Davis*,
  440 U.S. 625 (1979) .............................................................14

*Matanky v. Gen. Motors LLC*,
  370 F. Supp. 3d 772 (E.D. Mich. 2019) ...........................................17

*Milisits v. FCA US LLC*,
  2021 WL 3145704 (E.D. Mich. July 26, 2021) ..................... 18, 22, 24

*Myers v. BMW of N. Am., LLC*,
  2016 WL 5897740 (N.D. Cal. Oct. 11, 2016) ...................................28

*Myslivecek v. FCA US LLC*,
  2022 WL 17904526 (E.D. Mich. Dec. 23, 2022) ...................................6

*Nguyen v. Nissan N. Am., Inc.*,
   932 F.3d 811 (9th Cir. 2019) ..................................................................4

*Nuwer v. FCA US LLC*,
   552 F. Supp. 3d 1344 (S.D. Fla. 2021) (New York) ............................31

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015) ..................................................................33

*Pacheco v. Ford Motor Co.*,
   2023 WL 2603937 (E.D. Mich. Mar. 22, 2023)..............................7, 13

*Pacheco v. Ford Motor Co.*,
   2024 WL 188369 (E.D. Mich. Jan. 17, 2024) ........................................7

*Pistorio v. FCA US LLC*,
   2022 WL 141524 (E.D. Mich. Jan. 14, 2022) ............................... 17, 22

*Raymo v. FCA US LLC*,
   475 F. Supp. 3d 680 (E.D. Mich. 2020) ....................................... *passim*

*Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*,
   683 F.3d 239 (6th Cir. 2012) ................................................................24

*Reynolds v. FCA US LLC*,
   546 F. Supp. 3d 635 (E.D. Mich. 2021) ...........................................7, 14

*Ryan v. Nagy*,
   2021 WL 6750962 (E.D. Mich. Oct. 25, 2021).......................................3

*S. Utah Wilderness Alliance v. Smith*,
   110 F.3d 724 (10th Cir. 1997) ..............................................................14

*Scherer v. FCA US, LLC*,
   565 F. Supp. 3d 1184 (S.D. Cal. 2021) (California)............................31

*Sharp v. FCA US LLC*,
   637 F. Supp. 3d 454 (E.D. Mich. 2022) ...............................................12

*Sheris v. Nissan N. Am. Inc.*,
   2008 WL 2354908 (D. N.J. June 3, 2008)............................................21

*Smith v. Gen. Motors LLC*,
   988 F.3d 873 (6th Cir. 2021) ......................................................... 29, 30

*Solak v. Ford Motor Co.*,
  2023 WL 4628456 (E.D. Mich. July 19, 2023) ...................................................8, 9

*Sulligan v. Ford Motor Co.*,
  2023 WL 5180330 (E.D. Mich. Aug. 11, 2023)...................................................7

*Terry Barr Sales Agency, Inc. v. All–Lock Co., Inc.*,
  96 F.3d 174 (6th Cir. 1996) ...................................................34

*Urban v. Tesla, Inc.*,
  2023 WL 6796021 (N.D. Cal. Oct. 13, 2023) ...................................................16

*Uzelac v. Mercedes-Benz USA, LLC*,
  2020 WL 13577557 (E.D. Mich. Apr. 27, 2020) ...................................................13

*Wang v. Lightspeed Envtl., Inc.*,
  2014 WL 29120 (E.D. Mich. Jan. 3, 2014) ...................................................26

*Weidman v. Ford Motor Co.*,
  2022 WL 1071289 (E.D. Mich. Apr. 8, 2022) ........................................ 5, 11, 12

*Weidman v. Ford Motor Co.*,
  2019 WL 3003693 (E.D. Mich. July 10, 2019)...................................................27

*Williams v. Duke Energy Int'l, Inc.*,
  681 F. 3d 788 (6th Cir. 2012) ...................................................24

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
  681 F.3d 1208 (10th Cir. 2012) ...................................................7, 13

*Withrow v. FCA US LLC*,
  2021 WL 2529847 (E.D. Mich. June 21, 2021) ...................................................30

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ...................................................16

*Wozniak v. Ford Motor Co.*,
  2019 WL 108845 (E.D. Mich. Jan 4, 2019) ...................................................25

**Statutes**

NY GBL §§ 349 ................................................................... 23, 24

NY GBL §§ 350 ................................................................... 23, 24

U.C.C. § 2-714 ...................................................................6

**Other Authorities**

Article III..................................................................................................11

**Rules**

Fed. R. Civ. P. 23 .......................................................................................11

Fed. R. Civ. P. 8 ........................................................................................19

Fed. R. Civ. P. 8(d) ...................................................................................24

Fed. R. Civ. P. 8(d)(3)........................................................................ 22, 23

Fed. R. Civ. P. 9(b) ............................................................................ 17, 18

## <u>STATEMENT OF QUESTIONS PRESENTED</u>

1.     Should this Court deny Defendant's Motion to Dismiss for lack of standing and mootness when Plaintiffs were damaged at the point of sale, Defendant's three recalls do not remedy the Clutch Defect, and Defendant relies on an interpretation of *Hadley v. Chrysler Grp., LLC*, 624 Fed. Appx. 374 (6th Cir. 2015) that courts in this District have declined to follow?

Plaintiffs' Answer: Yes.

2.     Should this Court uphold Plaintiffs' claims on behalf of a nationwide class when the question whether Plaintiffs can represent a nationwide class is a Fed. R. Civ. P. 23 matter unrelated to Article III standing?

Plaintiffs' Answer: Yes.

3.     Should this Court uphold Plaintiffs' breach of express warranty claims when Defendant's warranty's broad coverage does not exclude coverage of the Clutch Defect, Plaintiffs do not allege only a design defect, discovery is needed prior to making premature and uninformed characterizations of the Defect at the motion to dismiss stage, Defendant has failed to provide an effective remedy for the Defect, and Plaintiffs have viable breach of express warranty claims even if they did not present their vehicles to a dealership to obtain an ineffective repair?

Plaintiffs' Answer: Yes.

4.     Should this Court uphold Plaintiffs' breach of implied warranty claims when Plaintiffs adequately allege that the Clutch Defect rendered their vehicles unfit for their ordinary use of providing reliable and safe transportation, and Plaintiffs Myslivecek and Schaffner's implied warranty claims do not fail for lack of privity because New York law recognizes a third-party beneficiary exception to the privity requirement?

Plaintiffs' Answer: Yes.

5.     Should this Court uphold Plaintiffs' fraud claims when Plaintiffs' claims are based on Defendant's omissions and Plaintiffs have satisfied the requirements of Fed. R. Civ. P. 9(b) for omission-based claims?

Plaintiffs' Answer: Yes.

6.     Should this Court uphold Plaintiffs' fraud claims when knowledge may be alleged generally under Fed. R. Civ. P. 9(b), allegations of knowledge similar to Plaintiffs' have repeatedly been found sufficient, and each Plaintiff purchased their Class Vehicle well after FCA knew or should have known about the Defect?

Plaintiffs' Answer: Yes.

7.     Should this Court hold that the economic loss doctrine does not bar Plaintiffs' fraud claims when application of the doctrine is dependent on the existence of a contract covering the claims at issue and Defendant contests Plaintiffs' warranty claims, and all states but New Jersey for which Plaintiffs allege their fraud claims provide an exception to the economic loss doctrine where plaintiffs allege fraud by omission, provided that the alleged omissions lead to fraudulent inducement, which Plaintiffs allege here?

Plaintiffs' Answer: Yes.

8.     Should this Court uphold Plaintiffs' claims under New York Gen. Bus. Law §§ 349 and 350 when both Plaintiffs Myslivecek and Schaffner allege that the Clutch Defect manifested in their vehicles, and price premium damages are sufficient for an "actual injury" under New York law?

Plaintiffs' Answer: Yes.

9.     Should this Court uphold Plaintiffs' unjust enrichment claims when Defendant contests the existence of a contractual relationship between the parties, the scope of any contractual relationship between the parties has yet to be determined through discovery, Plaintiffs explicitly allege that they lack an adequate remedy at law for their unjust enrichment claims, and alternative pleading of equitable claims is permitted?

Plaintiffs' Answer: Yes.

## <u>TABLE OF MOST CONTROLLING OR PERSUASIVE AUTHORITIES</u>

### <u>Standing/Mootness</u>

*Crawford v. FCA US LLC*, 2024 WL 919830 (E.D. Mich. Mar. 4, 2024)

*Hadley v. Chrysler Grp., LLC*, 624 Fed. Appx. 374 (6th Cir. 2015)

*Raymo v. FCA US LLC*, 475 F. Supp. 3d 680 (E.D. Mich. 2020)

*Weidman v. Ford Motor Co.*, 2022 WL 1071289 (E.D. Mich. Apr. 8, 2022)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

*In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. 2017)

### <u>Nationwide Claims</u>

*Droesser v. Ford Motor Co.*, 2023 WL 2746792 (E.D. Mich. Mar. 31, 2023)

*Johnson v. FCA US LLC*, 555 F. Supp. 3d 488 (E.D. Mich. 2021)

*Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572 (E.D. Mich. 2017)

### <u>Warranty Claims</u>

*In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. Nov. 15, 2017)

*Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264 (E.D. Mich. 2021)

*Harrison v. Gen. Motors, LLC*, 2023 WL 348962 (E.D. Mich. Jan. 19, 2023)

*Kimball v. Volkswagen Grp. Of Am., Inc.*, 2023 WL 5533343 (D. N.J. Aug. 28, 2023)

*Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659 (E.D. Mich. 2020)

**Fraud Claims**

*Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239 (6th Cir. 2012)

*Weidman v. Ford Motor Co.*, 2019 WL 3003693 (E.D. Mich. July 10, 2019)

*Genaw v. Garage Equip. Supply Co.*, 856 F. App'x 23 (6th Cir. 2021)

**Unjust Enrichment Claims**

*Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659 (E.D. Mich. 2020)

## I.     INTRODUCTION

Plaintiffs allege that Defendant FCA US LLC's ("Defendant" or "FCA") 2018-2023 Jeep Wrangler (2 door), 2018-2023 Jeep Wrangler Unlimited (4 door), and 2020-2023 Jeep Gladiator vehicles equipped with manual transmissions (together, the "Class Vehicles") suffer from a uniform and horrifying safety defect in their clutches, whereby the clutches cause dangerous conditions including car fires (the "Clutch Defect"). *See* First Amended Class Action Complaint ("FAC"), ECF No. 19, ¶¶ 1-5.[1] FCA knew about the Clutch Defect, its effects on vehicle reliability, and the associated risks to occupants' safety, but did not disclose it to Plaintiffs or Class members prior to marketing, selling, and leasing the Class Vehicles to them. ¶ 74.

In February 2021, Plaintiffs filed suit against FCA in this District for issues arising from the Clutch Defect (the "Previous Suit"). ¶ 55. In its motion to dismiss, FCA argued (and provided testimony under oath) that Plaintiffs' claims were prudentially moot due to the Second Recall and offer for free repair. *Id.* The Court dismissed Plaintiffs' claims, largely based on false statements that FCA's Second Recall fixed the Clutch Defect and therefore mooted Plaintiffs' claims. *Id.* Acting on the erroneous belief that the Second Recall would properly fix the Clutch Defect and FCA would provide a free repair, Plaintiffs voluntarily dismissed their claims without prejudice. *Id.* But a mere twenty days after Plaintiffs voluntarily dismissed their

---

[1] References herein to Paragraphs of the FAC are cited as "¶ __." Additionally, all internal citations and quotations are omitted herein unless otherwise stated.

claims, a Third Recall was issued. ¶¶ 55-57. To be sure, FCA knew that the remedy offered by the Second Recall was insufficient when they argued that Plaintiffs' claims were moot, and both the Court and Plaintiffs relied on FCA's false statements. *Id.* However, even after a Third Recall announcement, consumers are still not being offered a proper repair for their dangerous vehicles. *Id.* Indeed, the Third Recall explicitly acknowledged that FCA still has not fixed the Clutch Defect. ¶ 8. Though FCA tries to offer the same standing and prudential mootness arguments as it did in the Previous Suit, we now know them to be a farse. Since FCA has never offered an adequate fix to render Plaintiffs' claims moot and Plaintiffs' claims are properly pled, FCA's Motion to Dismiss (ECF No. 21) should be denied.

## II.    BACKGROUND

A clutch is a component found in the drivetrains of manual transmission vehicles that provides a mechanism that couples the engine to the transmission and allows a user to engage and disengage gears in the transmission to move the vehicle. ¶ 3. A malfunctioning or incorrectly designed or manufactured clutch can be extremely dangerous, including by causing fires. That is what is happening here. ¶¶ 3, 34-40.

The Clutch Defect occurs because "the clutch pressure plate may become overheated through friction, which may lead the pressure plate to fracture." ¶ 4. The Clutch Defect is a severe safety defect that not only can cause the vehicle to lose power in traffic or other dangerous situations, but also in many instances can cause the

vehicle to catch fire or result in dangerous debris being ejected. ¶ 5. The situation is so dangerous that FCA has decided to recall the Class Vehicles three times. ¶¶ 41-62.

FCA gained pre-sale knowledge of the Clutch Defect in 2018 at the latest. ¶ 68. That knowledge only grew with the inadequate First Recall, and every recall thereafter. ¶¶ 41-62. FCA failed to disclose the Defect prior to sale of the Class Vehicles to Plaintiffs. ¶¶ 12-16, 22, 29, 127-28, 138-39, 180-84, 186, 188, 229-34, 260, 291-95, 357-61, 364. To this day, FCA has not fixed the Clutch Defect. *See* ¶ 8.

## III.   ARGUMENT

### A. <u>Plaintiffs Have Standing and Their Claims Are Not Moot</u>[2]

#### *1.   Plaintiffs seek damages from harm they already suffered.*

FCA's argument that Plaintiffs lack standing and their claims are moot due to FCA's recall and reimbursement of prior repairs fails for several reasons. *See* ECF No. 21, PageID.631-635.

*First*, Plaintiffs were damaged at the point of sale when they paid for a vehicle with a non-defective clutch, but received a dangerously defective vehicle that could catch fire, lose propulsion, or generate road debris. *See* ¶¶ 4-5, 12-16 (alleging that

---

[2] FCA attaches a declaration from David Case, a Senior Specialist in the Product Analysis group at FCA. *See* ECF No. 22. Any implication therein that the Third Recall provides an effective repair should be disregarded, as such self-serving, unsworn declarations from "a source with an interest in the outcome of the litigation is not one 'whose accuracy cannot reasonably be questioned.'" *Ryan v. Nagy*, 2021 WL 6750962, at *4 (E.D. Mich. Oct. 25, 2021) (citing *Hill v. Whitmer*, 2021 WL 3877920, at *2 (6th Cir. 2021)).

had FCA disclosed the Clutch Defect, Plaintiffs would not have purchased or leased their Class Vehicles or would have paid less for them). Such "benefit of the bargain" damages are plainly economic injuries to consumers.[3] And a post-hoc repair does not change Plaintiffs' point of sale injury or restore them to their bargained-for position.

To accept FCA's position would mean that a manufacturer could sell dangerous, defective vehicles with no consideration for safety, wait until a lawsuit is filed, and then issue a recall to avoid any repercussions. Courts in this District and others have rejected this argument. *See, e.g.*, *Crawford v. FCA US LLC*, 2024 WL 919830, at *3 (E.D. Mich. Mar. 4, 2024) (finding that "Plaintiffs sustained a concrete injury when they purchased vehicles with defective parts" despite later-issued recall); *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 695 (E.D. Mich. 2020) (rejecting argument that issuance of a recall eliminated all damages); *Weidman v. Ford Motor Co.*, 2022 WL 1071289, at *4 (E.D. Mich. Apr. 8, 2022), *vacated on other grounds*, *In Re Ford Motor Co.*, 86 F.4th 723 (6th Cir. 2023) (rejecting Ford's argument that "plaintiffs eligible for a free replacement . . . ha[d] no injury"); *Leon v. Continental*

---

[3] *See, e.g.*, *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 857 (6th Cir. 2013) ("Because *all* Duet owners were injured at the point of sale upon paying a premium price for the Duets as designed, even those owners who have not experienced a mold problem are properly included within the certified class."); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1018 (E.D. Mich. 2017) ("All of the plaintiffs adequately have alleged that they were damaged as a result of buying cars with a dangerously unreliable gear shift design, which resulted in, *inter alia*, a loss of economic value of the cars at the time of purchase, along with other incidental and consequential losses based on the defendant's failed attempts to repair the defect."); *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 822 (9th Cir. 2019).

*AG*, 301 F. Supp. 3d 1203, 1219 (S.D. Fla. 2017) (allowing claims for "lost benefit of the bargain" to proceed despite availability of repair). Whether Plaintiffs can succeed in proving their damages should be a question left for the jury.

*Second*, FCA overlooks Plaintiffs' detailed allegations that FCA's three recalls do not remedy the Clutch Defect. ¶¶ 5-8, 41-62. As discussed above, Plaintiffs in the Previous Suit voluntarily dismissed their remaining claims after both Plaintiffs and the Court relied on FCA's false statements that FCA's Second Recall fixed the Clutch Defect and therefore mooted Plaintiffs' claims. ¶¶ 7, 55-57; *see also Myslivecek v. FCA US LLC*, 2022 WL 17904526, at *1-7 (E.D. Mich. Dec. 23, 2022). However, on February 23, 2023, three weeks after that voluntarily dismissal, FCA announced a Third Recall related to the Clutch Defect, which "explicitly acknowledged that Defendant still has not fixed the Clutch Defect." *See* ¶ 8.

FCA now repeats the same standing and prudential mootness arguments from the Previous Suit, despite FCA's admission that the Third Recall does not fix the Clutch Defect. ¶¶ 8, 57. FCA has never offered an adequate fix to render Plaintiffs' claims moot and the same is true of FCA's Third Recall. ¶¶ 57-62. "The Third Recall confirms, just like the prior recalls, that every Class Vehicle is subject to the Clutch Defect," and that "there remains no question that the Clutch Defect[] continues to pose a serious safety risk to occupants and others." ¶¶ 61-62. Unsurprisingly, courts have found that allegations of an ineffective recall support allowing the case to move

forward and rejecting a mootness argument. *See, e.g.*, *Pacheco v. Ford Motor Co.*, 2023 WL 2603937, at *4 (E.D. Mich. Mar. 22, 2023)[4] (quoting *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1211-12 (10th Cir. 2012)) ("To be sure, a finding of prudential mootness would not be appropriate if the recall remedy leaves Plaintiffs 'without complete relief.'").[5]

*Third*, as noted above, numerous courts in this District have also rejected a mootness defense even when a repair appears to be effective (which is not the case here). FCA is well aware of this line of cases as it has been a party in many of them, including *Crawford*, 2024 WL 919830, at *1, *4. Judge Murphy, in ruling on FCA's *motion for summary judgment*, rejected FCA's mootness argument and found that "[i]f Plaintiffs succeed on their claims for breach of implied warranty, they will be entitled to diminished value damages," which "are measured by the difference between the value of the goods as accepted and the value of the goods as warranted." *Id.* at *4 (citing U.C.C. § 2-714). The court concluded that "[w]hether the defect was repaired will not impact the value of the goods as warranted. And if the value of the goods as

---

[4] FCA cites to *Pacheco* as an example of a court in this District dismissing a case on mootness grounds. *See* ECF No. 21, PageID.634 n.10. However, FCA fails to mention that the Court later granted Plaintiffs' Motion for Relief from Judgment and reversed the mootness decision after it became known that the recall was ineffective (a fact Ford failed to provide during the motion to dismiss briefing). *See Pacheco v. Ford Motor Co.*, 2024 WL 188369 (E.D. Mich. Jan. 17, 2024).

[5] *See also In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2022 WL 4011225, at *5 (E.D. Mich. Sept. 2, 2022); *Sulligan v. Ford Motor Co.*, 2023 WL 5180330, at *6 (E.D. Mich. Aug. 11, 2023); *Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635, 648 (E.D. Mich. 2021).

warranted is greater than the value of the goods as accepted, Plaintiffs will have damages despite the repair." *Id.* Similarly, the court concluded that the plaintiffs' express warranty claims were not moot because the plaintiffs "argued that the warranty failed its essential purpose . . . [a]nd if Plaintiffs succeed on that claim, they may be entitled to incidental and consequential damages." *Id.* Thus, "relief is clearly available to Plaintiffs if they prevail." *Id.*[6]

As it did in *Crawford*, FCA relies heavily on an interpretation of *Hadley v. Chrysler Grp., LLC*, 624 Fed. Appx. 374, 378 (6th Cir. 2015) that courts in this District have declined to follow. Specifically, FCA cites language in *Hadley* where the Sixth Circuit held that plaintiffs could not bring a "diminished-value claim" against a *component supplier* based on the "existence of [a] defective component from the moment of purpose" because a free recall repair "removed the defect" upon which the diminished-value injury claim was based. *See* ECF No. 21, PageID.633; *Hadley*, 624 Fed. Appx. at 378. In *Hadley*, however, "[t]he plaintiffs did not plead any facts in support of the allegation that they suffered a diminished-value injury." *Hadley*, 624 Fed. Appx. at 378. In contrast, here, Plaintiffs allege that they were injured because

---

[6] Judge Murphy noted and addressed FCA's reliance on *Solak v. Ford Motor Co.*, 2023 WL 4628456 (E.D. Mich. July 19, 2023)—which FCA relies on again here. *See Crawford*, 2024 WL 919830 at *4 (citing *Solak*, 2023 WL 4628456, at *3) ("'[T]he party asserting prudential mootness carries the burden of establishing the absence of any effective relief the court may conceivably provide.' Here, Defendant needed to establish that the Court cannot conceivably provide effective relief to Plaintiffs. But, as set forth above, relief is clearly available to Plaintiffs if they prevail.").

they would not have purchased their vehicles or would have paid less for them had they known about the Clutch Defect. ¶¶ 12-16; *see also Crawford v. FCA US LLC*, 2021 WL 3603342, at *2 (E.D. Mich. Aug. 13, 2021) (distinguishing *Hadley* on the grounds that "Plaintiffs alleged that they were injured because they would have paid less for the truck had they known about the defect"). "Thus, 'because Plaintiffs claim their injury occurred at the point of purchase, and that the recall did not necessarily remediate the loss caused to Plaintiffs by their allegedly' having to pay more for the [vehicle]s 'based on [Defendant's] alleged misrepresentations, *Hadley* does not plainly bar Plaintiffs' claim[s].'" *Id.* (quoting *Raymo*, 475 F. Supp. 3d at 695).

Moreover, *Hadley* indicates that causes of action against vehicle manufacturers arising from an automobile defect *at the time of purchase* are not subject to prudential mootness. Unlike here, "[a]ll the plaintiffs' claims against" the vehicle manufacturer in *Hadley* were "based on the alleged delay in repairing the vehicle—not the actual existence of the defect." *Hadley*, 624 Fed. Appx. at 376. Significantly, in affirming dismissal of the plaintiffs' claims, *Hadley* distinguished a Fifth Circuit decision (*Cole v. Gen. Motors Corp.*, 484 F.3d 717, 722-23 (5th Cir. 2007)) in which consumers, as here, sued "the manufacturer of their vehicles based on allegations that the vehicles were defective *from the moment of purchase*." *Id.* at 378 (emphasis in original). In other words, the plaintiffs in *Hadley* "did not plead any facts in support of the allegation that they suffered a diminished-value injury" caused by the actions of a

8

vehicle manufacturer. *Id.* ("plaintiffs have not shown how they suffered diminished-value injuries based solely on New Chrysler's delay in repairing the ORC Module.").

This reading of *Hadley* is further reinforced by other opinions from this District. *See, e.g.*, *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 983 (E.D. Mich. 2022) (denying dismissal on basis of prudential mootness and explaining that plaintiffs had alleged "overpayment at the point of purchase"); *Raymo*, 475 F. Supp. 3d at 695 (holding that it made no difference that defendants "ha[d] already remedied th[e] defect as part of the voluntary recall" since the recall did not provide complete relief for plaintiffs' overpayment at the point of sale and rejecting *Hadley* as a bar to damages claims); *Weidman*, 2022 WL 1071289, at *4-5.

The other cases that FCA relies on are inapposite or unpersuasive. *See* ECF No. 21, PageID.634-635. For example, Judge Drain, the author of *Flores v. FCA US LLC*, 2020 WL 7024850 (E.D. Mich. Nov. 30, 2020), later clarified in the *Weidman* decision that his *Flores* opinion did not address damage claims "for overpayment at the point of purchase," which are brought here. *Weidman*, 2022 WL 1071289, at *5. In *Sharp v. FCA US LLC*, 637 F. Supp. 3d 454, 458 (E.D. Mich. 2022), the litigation commenced *prior* to the announcement of the recall, leading that court to determine mootness was implicated. Here, Plaintiffs filed this case *after* FCA's announcement of its three recalls, on March 3, 2020, January 28, 2021, and February 23, 2023, and specifically allege that the recall repair is ineffective. *See* ¶¶ 43, 49, 58. FCA cites

*Diaz v. Ford Motor Co.*, 2023 WL 6164455, at *4 (E.D. Mich. Sept. 21, 2023) for its finding that "[t]he possibility that the recall repair will fail to fix the problem is not sufficiently concrete to constitute an injury in fact," however, Plaintiffs "sustained a concrete injury when they purchased vehicles with defective parts." *Crawford*, 2024 WL 919830 at *3. In *Uzelac v. Mercedes-Benz USA, LLC*, 2020 WL 13577557, at *1 (E.D. Mich. Apr. 27, 2020), the court dismissed the plaintiff's claims because she did not plead that the defect had the potential to manifest in her vehicle, and the defendant argued that no defect existed whatsoever. *Id.* at *6. *Pacheco* is discussed above.

FCA's reliance on *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208 (10th Cir. 2012) is likewise unpersuasive. In *Winzler*, the plaintiff sought "an order requiring Toyota to notify all relevant owners of the defect and then to create and coordinate an equitable fund to pay for repairs." *Id.* at 1209. The Tenth Circuit found prudential mootness because the plaintiff sought "equitable relief already being provided by coordinate branches of government and she offer[ed] no reason why the courts should duplicate those efforts." *Id.* Unlike *Winzler*, Plaintiffs are not seeking relief that is prospective and, on the facts presented, could no longer be granted. *See, e.g.*, *Greenbaum v. U.S. E.P.A.*, 370 F.3d 527, 534 (6th Cir. 2004) (citing *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997)). Rather, Plaintiffs seek damages stemming from FCA's conduct and the harm Plaintiffs have already suffered—overpaying for defective vehicles.

A case is moot "'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* Where, as here, Plaintiffs' requested relief goes "above and beyond" the recall relief, their claims are not moot because they maintain a "legally cognizable interest in the outcome." *Reynolds*, 546 F. Supp. 3d at 648 (quoting *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979)).

### 2. *Plaintiffs have standing to assert nationwide class allegations.*

Plaintiffs properly plead a nationwide class and have standing to assert claims on behalf of putative Class members from other states. Whether Plaintiffs can represent a nationwide class is a Rule 23 matter unrelated to Article III standing. FCA's argument is premature before Plaintiffs move for class certification. *See, e.g.*, *Droesser v. Ford Motor Co.*, 2023 WL 2746792, at *6 (E.D. Mich. Mar. 31, 2023) (collecting cases and holding that "a consensus has emerged among the courts of appeal. All five circuits to have addressed the question hold that a plaintiff's ability to assert state law claims on behalf of out-of-state class members is a matter of representation under Rule 23, not a question of Article III standing."); *Johnson v. FCA US LLC*, 555 F. Supp. 3d 488, 494-95 (E.D. Mich. 2021); *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 588 (E.D. Mich. 2017).

## B. **Plaintiffs Adequately Plead Their Warranty Claims**

### 1. *FCA breached its express warranty.*

Plaintiffs' breach of express warranty claims are based on FCA's breach of its Basic Limited Warranty. That warranty's broad coverage of "all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation," does not exclude coverage of the Clutch Defect. *See* ECF No. 21, PageID.628. And despite FCA's arguments to the contrary, Plaintiffs do not allege only a design defect.[7]

It is plausible that the Clutch Defect was caused by a manufacturing issue, and discovery is needed prior to making premature and uninformed characterizations of the defect at the motion to dismiss stage. *See, e.g.*, *Urban v. Tesla, Inc.*, 2023 WL 6796021, at *7 (N.D. Cal. Oct. 13, 2023) (citing *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1174 (9th Cir. 2010)) (holding that discovery could reveal a manufacturing defect that falls within the express warranty); *In re FCA US LLC*

---

[7] *See, e.g.*, ¶ 3 ("[A] malfunctioning or incorrectly designed *or manufactured* clutch can create dangerous conditions, including fires. That is precisely what is happening to the Class Vehicles at issue here as a result of the 'Clutch Defect.'") (emphasis added); ¶ 40 ("If the clutch is improperly designed *or manufactured* or has deficient characteristics, the clutch friction plate will slip on the engine flywheel and power will be transferred to heat and even fail all together. This is the case here.") (emphasis added); ¶ 86 ("The clutch design or specification contributed to the Clutch Defect and constituted a defect in design, *materials, workmanship and factory preparation*. FCA's failure to *assemble and manufacture* the clutch in such a way as to prevent manifestation of the Clutch Defect during normal operation is a defect in *materials, workmanship, factory preparation*, as well as design.") (emphasis added).

*Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1011 (E.D. Mich. Nov. 15, 2017) ("At this early stage of the case, without the benefit of any factual development as to the cause and origin of the alleged defect, dismissal of the express warranty claims is not justified by a premature and uninformed classification of the alleged defect as being categorically in the realm of 'design' or 'manufacturing.'"); *Bolooki v. Honda Motor Co. Ltd.*, 2023 WL 2627015, at *3 (C.D. Cal. Mar. 10, 2023).[8]

FCA also argues (ECF No. 21, PageID.637) that a class action contradicts the nature of a manufacturing defect; however, "just because Plaintiffs plead allegations involving a class of vehicles does not preclude the possibility of a manufacturing defect." *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 288 (E.D. Mich. 2021); *see also Barakezyan v. BMW of N. Am., LLC*, 715 Fed. Appx. 762 (9th Cir. 2018) ("The fact that the SAC alleges that all BMW CCBs exhibit the defect does not preclude the defect from being a manufacturing defect[.]"); *Milisits v. FCA US LLC*, 2021 WL 3145704, at *4 (E.D. Mich. July 26, 2021) (quoting *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 673 (E.D. Mich. 2020)) ("[I]t is 'logically possible that

---

[8] Unlike the cases FCA cites where the plaintiffs' allegations of a manufacturing defect were insufficient, Plaintiffs' FAC is replete with allegations that the Clutch Defect was caused by a manufacturing issue. Moreover, in *Pistorio v. FCA US LLC*, 2022 WL 141524, at *6-7 (E.D. Mich. Jan. 14, 2022)—a case relied upon by FCA— the court recognized that "[a]t the motion to dismiss stage, courts have rejected efforts to create an artificial distinction between design and materials/workmanship defects . ." and that plaintiffs were "not required to commit to a single theory of the origin of the [defect] at this [early stage]." *Id.* at *6-7. Further, *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 788 (E.D. Mich. 2019) is irrelevant as the plaintiffs there did not allege breach of express warranty claims." *Id.*

either . . . the transmissions work badly even though [they were] built as designed' *or* 'that they were all badly built, even though well-patterned.'"); *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 2023 WL 8602971, at *25 (E.D. Mich. Dec. 11, 2023).

FCA also contends that Plaintiffs' express warranty claims should be dismissed "because Plaintiffs have failed to plead the facts necessary to show any breach." *See* ECF No. 21, PageID.638. However, FCA breached its express warranty by failing to provide an effective remedy for the Defect. *See, e.g.*, ¶¶ 5-8, 41-62 (alleging that FCA's three recalls do not remedy the Clutch Defect). In addition to these allegations, the experiences of Plaintiffs Myslivecek, Busovicki, and Caputo, whose vehicles manifested the Clutch Defect (¶¶ 12-14), exemplify the ineffectiveness of FCA's recalls and repairs. *See Harrison v. Gen. Motors, LLC*, 2023 WL 348962, at *12 (E.D. Mich. Jan. 19, 2023) (recognizing that "[c]ourts in similar cases have found that an express-warranty claim may be brought when the manufacturer is either unwilling or unable to repair the vehicle, despite attempting to repair the vehicle for free").

Further, Plaintiffs and putative Class members have viable breach of express warranty claims, even if they did not present their vehicles to a dealership to obtain an *ineffective* repair, since futile actions are not required. *See, e.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 970 (N.D. Cal. 2014). FCA relies on *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 757-58 (E.D. Mich. 2017) to support its argument that a lack of presentment is "fatal to an express warranty claim," *see* ECF No. 21,

14

PageID.638; however, more recent cases have recognized a futility exception. *See,*
*e.g.*, *Kimball v. Volkswagen Grp. Of Am., Inc.*, 2023 WL 5533343, at *5 (D. N.J. Aug.
28, 2023) ("Courts have applied the futility exception when 'there is a defect common
to all class vehicles; that [the defendant manufacturer] was consistently unable to fix
the defect; and that any repairs or mitigation that [the defendant] offered were
insufficient.'"); *In re Chevrolet Bolt*, 633 F. Supp. 3d at 975; *Benkle v. Ford Motor
Co.*, 2017 WL 9486154, at *12 (C.D. Cal. Dec. 22, 2017).

### 2. *Plaintiffs' implied warranty claims are well pled.*

#### a. The Class Vehicles are not merchantable.

Plaintiffs adequately allege that the Clutch Defect rendered their vehicles unfit
for ordinary use, as required for an implied warranty claim. FCA relies on *Sheris v.
Nissan N. Am. Inc.*, 2008 WL 2354908, at *6 (D. N.J. June 3, 2008) to argue that the
implied warranty of merchantability is breached "only" when a defect renders the
vehicle unfit for its ordinary purpose of providing transportation. *See* ECF No. 21,
PageID.639. However, "[f]ederal courts considering implied warranty claims in auto
defect litigation consistently have held that an automobile is merchantable or fit for its
intended purpose only where it is able reliably to operate in a 'safe condition' or to
provide 'safe transportation.'" *Francis*, 504 F. Supp. 3d at 676;[9] *Monostable*, 280 F.

---

[9] In *Pistorio*, FCA, as it does here, relied on *Beck*. Judge Cox did "not find this
argument persuasive" and relied on *Francis* in denying FCA's motion to dismiss the

Supp. 3d at 1015 ("[T]he decisions on point in implied warranty cases concerning defective cars have recognized that merchantability implies not only that a vehicle can provide transportation, but that it can do so in a reasonably safe and controlled manner."); *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1276 (E.D. Mich. 2021); *Droesser*, 2023 WL 2746792, at *9; *Milisits*, 2021 WL 3145704, at *6.[10]

Here, the Class Vehicles are unsafe and unreliable due to the Clutch Defect. ¶¶ 5, 41-54, 58-62. These vehicles contain a "defect that can not only cause the vehicle to lose power in traffic or other dangerous situations, but also in many instances can cause the vehicle to catch fire or result in dangerous debris being ejected." ¶ 5. A vehicle of this nature cannot credibly be characterized as merchantable. ¶¶ 5-8, 41-62.

### b. Plaintiffs Myslivecek and Schaffner's implied warranty claims do not fail for lack of privity.

FCA contends that Plaintiffs Myslivecek and Schaffner's implied warranty claims fail for lack of privity because they purchased their vehicles from third-party

---

implied warranty claims. *See Pistorio*, 2022 WL 141524, at *8; *see also* 2:20-cv-11838 PageID.1509-1510 (citing *Beck*, 273 F. Supp. 3d at 762).

[10] *Ford v. Hyundai Motor Am.*, 2021 WL 7448507, at *14 (C.D. Cal. Oct. 5, 2021)—a case relied upon by FCA—is also consistent with this principle. *See id.* ("Since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a *safe condition* and substantially free of defects. Thus, where a car can provide *safe*, reliable transportation[,] it is generally considered merchantable.") (emphasis added). Likewise, in *Berger v. Mazda Motor of Am., Inc.*, 2019 WL 1428449, at *7 (E.D.N.Y. Mar. 30, 2019), the court acknowledged that "with respect to a motor vehicle, the ordinary purpose to which the implied warranty speaks is to enable the purchaser to transport herself upon the streets and highways ... in a reasonably *safe manner*." *Id.* (emphasis added).

dealerships. *See* ECF No. 21, PageID.640. But "New York law recognizes a third-party beneficiary exception to the privity requirement." *In re Chevrolet Bolt*, 633 F. Supp. 3d at 980; *see also Francis*, 504 F. Supp. 3d at 677 (holding that applying third-party beneficiary exception "is particularly apposite in the context of cases involving a manufacturer with an extensive established network of authorized dealers that sell its cars"). And "[r]esolving the applicability of that exception also is a fact-intensive exercise not amenable to resolution at the pleading stage." *Francis*, 504 F. Supp. 3d at 677; *In re Chevrolet Bolt*, 633 F. Supp. 3d at 980; *Milisits*, 2021 WL 3145704, at *7.

### C. Plaintiffs Adequately Plead Their Fraud Claims

#### 1. Plaintiffs plead actionable omissions.

FCA contends that Plaintiffs have not pled their fraud-based claims with sufficient particularity to meet the requirements of Fed. R. Civ. P. 9(b). Not so. To be clear, Plaintiffs' fraud-based claims are based on FCA's omissions. For omission-based claims under Rule 9(b), a plaintiff must plead "the who, what, when, where, and how" of the alleged omission." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 255-56 (6th Cir. 2012).[11]

---

[11] The Rule 9(b) "pleading standard is 'slightly more relaxed' for claims of fraudulent concealment or fraud by omission . . . because fraudulent omissions or concealments are by nature 'more amorphous' than affirmative misrepresentations." *Raymo*, 475 F. Supp. 3d at 690. "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F. 3d 788, 803 (6th Cir. 2012). Further, "[a] complaint [alleging omissions claims] may

Here, Plaintiffs allege the "who, what, when, where and how" of their omissions claims: **Who:** FCA. ¶¶ 17-21; **What:** FCA's failure to disclose the Defect despite knowing about it in 2018, prior to the sales of the Class Vehicles to Plaintiffs and Class members. ¶¶ 22, 29, 127-28, 138-39, 180-84, 186, 188, 229-34, 260, 291-95, 357-61, 364. **When:** "Prior to purchase." ¶¶ 12-16; **Where:** The various channels of information through which FCA could have included such information. ¶¶ 12-16, 76-79; **How:** If FCA had disclosed the Defect, Plaintiffs would not have purchased their Class Vehicles or would have paid less for them. ¶¶ 12-16, 128, 140, 188-89, 238-39, 300-01, 329, 366-67. Accordingly, Plaintiffs have satisfied Rule 9(b).

### 2. *Plaintiffs sufficiently allege pre-sale knowledge.*

FCA is also wrong when it argues that Plaintiffs have failed to "plead facts showing FCA US knew of [the] defect before sale." ECF No. 21, PageID.642. Under Rule 9(b), "'knowledge[] and other conditions of a person's mind may be alleged generally.'" *JM Adjustments Servs., LLC v. J.P. Morgan Chase Bank, N.A.*, 2016 WL 3913712, at *8 (E.D. Mich. July 20, 2016) (quoting Fed. R. Civ. P. 9(b)). The Court's job "is not to scrutinize each allegation in isolation but to assess all the allegations holistically." *Wang v. Lightspeed Envtl., Inc.*, 2014 WL 29120, at *16 (E.D. Mich.

---

suffice under the applicable standard if it alleges that a manufacturer knew of a defect before sale, the various venues the manufacturer used to sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the product or would have paid less for it had they known of the defect." *Wozniak v. Ford Motor Co.*, 2019 WL 108845, at *3 (E.D. Mich. Jan 4, 2019).

Jan. 3, 2014). Hence, the question is whether, as a whole, Plaintiffs have made plausible, "short and plain" allegations of pre-sale knowledge consistent with Rule 8. *See Afzal v. BMW N. Am., LLC*, 2017 WL 3207232, at *6 (D. N.J. July 27, 2017) ("the [c]ourt finds that the totality of these allegations … is sufficient to impute knowledge to BMW [of the alleged defect]"); *In re Gen. Motors Air Conditioning. Mktg. and Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 636-37 (E.D. Mich. 2019) (following *Afzal* and evaluating totality of knowledge allegations).

Here, Plaintiffs' allegations far surpass this standard with the sixteen paragraphs, thirty-five pages, and numerous images under a header titled "FCA's Knowledge of The Clutch Defect." ¶¶ 63-79. Similar allegations have repeatedly been found sufficient. *See Monostable*, 280 F. Supp. 3d at 999 (allegations that FCA was aware of defect based "on its own internal testing and design process, and … customer complaints it received soon after the vehicles entered the market"); *Weidman v. Ford Motor Co.*, 2019 WL 3003693, at *6 (E.D. Mich. July 10, 2019) (allegations similar to those in ¶ 63 of the FAC supported presale knowledge); *In re GM AC*, 406 F. Supp. 3d at 637 (allegations that GM knew of the defect sufficed "[w]hen taken together").

Notably, each Plaintiff purchased their Class Vehicles in 2019 or later, well after complaints about the Clutch Defect first appeared in early 2018. ¶¶ 12-16.[12]

---

[12] Indeed, Plaintiffs Myslivecek, Busovicki, Caputo, and Schaffner each purchased or leased their Class Vehicles in late 2020 or early 2021, at which time FCA had been formally investigating this issue for over a year. ¶¶ 12-14, 16, 91.

"Since 2018 at the latest, Defendant has constantly tracked the NHTSA database to track reports concerning problems with its vehicles, including problems with the clutches in Class Vehicles. From this source, Defendant knew that vehicles were experiencing unusually high levels of problems with the manual transmissions due to the Clutch Defect." ¶ 68. FCA's knowledge from this source is not speculative. "Defendant would have monitored and been aware of these complaints because Federal law requires automakers to be in close contact with NHTSA regarding potential auto defects." ¶ 69. And "[a]utomakers also have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements." ¶ 70. "Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects." *Id.* Such "customer complaints may support knowledge when they are submitted to a forum the defendant is likely to view." *Myers v. BMW of N. Am., LLC*, 2016 WL 5897740, at *4 (N.D. Cal. Oct. 11, 2016). The FAC also includes allegations about online reputation management ("ORM"), a now widely prevalent business practice, and explains how ORM would have put FCA on notice about customer complaints about the Defect many years ago. ¶ 65.

FCA's reliance on *Smith v. Gen. Motors LLC*, 988 F.3d 873 (6th Cir. 2021) is inapposite. *See* ECF No. 21, PageID.642. In *Smith*, "[m]any class members allege[d]

that their dashboards did not crack until after driving their car tens (or hundreds) of thousands of miles over many years." *Smith*, 988 F.3d at 886. Accordingly, the *Smith* Court, while applying a stipulated out-of-Circuit standard, concluded that "Plaintiffs cannot rely on pre-production test and post-hoc complaints to show knowledge of a defect that *only arose after extended use*." *Id.* (emphasis added). Here, in contrast, each Plaintiff purchased his vehicle long after FCA knew or should have known about the existence of the Defect (because it was manifesting regularly by that time in other owners' vehicles). *See supra*. And Plaintiffs have alleged numerous additional means through which FCA would have certainly acquired actual knowledge of the Defect, including the First Recall taking place prior to the sale of all but one of the Plaintiffs' vehicles. *See supra*. Finally, the Clutch Defect at issue here does not require extended use to manifest. *See, e.g.*, ¶¶ 170, 208, 270; *see also Genaw v. Garage Equip. Supply Co.*, 856 F. App'x 23, 28 n.2 (6th Cir. 2021) (distinguishing *Smith* where "there [was] no indication here that [an] alleged defect would take several years to manifest itself, such that it could not be identified through pre-production testing.").

FCA further argues that Plaintiff Caputo's NJCFA claim "requires facts showing FCA US knew 'with certainty' his particular vehicle would fail." ECF No. 21, PageID.642. That is incorrect for multiple reasons. First, the Defect manifested for Plaintiff Caputo during the warranty period (and after the First Recall was performed on his vehicle), so the "with certainty" test does not apply. *See, e.g.*, *Withrow v. FCA*

*US LLC*, 2021 WL 2529847, at *20-21 (E.D. Mich. June 21, 2021). Second, Plaintiff Caputo purchased his vehicle after the First Recall, so FCA knew (with certainty) of the Clutch Defect at the time of his purchase. ¶¶ 14, 42; *see also Withrow*, 2021 WL 2529847, at *20-21 (Sustaining NJCFA claims where "the Court has already found that it is plausible that Fiat-Chrysler knew (perhaps not with certainty) that the CP4 pump was not compatible with U.S. diesel or otherwise would fail prematurely.").

### 3. *The economic loss doctrine does not apply here.*

The economic loss doctrine does not bar Plaintiffs' California, Michigan, New Jersey, and New York fraudulent concealment claims.

*First*, FCA's proposed application of the economic loss doctrine is dependent on the existence of a contract covering the claims at issue, and FCA contests Plaintiffs' warranty claims. *See* ECF No. 21, PageID.636-640. Thus, Plaintiffs may plead their omissions claims in the alternative. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

*Second*, for each of the states for which Plaintiffs allege fraudulent concealment claims, all but New Jersey provide an exception to the economic loss doctrine where plaintiffs allege fraud by omission, provided that the alleged omissions lead to fraudulent inducement.[13] Here, Plaintiffs allege (1) that FCA failed to disclose, and

---

[13] *Scherer v. FCA US, LLC*, 565 F. Supp. 3d 1184, 1191-93 (S.D. Cal. 2021) (California); *Nuwer v. FCA US LLC*, 552 F. Supp. 3d 1344, 1360 (S.D. Fla. 2021) (New York); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 433

actively concealed, the Clutch Defect, in an effort to induce Plaintiffs to purchase the Class Vehicles; and (2) if Plaintiffs had known of the Defect, they would not have purchased or would have paid less for the Class Vehicles. ¶¶ 12-16, 128, 140, 188-89, 238-39, 300-01, 329, 366-67. Thus, Plaintiffs' California, Michigan, and New York claims are not prohibited by the economic-loss doctrine regardless of whether the Court adheres to Rule 8(d)(3) at this stage.

### D. <u>The NY GBL Claims Should Survive</u>

FCA seeks to dismiss Plaintiffs' claims under New York Gen. Bus. Law §§ 349 and 350 ("NY GBL §§ 349 and 350") for two reasons. First, FCA contends "New York law holds no such claim is viable where, as here, it is based on an unmanifested defect." ECF No. 21, PageID.643. But so long as "the defect, and [the Defendant's] response to it, has limited how they can use their vehicles . . . [Plaintiffs'] claims need not be dismissed due to the manifestation requirements imposed by . . . New York law." *See In re Chevrolet Bolt*, 633 F. Supp. 3d at 969. Here, both New York Plaintiffs allege that the Clutch Defect manifested in their vehicles. *See* ¶¶ 12, 16.

Second, FCA contends that "[NY GBL] claims require an 'actual injury' and the incurring of some expense, which cannot exist here in light of the free recall repair/reimbursement." ECF No. 21, PageID.644.[14] That likewise misstates New York

---

(S.D.N.Y. 2017) (New York); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 591 (E.D. Mich. 2018) (Michigan).

[14] Plaintiff Myslivecek did incur expense in the form of a $250 deductible. ¶ 12.

law, wherein Plaintiffs can maintain their claims under NY GBL §§ 349 and 350 so long as they allege loss stemming both from Defendant's deceptive practices and their breach of warranty. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (finding that a plaintiff had stated a claim under NY GBL §§ 349 and 350 where he "alleged both a monetary loss stemming from the deceptive practice and the Defendant's failure to deliver contracted-for services."). And notably here, price premium damages are sufficient for an "actual injury" under the NY GBL. *See*, *e.g.*, *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576-77 (S.D.N.Y. 2021).

### E. <u>Plaintiffs Adequately Plead Their Unjust Enrichment Claims</u>

FCA's unjust enrichment argument[15] once again defies a plain reading of Rule 8(d).[16] Here, FCA argues that the Clutch Defect is a design defect and is thus not covered by any warranties. *See*, *e.g.*, ECF No. 21, PageID.636-638. Thus, Plaintiffs' unjust enrichment claims should proceed in the alternative until discovery determines

---

[15] FCA does not dispute, and thus concedes, that Plaintiffs have adequately alleged the *elements* of their unjust enrichment claims.

[16] *See, e.g.*, *Terry Barr Sales Agency, Inc. v. All–Lock Co., Inc.*, 96 F.3d 174, 182 (6th Cir. 1996) (allowing plaintiff to proceed under both breach of contract and unjust enrichment theories where defendant "kept its options open, and may deny the existence of a contract on remand to the district court"); *Francis*, 504 F. Supp. 3d at 694 (E.D. Mich. 2020) ("[A]lternative pleading of contract and quasi-contract claims routinely is permitted, and particularly is appropriate, where the defendant explicitly disclaims the availability of a contractual remedy . . .") (collecting cases).

the scope of any contractual relationship between the parties.[17]

FCA also argues that Plaintiffs' unjust enrichment claims should be dismissed because they did not plead facts showing their legal remedies to be inadequate. ECF No. 21, PageID.644. But this argument likewise does not preclude Plaintiffs from pleading equitable claims in the alternative. *See Francis*, 504 F. Supp. 3d at 694; *Crawford*, 2021 WL 3603342, at *12; *Raymo*, 475 F. Supp. 3d at 709-11.[18] And Plaintiffs explicitly allege that they lack an adequate remedy at law for their unjust enrichment claims. *See* FAC at ¶¶ 200, 250, 312, 378.

Plaintiffs' unjust enrichment claims should proceed. *Chapman*, 531 F. Supp. 3d at 1304 (rejecting Defendant's arguments that "UE is not available when there is an express contract [and] UE is not available when there is adequate legal remedy.").

## IV.   CONCLUSION

Plaintiffs respectfully ask that Defendant FCA's Motion to Dismiss be denied.

Dated: April 12, 2024                     Respectfully submitted,

                                          */s/ E. Powell Miller*
                                          E. Powell Miller (P39487)
                                          Dennis A. Lienhardt (P81118)
                                          Mitchell J. Kendrick (P83705)
                                          **THE MILLER LAW FIRM, P.C.**
                                          950 W. University Drive, Suite 300

---

[17] FCA's argument that the New York unjust enrichment claims are barred because the claim "'is not available where it simply duplicates, or replaces, a conventional contract or tort claim'" (ECF No. 21, PageID.645) fails for this same reason.

[18] It is also clear that unjust enrichment is a cause of action under California law. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).

Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
dal@millerlawpc.com
mjk@millerlawpc.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese
Matthew A. Girardi
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
jmarchese@bursor.com
mgirardi@bursor.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Nick Suciu III
6905 Telegraph Road Suite 115
Bloomfield Hills, MI 48301
Telephone: 313-303-3472
nsuciu@milberg.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2024, I electronically filed the foregoing papers using the ECF system which will send electronic notices of same to all counsel of record.

Respectfully submitted,

By:  */s/ E. Powell Miller*
E. Powell Miller (P39487)
950 W. University Drive, Suite 300
Rochester, MI  48307
Telephone: (248) 841-2200
epm@millerlawpc.com