## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Dean Myslivecek, *et al.*,

|  |  |
|---|---|
| Plaintiffs, | Case No. 23-12980 |
| v. | Judith E. Levy<br>United States District Judge |
| FCA US LLC, | |
| | Mag. Judge Elizabeth A. |
| Defendant. | Stafford |

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [21]

Plaintiffs Dean Myslivecek, Michael Busovicki, Paul Caputo, Christopher Chow, and Kevin Schaffner bring this proposed nationwide class action lawsuit against Defendant FCA US LLC, alleging that certain Jeep vehicles manufactured, distributed, and sold by Defendant contain a clutch defect. (ECF No. 19.)

Before the Court is Defendant's motion to dismiss Plaintiffs' amended complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 21.)

The motion is fully briefed. (ECF Nos. 35, 36.) On July 25, 2024, the Court held a hearing and heard oral argument on the motion. Finally, the parties filed various notices regarding supplemental authority or information. (*See* ECF Nos. 39, 40, 42, 43, 44, 45, 46.)

For the reasons set forth below, Defendant's motion to dismiss is granted in part and denied in part.

## I. Background

Plaintiffs bring this proposed class action on behalf of themselves and others who purchased or leased a "Class Vehicle," defined in the amended complaint as manual-transmission "2018-2023 Jeep Wrangler[s] (2 door)," "2018-2023 Jeep Wrangler[s] Unlimited (4 door)," and "2020-2023 Jeep Gladiator[s]." (ECF No. 19, PageID.413.) The amended complaint states that each of these vehicles "is equipped with the same 3.6L V6 engine that produces an advertised 285 horsepower and 260 lb-ft of torque." (*Id.*) Plaintiffs allege that the vehicles have a "Clutch Defect" that causes the "friction plate . . . to slip on the flywheel, creating high temperatures" and "dangerous conditions, including fires." (*Id.* at PageID.414.)

2

According to the amended complaint, Defendant's Vehicle Safety and Regulatory Compliance organization opened an investigation on the Clutch Defect in late 2019. (*Id.* at PageID.429.) The first recall for the Clutch Defect (NHTSA Recall No. 20V-124) was publicly released on March 3, 2020. (*Id.*) This recall "covered all 2018-2020 Jeep Wranglers and all 2020 Jeep Gladiators equipped with manual transmissions." (*Id.*) At that time, the estimated percentage of those vehicles with the Clutch Defect was 1%. (*Id.* at PageID.430.) The first recall identified the "clutch plate and disc" or "clutch kit pressure plate and disc" "as components to be replaced in affected Class Vehicles." (*Id.* at PageID.431.)

The second recall for the Clutch Defect (NHTSA Recall No. 21V-028) was announced on January 28, 2021. (*Id.* at PageID.431.) It covered "all 2018-2021 Jeep Wranglers equipped with a manual transmission manufactured between August 23, 2017 and January 22, 2021, as well as all 2020-2021 Jeep Gladiators equipped with a manual transmission manufactured between December 21, 2018 and January 22, 2021." (*Id.* at PageID.431–432.) The estimated percentage of vehicles with the Clutch Defect was 100%. (*Id.* at PageID.432.)

3

On February 16, 2021, after the second recall was announced, Plaintiffs filed their first suit against Defendant. *Myslivecek v. FCA US LLC*, Case No. 21-10346 (E.D. Mich. 2021) ("*Myslivecek I*"). The Court issued an opinion and order on December 23, 2022, granting in part Defendant's motion to dismiss for lack of standing and lack of subject matter jurisdiction. *Myslivecek I*, No. 21-10346, 2022 WL 17904526 (E.D. Mich. Dec. 23, 2022). A few months later on February 3, 2023, Plaintiffs voluntarily dismissed the remainder of their claims without prejudice. (*Myslivecek I*, ECF No. 38.) In the amended complaint, Plaintiffs claim that they dismissed their claims "[a]cting on belief that the Second Recall would properly fix the issue and FCA would provide free repair." (ECF No. 19, PageID.433.)

The third recall (NHTSA Recall No. 23V-116) was announced on February 23, 2023. (*Id.* at PageID.434.) It covered "all 2018-2023 Jeep Wranglers equipped with a manual transmission manufactured between August 23, 2017 and February 16, 2023, as well as all 2020-2023 Jeep Gladiators equipped with a manual transmission manufactured between December 21, 2018 and February 16, 2023." (*Id.* at PageID.435.) The estimated percentage of vehicles with the Clutch Defect was 100%. (*Id.*)

4

Plaintiffs allege that FCA has issued three recalls, but none have remedied the Clutch Defect. (*Id.* at PageID.416.) Plaintiffs also allege that FCA was aware of the Clutch Defect due to "pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to FCA's network of dealers and directly to FCA, aggregate warranty data compiled from FCA's network of dealers, testing conducted by FCA in response to consumer complaints, [ ] repair order and parts data received by FCA from its network of dealers and suppliers," and consumer complaints on forums, social media, and the National Highway Traffic Safety Administration database ("NHTSA"). (*Id.* at PageID.436–437, 441.)

Plaintiff's amended complaint contains the following counts:

| Count | Claim | Plaintiffs |
|---|---|---|
| 1 | Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 | All individual plaintiffs and the putative national class |
| 2 | California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 | Chow and the putative California subclass |

| 3 | California Unfair Competition Law, Bus. & Prof. Code § 17200 | Chow and the putative California subclass |
|---|---|---|
| 4 | Breach of implied warranty, the Song-Beverly Act, Cal. Civ. Code § 1790 | Chow and the putative California subclass |
| 5 | Breach of express warranty, Cal. Com. Code §§ 2313 & 10210 | Chow and the putative California subclass |
| 6 | California Fraudulent Concealment | Chow and the putative California subclass |
| 7 | California Unjust Enrichment | Chow and the putative California subclass |
| 8 | Breach of express warranty, Mich. Comp. Laws §§ 440.2313, 440.2803, 440.2860 | Busovicki and the putative Michigan subclass |
| 9 | Breach of implied warranty of merchantability, Mich. Comp. Laws § 440.2314[1] | Busovicki and the putative Michigan subclass |
| 10 | Michigan Fraudulent Concealment | Busovicki and the putative Michigan subclass |
| 11 | Michigan Unjust Enrichment | Busovicki and the putative Michigan subclass |
| 12 | New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.* | Caputo and the putative New Jersey subclass |

---

[1] The amended complaint contains a typographical error that cites "Mich. Comp. Laws § 440.314." (ECF No. 19, PageID.511.)

6

| 13 | Breach of express warranty, N.J. Stat. Ann. § 12A:2-313 | Caputo and the putative New Jersey subclass |
|---|---|---|
| 14 | Breach of implied warranty of merchantability, N.J. Stat. Ann. § 12A:2-314 | Caputo and the putative New Jersey subclass |
| 15 | New Jersey Fraudulent Concealment | Caputo and the putative New Jersey subclass |
| 16 | New Jersey Unjust Enrichment | Caputo and the putative New Jersey subclass |
| 17 | New York General Business Law § 349 | Myslivecek, Schaffner, and the putative New York subclass |
| 18 | New York General Business Law § 350 | Myslivecek, Schaffner, and the putative New York subclass |
| 19 | Breach of express warranty, N.Y. U.C.C. § 2-313 | Myslivecek, Schaffner, and the putative New York subclass |
| 20 | Breach of implied warranty of merchantability, N.Y. U.C.C. § 2-314 | Myslivecek, Schaffner, and the putative New York subclass |
| 21 | New York Fraudulent Concealment | Myslivecek, Schaffner, and the putative New York subclass |
| 22 | New York Unjust Enrichment | Myslivecek, Schaffner, and the putative New York subclass |

Defendant seeks dismissal of the amended complaint under Rule 12(b)(1) on the basis that Plaintiffs lack Article III standing to bring their claims and that the third recall moots Plaintiffs' claims. (ECF No. 21.) Because "[s]tanding is . . . a threshold requirement for federal jurisdiction," *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016), and because the Court is required to dismiss moot claims, see *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019), the Court will address these arguments first.

## II.    Rule 12(b)(1)

### A.    Legal Standard

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

A facial attack "questions [] the sufficiency of the pleading." *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016). "When reviewing a facial attack, a district court takes the allegations in the complaint as true." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (quoting *Gentek*, 491 F.3d at 330).

"If those allegations establish federal claims, jurisdiction exists." *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009). But "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Rote*, 816 F.3d at 387 (quoting *O'Bryan*, 556 F.3d at 376). "This approach is identical to the approach used by the district court when reviewing a motion invoking Federal Rule of Civil Procedure 12(b)(6)." *Glob. Tech., Inc.*, 807 F.3d at 810.

A factual attack, by contrast, "raises a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Wayside Church v. Van Buren Cnty.*, 847 F.3d 812, 817 (6th Cir. 2017) (citing *Gentek*, 491 F.3d at 330). In a factual attack on subject matter jurisdiction, "no presumptive truthfulness applies to the factual allegations," *Gentek*, 491 F.3d at 330, and "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

"In considering a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, a district court may consider factual matters outside the pleadings and resolve factual disputes." *Anestis v. United States*, 749

F.3d 520, 524 (6th Cir. 2014); *see also Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (stating that the court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts").

When a court's subject-matter jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden to prove jurisdiction. *Glob. Tech., Inc.*, 807 F.3d at 810 ("[T]he party invoking federal jurisdiction has the burden to prove that jurisdiction.").

### B.    Analysis

Plaintiffs must "demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). At oral argument, Plaintiffs represented that, "at this point," they are only seeking monetary damages. (ECF No. 41, PageID.1042.) The Court will therefore only evaluate Plaintiffs' standing to seek monetary damages.

"Under Article III of the Federal Constitution, [federal courts] can only decide 'Cases' or 'Controversies.'" *Thompson v. DeWine*, 7 F.4th 521, 523 (6th Cir. 2021) (alteration added) (quoting U.S. Const. art. III, § 2). "Courts have explained the 'case or controversy' requirement through a

series of 'justiciability doctrines,' including, 'perhaps the most important,' that a litigant must have 'standing' to invoke the jurisdiction of the federal courts." *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)).

"Standing 'goes to [a c]ourt's subject matter jurisdiction.'" *Marks v. Schafer & Weiner, PLLC*, No. 20-11059, 2022 WL 866836, at *5 (E.D. Mich. Mar. 23, 2022) (alteration in original) (quoting *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007)). "If a plaintiff cannot establish constitutional standing, his or her claim must be dismissed for lack of subject matter jurisdiction." *Id.* (citing *Loren*, 505 F.3d at 607).

The Sixth Circuit states that

[t]o establish standing, [the plaintiff] must meet three requirements: (1) "injury in fact—a harm that is both [(a)] concrete [and particularized,] and [(b)] actual or imminent, not conjectural or hypothetical," (2) causation—a "fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant," and (3) "redressability—a substantial likelihood that the requested relief will remedy the alleged injury in fact."

11

*Babcock v. Michigan*, 812 F.3d 531, 539 (6th Cir. 2016) (alterations added). "Each requirement is 'an indispensable part of the plaintiff's case' and 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof.'" *Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456, 461 (6th Cir. 2007) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Regarding the first standing requirement of an injury in fact, "[a] concrete injury is . . . 'real and not abstract,'" *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020), and "must actually exist," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). To qualify as particularized, an injury "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

Each Plaintiff must demonstrate that they suffered an injury in fact that was both concrete and actual, causation between the injury suffered and Defendant's alleged conduct, and redressability. *Babcock*, 812 F.3d at 539. Here, each Plaintiff alleges that the injury they suffered was at the "point of sale when they paid for a vehicle with a non-defective clutch, but received a dangerously defective vehicle that could catch fire, lose propulsion, or generate road debris." (ECF No. 25, PageID.835; *see also*

12

ECF No. 41, PageID.1003 (describing "point of sale damages").) Plaintiffs argue that Defendant, as the manufacturer, distributor, and seller of the vehicles, caused the injury, and that their "economic injur[y]" cannot be cured by a "post-hoc" repair, but can be redressed by damages. (ECF No. 25, PageID.836; ECF No. 41, PageID.1043.)

Defendant disagrees with Plaintiffs' representations that they have standing. It argues that "Plaintiffs' argument they can establish standing with a vague allegation of 'benefit of the bargain' damages . . . is contrary to Sixth Circuit precedent." (ECF No. 36, PageID.865 (citing *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 378 (6th Cir. 2015)).) Defendant interprets *Hadley* as holding that a "point of sale" injury cannot be sustained if the defect is removed or repaired.

The Court finds that Plaintiffs allege an injury-in-fact, despite the existence of a recall. Plaintiffs have sufficiently differentiated between the "point of sale" injury described in their amended complaint and the "diminished value" injury described in *Hadley*. (ECF No. 35, PageID.839–840.)

During oral argument, Plaintiffs were asked to explain the difference, if any, between a "point-in-sale" injury and a "diminished-

13

value" injury. (ECF No. 41, PageID.1003.) Plaintiffs explained that "at the point of sale, these plaintiffs thought they were receiving Vehicle A and paying . . . for example $50,000 for Vehicle A. But unknowingly because of the existence of the defect, they were actually receiving Vehicle B, which has a lower value." (ECF No. 41, PageID.1003.) As such, a recall does not adequately compensate Plaintiffs for their injury because the Clutch Defect existed between the time of purchase and the time of repair. (*See id.* at PageID.1012 ("[O]ur view is the plaintiffs deserve compensation for the period of time where they had a defective vehicle because that's not what they paid for and it's not what they bargained for and it's not what they expected. And then if it does become repaired later, then . . . they would not be able to recover for that period of time later.").)

Several courts have concluded that this kind of injury—damages incurred at the point of sale and remaining until the defect is repaired—remain despite the existence of a recall. *See Crawford v. FCA US LLC*, No. 2:20-CV-12341, 2021 WL 3603342, at *2 (E.D. Mich. Aug. 13, 2021) (Murphy, J.); *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 695 (E.D. Mich. 2020) (Berg, J.). Unlike in *Hadley*, where the Sixth Circuit

concluded that the plaintiffs "did not plead any facts in support of a diminished-value injury" and "presented no evidence of diminished value in light of the repair," *Hadley*, 624 F. App'x at 378, Plaintiffs' damages in this case are not ameliorated by a recall. Plaintiffs have sufficiently alleged that the recalls issued by Defendant were not effective. (*See, e.g.*, ECF No. 19, PageID.416.) As such, the Court finds that Plaintiffs have standing for their claims.

For similar reasons, the Court also finds that Plaintiffs' claims are not moot. If events occur that "deprive the court of the ability to give meaningful relief" on a particular claim, then it is moot, and must be dismissed. *See Sullivan*, 920 F.3d at 410. "[A] case may become moot at any stage of the litigation." *Graveline v. Benson*, 992 F.3d 524, 533 (6th Cir. 2021). The "test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Sullivan*, 920 F.3d at 410. "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit" the claim for relief is moot if the dispute "'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id.* (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

Even if Plaintiffs received the recall, and even if the recall was effective, it would not fully compensate Plaintiffs for damages incurred during the period of time their vehicles were defective. "Claims for damages are largely able to avoid mootness challenges" because they "are retrospective in nature—they compensate for past harm." *Ermold v. Davis*, 855 F.3d 715, 719 (6th Cir. 2017) (quoting *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 622 (3d Cir. 2013)). Although a claim for damages "may be moot where the damages would be so insubstantial or so clearly foreclosed by prior decisions that the case may not proceed," *Ermold*, 855 F.3d at 720, the Court does not find that the damages incurred during the period of time the vehicles were defective are so insubstantial that the case would be moot.

Finally, Defendant urges the Court to apply the doctrine of prudential mootness. (ECF No. 21, PageID.632–633.) Prudential mootness "often makes its appearance in cases where a plaintiff starts off with a vital complaint but then a coordinate branch of government steps in to promise the relief she seeks." *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012). This doctrine allows a court to "withhold relief it has the power to grant" when "a controversy . . . is so

attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand." *Chamber of Com. of U.S. of Am. v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980); *see also Greenbaum v. U.S. E.P.A.*, 370 F.3d 527, 535 (6th Cir. 2004).

Several courts have declined to hear a case about automotive defects because of recall efforts overseen by the National Highway Transportation Safety Administration. In *Winzler*, the plaintiff brought a putative class action against Toyota alleging that certain vehicles had defective engine control modules. *Winzler*, 681 F.3d at 1209. After litigation began, Toyota announced a nationwide recall of those vehicles to fix that part; the recall took place "under the auspices of the National Traffic and Motor Vehicle Safety Act," which meant that the National Highway Transportation Safety Administration oversaw the recall effort and obligated Toyota to notify owners of the defect and replace and/or repair the parts for free. *Id*. The Tenth Circuit reasoned that a court may decline to hear such a case under the prudential mootness doctrine because, "[b]y filing documents with [the National Highway Traffic Safety Administration] notifying it of a defect, [the car manufacturer] set

17

into motion the great grinding gears of a statutorily mandated and administratively overseen national recall process." *Id.* at 1211. Although the government was not directly involved in the lawsuit, the government was sufficiently involved in the recall effort that the plaintiff had "a remedial commitment from our coordinate branches all the same." *Id.*

Notably, the plaintiff in *Wintzler* only sought equitable relief, and the *Wintzler* court did not suggest that the remedial efforts of the National Highway Traffic Safety Administration would moot a claim for damages. *Id.* at 1209 ("[O]ur plaintiff seeks equitable relief already being provided by coordinate branches of government and she offers no reason why the courts should duplicate those efforts."). As such, the Court declines to dismiss the case as prudentially moot because Plaintiffs seek relief in the form of damages incurred during the time they owned a defective vehicle.

Defendant also argues that Plaintiffs lack standing to assert claims on behalf of putative Class members in other states because "none allege any injury outside the states where they purchased their vehicles or plead viable claims under the laws of all 50 states." (ECF No. 21, PageID.636.) Meanwhile, Plaintiff contends that this argument is

18

"premature" and should be addressed as a Rule 23 matter. (ECF No. 35, PageID.843.)

"[W]hether a named plaintiff in an automobile defect action has Article III standing to assert claims arising under different state laws on behalf of a nationwide class 'is a difficult and complicated question that has sharply divided courts in this district and across the country.'" *Fisher v. FCA US LLC*, 712 F. Supp. 3d 930, 938 (E.D. Mich. 2024) (quoting *Johnson v. FCA US LLC*, 555 F. Supp. 3d 488, 494 (E.D. Mich. 2021)). However, "[a]ll five circuits to have addressed the question hold that a plaintiff's ability to assert state law claims on behalf of out-of-state class members is a matter of representation under Rule 23, not a question of Article III standing." *Droesser v. Ford Motor Co.*, No. 19-CV-12365, 2023 WL 2746792, at \*6 (E.D. Mich. Mar. 31, 2023) (citing *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011); *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 51 (1st Cir. 2018); *Mayor of Baltimore v. Actelion Pharm. Ltd.*, 995 F.3d 123, 134 (4th Cir. 2021); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 21-10335, 2022 WL 16729170 at \*6 (11th Cir. Nov. 7, 2022)); *see also Fisher*, 712 F. Supp. 3d at 938.

Defendant does not acknowledge these decisions, nor does it present a basis for the Court to reject the holding of five Circuit courts.[2] Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b)(1) is denied.

### III. Rule 12(b)(6)

#### A. Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[2] In fact, Defendant's entire argument regarding Plaintiffs' standing to assert claims under other states' laws is only three sentences long. While the Court understands that Defendant faces page limitations, "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

alleged." *Id.* A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

### B. Analysis

#### i. *Express Warranty Claims*

Defendant argues that Plaintiffs' claims for breach of express warranty, Counts I, V, VIII, XIII, and XIX, should be dismissed for failure to state a claim. (ECF No. 21, PageID.636.)

It is undisputed that the express warranty at issue is Defendant's Basic Limited Warranty, which "covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation." (ECF No. 19, PageID.475.) The Basic Limited Warranty begins on either "[t]he date you take delivery of the vehicle" or "[t]he date when the vehicle was first put into service," and Clutch Discs (the part at issue) are covered by the Basic Limited Warranty "only for 12 months or for 12,000 miles on the odometer, whichever occurs first." (*Id.*)

Defendant first argues that Plaintiffs' express warranty claims must be dismissed because Plaintiffs allege a design defect in the Class Vehicles, and the Basic Limited Warranty only covers manufacturing defects. (ECF No. 21, PageID.636–637.) Defendant argues that the allegations that the Class Vehicles contained the same defect over multiple years, and that "the relevant components are all 'the same,'" are "hallmarks of a design defect claim." (*Id.* at PageID.637.)

The Court declines to dismiss Plaintiffs' express warranty claims on this basis. The amended complaint alleges that the Clutch Defect could be the result of a design or manufacturing defect. (ECF No. 19, PageID.414 ("a malfunctioning or incorrectly designed or manufactured clutch"); *see also id.* at PageID.477 ("FCA's failure to assemble and manufacture the clutch in such a way as to prevent manifestation of the Clutch Defect during normal operation is a defect in materials, workmanship, factory preparation, as well as design.").) Further, the Court is not convinced that the Clutch Defect could only occur due to a design error.[3] *See Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 288

---

[3] In support of its design defect theory, Defendant cites its recall documents—which are referenced in Plaintiffs' amended complaint—which describe the Clutch Defect as a "design specification" issue, not "a part defect." (ECF No. 21, PageID.637–

(E.D. Mich. 2021) ("[J]ust because Plaintiffs plead allegations involving a class of vehicles does not preclude the possibility of a manufacturing defect."); *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 673 (E.D. Mich. 2020).

Defendant further argues that Plaintiffs "have failed to plead the facts necessary to show any breach" of the Basic Limited Warranty because the Basic Limited Warranty "simply promised a 'repair' of certain defects upon presentment and request at a dealership during the warranty period" and "Plaintiffs plead nothing remotely resembling any breach of this promise, and there are no allegations of any request for a repair was refused." (ECF No. 21, PageID.638.) The Court declines to dismiss these claims on this basis. Plaintiffs allege that Defendant did not and could not provide the benefit of a repair because their experience with the recalls demonstrated that they are ineffective. (*See* ECF No. 19, PageID.417–421; ECF Nos. 44, 44-1, 44-3.)[4]

---

638; *see also* ECF No. 24, PageID.661.) At this stage of the litigation, Defendant's own description of the Clutch Defect does not preclude the possibility that it is a manufacturing defect.

[4] Furthermore, Plaintiffs allege that the Third Recall "further confirms that there remains no question that the Clutch Defects continue to pose a serious safety risk to occupants and others," despite the previous two recalls, and that the estimated

Defendant also states that any failure to present a vehicle for a repair at a dealership "precludes any express warranty claim." (ECF No. 36, PageID.868.) Here, Schaffner, Myslivecek, and Chow do not allege that they received the recall within 12 months of acquiring the vehicle.[5] In fact, Schaffner does not allege that he ever received the recall, and Myslivecek and Chow present declarations stating that they received the recall well after the expiration of the Basic Limited Warranty's 12-month duration.[6] Plaintiffs argue that the failure to present their vehicle to a

---

percentage of class vehicles with the Clutch Defect is "100%." (ECF No. 19, PageID.435–436.) Even though Busovicki, for example, does not allege or otherwise state that he continues to have issues with his vehicle after the recall was performed, the documentation related to the Third Recall indicates that the fix he received was not effective. (*See* ECF No. 19, PageID.434–435.)

[5] The Court notes that Paul Caputo and Michael Busovicki both allege that they received the recall within 12 months of purchasing their vehicles. (ECF No. 19, PageID.419–420 (alleging that Paul Caputo purchased his 2021 Jeep Gladiator in October 2020 and had a recall performed in April 2021); *id.* at PageID.418–419 (alleging that Michael Busovicki purchased his 2021 Jeep Wrangler Rubicon in December 2020 and had a recall performed in April 2021).)

[6] On December 16, 2024, Plaintiffs filed a "notice of supplemental information" that included declarations of Dean Myslivecek and Christopher Chow. (ECF No. 44.) Myslivecek purchased his vehicle in November 2020, (ECF No. 19, PageID.417), and states in his declaration that he had a recall performed on his vehicle on September 15, 2024. (ECF No. 44-1, PageID.1107.) Chow purchased his vehicle in May 2019 (ECF No. 19, PageID.420), and states in his declaration that he "replaced the clutch in my vehicle at my own expense" and that his reimbursement request to FCA was denied. (ECF No. 44-2, PageID.1112–1113.) Myslivecek and Chow's declarations

dealership should not be fatal to an express warranty claim because "futile actions are not required." (ECF No. 35, PageID.846.)

"Courts in this district and elsewhere have acknowledged the possibility of a futility exception to an express warranty's presentment requirement." *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 975 (E.D. Mich. 2022) (citing *Gregorio*, 522 F. Supp. 3d at 289; *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 989 (N.D. Cal. 2014); *Benkle v. Ford Motor Co.*, No. SA CV 16–1569–DOC (JCGX), 2017 WL 9486154, at *12 (C.D. Cal. Dec. 22, 2017)).

Here, these Plaintiffs sufficiently alleges that it would have been futile to present their vehicles to a dealership because "there is a defect common to all class vehicles," Defendant "was consistently unable to fix the defect," and "any repairs or mitigation that [Defendant] offered were insufficient." *Id.* at 976 (citing *Gregorio*, 522 F. Supp. 3d at 289). Plaintiff states that all Class Vehicles contain the Clutch Defect (ECF No. 19, PageID.435), Defendant was not able to fix the Clutch Defect (*see, e.g.*, ECF No. 19, PageID.417–418; 420; ECF No. 44-1, 44-3), and that the

---

demonstrate that they received the recall outside the Basic Limited Warranty period because their repairs or recalls were performed over 12 months after acquiring their vehicle.

25

Second and Third Recall confirmed issues with the Clutch Defect that affected 100% of Class Vehicles. (ECF No. 19, PageID.431–435.) These representations are sufficient to allege futility at this time because Plaintiffs allege that "there is a defect common to all class vehicles; [ ] [Defendant] was consistently unable to fix the defect; and [ ] any repairs or mitigation that [Defendant] offered were insufficient." *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d at 976.

For these reasons, Plaintiffs' express warranty claims will remain in the case.

### ii. Implied Warranty Claims

Defendant contends that Plaintiffs did not sufficiently allege that their vehicles were not in merchantable condition and, as such, Plaintiffs' implied warranty claims, Counts IV, IX, XIV, and XX, fail. (ECF No. 21, PageID.639.)

"[A] warranty that the good shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." U.C.C. § 2-314.[7] With regard to the sale of automobiles, "the

---

[7] The Court notes that Defendant makes no argument regarding the implied warranty of merchantability tied to any specific state doctrine on that subject. (*See*

decisions on point in implied warranty cases concerning defective cars have recognized that merchantability implies not only that a vehicle can provide transportation, but that it can do so in a reasonably safe and controlled manner." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1015 (E.D. Mich. 2017); *see also Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1276 (E.D. Mich. 2021).

Defendant argues that Plaintiffs' failure to allege that they stopped driving their vehicles, or that their own vehicles are unfit for driving, means that the alleged Clutch Defect does not breach the implied warranty of merchantability. (ECF No. 21, PageID.639); *see also Sheris v. Nissan N. Am. Inc.*, No. CIV. 07-2516 (WHW), 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) (finding that the plaintiff's implied warranty claim is insufficient because the plaintiff was able to drive his car for two years without issues). But Plaintiffs sufficiently allege that the Clutch Defect presents a hazard that affects the vehicles' ability to operate in a "reasonably safe" manner. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d at 1015. Plaintiffs state that their vehicles "are

---

ECF No. 21, PageID.639.) The Court, therefore, addresses the New York, California, New Jersey, and Michigan doctrines together.

unsafe and unreliable due to the Clutch Defect," which "can not only cause the vehicle to lose power in traffic or other dangerous situations, but also in many instances can cause the vehicle to catch fire or result in dangerous debris being ejected." (ECF No. 35, PageID.848 (quoting ECF No. 19, PageID.414–415).) The recall documents allegedly state that the Clutch Defect "may result in cracks or holes in the transmission case, allowing heated debris to be expelled from the transmission case," which could lead to a fire or "generation of road debris, which may be a hazard to other drivers." (ECF No. 19, PageID.432–433.) Although Plaintiffs' own vehicles have not put them in harm's way, according to the second and third recall documents, 100% of the Class Vehicles are estimated to have the Clutch Defect. (*Id.* at PageID.432, 435.) Additionally, Schaffner, Myslivecek, Chow, and Caputo allege that their vehicles emitted smoke or a "burning smell" at some point. (*Id.* at PageID.417–421.) Finally, Plaintiffs include in the amended complaint a plethora of complaints to the NHTSA regarding Class Vehicles that allegedly involve the Clutch Defect, some of which involve vehicles catching fire. (*Id.* at PageID.443–470.)

At this stage of the case, these allegations are sufficient to show that the vehicles are not merchantable. Although Plaintiffs have not experienced a life-threatening situation due to the Clutch Defect, the allegations of other reports, alongside Schaffner, Myslivecek, Chow, and Caputo's experiences of their vehicle emitting smoke or smells, and the fact that an estimated 100% of Class Vehicles contain the Clutch Defect, when combined support an inference that the Class Vehicles do not provide transportation in a reasonably safe and reliable manner. *See Francis*, 504 F. Supp. 3d at 676 (holding that pleadings of reports of dangerous incidents with the plaintiffs' own gearing issues are sufficient to establish that vehicles are not safe or reliable). The Court finds especially relevant that an estimated 100% of Class Vehicles contain the Clutch Defect.

Defendant also challenges the New York Plaintiffs' claims on the basis of privity, as "Plaintiffs did not purchase their vehicles directly from FCA US, but rather third-party dealerships. (ECF No. 21, PageID.640.) "New York law allows claims of implied warranty to be brought only by those in privity with the named defendant." *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 309 (N.D.N.Y. 2019) (quoting *Jackson v. Eddy's LI*

*RV Center, Inc.*, 845 F. Supp. 2d 523, 530 (E.D.N.Y. 2012)). Here, Plaintiffs allege that privity is not required because "Plaintiffs are intended third-party beneficiaries of contracts between FCA and its dealers, and specifically, of FCA's implied warranties" and because "the Class Vehicles are dangerous instrumentalities due to the aforementioned defect." (ECF No. 19, PageID.486.)

New York law "recognizes . . . a third-party exception [to privity], which requires 'a fact-intensive exercise not amenable to resolution at the pleading stage." *Gant v. Ford Motor Co.*, 517 F. Supp. 3d 707, 717 (E.D. Mich. 2021) (quoting *Francis*, 504 F. Supp. 3d at 676–77)). The Court, therefore, declines to dismiss the New York Plaintiffs' claims on the basis of privity at this time.

### iii. Fraud Claims

Defendant challenges Plaintiffs' fraud claims, Counts II, III, VI, X, XII, XV, XVII, XVIII, and XXI. (ECF No. 21, PageID.640.)

30

First, Defendant believes Plaintiffs failed to sufficiently allege any omissions under Federal Rule of Civil Procedure 8(a) and, as to all fraud claims except Counts XVII and XVIII, under Rule 9(b).[8] (*Id.*)

Rule 8(a) requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 9(b) imposes a heightened pleading requirement for claims alleging fraud," and requires the plaintiff to "specify 'the who, what, when, where, and how' of the alleged omission." *Smith v. Gen. Motors LLC*, 988 F.3d 873, 884 (6th Cir. 2021) (quoting *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012)). "Specifically, [the plaintiff] must plead: (1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [Defendant] obtained as a consequence of the alleged fraud." *Republic Bank & Tr. Co.*, 683 F.3d at 256. Plaintiffs must "state with particularity" factual allegations

---

[8] To the extent Plaintiffs bring fraud claims based on affirmative misrepresentations, those claims are dismissed. (*See* ECF No. 21, PageID.641–641; ECF No. 35, PageID.849 ("To be clear, Plaintiffs' fraud-based claims are based on FCA's omissions").)

supporting the assertion that Defendant was aware of the Clutch Defect. *Smith*, 988 F.3d at 884.

Defendant first asserts that Plaintiffs do not allege that Defendant was aware of the Clutch Defect before the sale of the vehicles. (ECF No. 21, PageID.642.) According to the amended complaint, Defendant must have been aware of the Clutch Defect by the time Plaintiffs purchased their vehicles because of "pre-production testing" and "pre-production design failure mode and analysis data," "production design failure mode and analysis data," "consumer complaints" to FCA dealers, to Defendant, on "Jeep enthusiast websites," and to the NHTSA, "aggregate warranty data," "testing conducted by FCA in response to consumer complaints," and "repair order and parts data received by FCA from its network of dealers and suppliers." (ECF No. 19, PageID.436–441.)

Determining the exact timing of Defendant's awareness of the Clutch Defect is difficult at this stage of the case. The Court finds that the allegations are sufficient to demonstrate Defendant's awareness of the Clutch Defect by the time Myslivecek, Caputo, Busovicki, and Schaffner purchased their vehicles between November 2020 and January 2021. (*Id.* at PageID.417–421.) As set forth in the amended complaint,

FCA and their Vehicle Safety and Regulatory Compliance organization opened a formal investigation regarding the Clutch Defect in certain Class Vehicles on November 27, 2019, and, on February 25, 2020, decided to conduct a voluntary safety recall of certain Class Vehicles due to issues with the clutch pressure plate (*Id.* at PageID.429.) Given that the "clutches and engines are the same or substantially the same in all Class Vehicles" and the Clutch Defect is alleged to be uniformly present among all Class Vehicles, (*Id.* at PageID.413), these allegations are sufficient to demonstrate that Defendant was on notice of the Clutch Defect by the time Myslivecek, Caputo,[9] Busovicki, and Schaffner purchased their vehicles.

---

[9] Defendant argues that Caputo's New Jersey Consumer Fraud Act ("NJCFA") claim (Count XII) has "an even-higher knowledge standard . . . which requires facts showing FCA US knew '***with certainty***' his particular vehicle would fail." (ECF No. 21, PageID.642 (citing *Alban v. BMW of N. Am.*, No. CIV. 09-5398 DRD, 2011 WL 900114, at *11 (D.N.J. Mar. 15, 2011)).)

The *Alban* opinion concerned a defect with BMW vehicles involving an unpleasant odor that manifested several years after the plaintiff's warranty had expired. *Alban*, 2011 WL 900114, at *2. A claim under the NJCFA cannot be sustained if the allegedly defective product was covered by a warranty and the defect may, but has not, manifested itself until after the expiration of the warranty period. *Id.* at *11 (quoting *Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99 (2006)). According to *Alban*, in the event that the claim involves a defect that occurred after the warranty expired, the plaintiff "must sufficiently allege that the defendant manufacturer *knew with certainty* that the product at issue . . . was going to fail." *Id.* (citing *Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 501–02 (D.N.J. 2009)).

Chow, however, purchased his vehicle in May 2019, before the investigation and first recall occurred. (ECF No. 19, PageID.420.) Plaintiffs contend that Defendant was aware of the Clutch Defect at this time because "complaints about the Clutch Defect first appeared in early 2018," (ECF No. 35, PageID.851; *see also* ECF No. 19, PageID.433–444 (providing four examples of complaints from 2018 and early 2019 that were made to the NHTSA)), and that pre-sale testing and data should have put Defendant on notice of the Clutch Defect because the Clutch Defect "does not require extended use to manifest." (ECF No. 35, PageID.853 (citing *Genaw v. Garage Equip. Supply Co.*, 856 F. App'x 23, 28 n.2 (6th Cir. 2021).)

---

*Alban*'s relevance to this case is unclear. Defendant's argument that *Alban*'s "even-higher knowledge standard applies to Caputo's NJCFA claim" (ECF No. 21, PageID.642) is not immediately apparent because neither Plaintiffs' allegations nor Caputo's declaration explains whether Caputo's vehicle displayed symptoms of the Clutch Defect during or after the warranty period. (ECF No. 19, PageID.419–420; ECF No. 44-3, PageID.1115–1116.) Given that Caputo alleges that his vehicle displayed symptoms around six months after he purchased it (ECF No. 19, PageID.419–420), it seems likely that it was within the warranty period. (*Id.* at PageID.474–476.) Further, it is not clear to the Court that New Jersey law requires pleading "with certainty" under these circumstances. *See Maniscalco*, 627 F. Supp. 2d at 502 (predicting that the New Jersey Supreme Court would permit claims regarding defects occurring beyond the warranty period "where a manufacturer or seller of a product knew that its product had a defect which would cause it to fail before its expected useful life"). In short, the Court declines to dismiss the NJCFA claim on this basis.

34

These allegations are insufficient to demonstrate Defendant's knowledge of the Clutch Defect in May 2019. Regarding pre-sale testing and data, Plaintiffs' allegations lack detail regarding any alleged pre-sale testing or data. Without more information, such as "accompanying verification that the tests occurred and revealed a safety defect," *Smith*, 988 F.3d at 885, the Court cannot find that theoretical pre-sale testing and data put Defendant on notice of the Clutch Defect.[10]

Additionally, the consumer complaints do not demonstrate Defendant's knowledge in May 2019. Plaintiffs allege that complaints were made since "2018 at the latest" to the NHTSA (ECF No. 19, PageID.441) and "for many years" (*id.* at PageID.437) on online forums,[11] but there is no indication that the rate of these complaints was so high at the time of Chow's purchase that Defendant must have been aware of the Clutch Defect, or that the complaints were specific and detailed

---

[10] Plaintiffs' reference to *Genaw v. Garage Equip. Supply Co.*, 856 F. App'x 23, 28 n.2 (6th Cir. 2021) is not convincing. The *Genaw* court determined that allegations of pre-production testing were sufficient to demonstrate actual or constructive knowledge for a claim of negligent failure to warn. *Id.* But *Genaw* does not concern fraud and the heightened pleading standards of Rule 9(b) did not apply.

[11] The Court notes that the amended complaint does not contain examples of complaints made before the date of Chow's purchase. (ECF No. 19, PageID.437–440.)

enough to make Defendant aware of the Clutch Defect. *Smith*, 988 F.3d at 885 (determining that consumer complaints were insufficient to demonstrate the defendant's knowledge because "nothing shows that the complaints about GM's cracked dashboards were 'frequent enough that they were not lost in a sea of complaints and repairs amassing by the dozens each day'"). Thus, Chow's fraud claims (Counts II, III, VI) are dismissed.

Defendant also challenges Plaintiffs' state law fraudulent concealment claims, Counts VI, X, XV, and XXI, on the basis that these claims are barred by the economic loss doctrine because Plaintiffs "admit their vehicles were sold with written warranties." (ECF No. 21, PageID.643.).

Defendant's economic loss doctrine argument is underdeveloped. "The economic loss doctrine states that purchasers of defective products should not be able to recover in tort if their damages are purely economic." *Est. of Pilgrim v. Gen. Motors LLC*, 596 F. Supp. 3d 808, 827 (E.D. Mich. 2022). Although "[e]ach state recognizes a version of this doctrine with its own unique contours and exceptions," *id.*, Defendant's

argument lumps together Michigan, New York, and New Jersey law[12] with no explanation on how each state approaches the economic loss doctrine or whether each Plaintiff's claims must be dismissed. Defendant's briefing dedicates a total of two sentences to the economic loss doctrine, which is not sufficient for the Court to understand the contours of Defendant's argument with regard to three different state laws. Further, Defendant does not adequately address Plaintiffs' claim that they bring their fraudulent concealment claims in the alternative under Federal Rule of Civil Procedure 8(d)(3).[13]

Further, numerous courts have declined to dismiss fraudulent concealment claims due to the economic loss doctrine because "the doctrine [is] cabined to bar only actions sounding in negligence and other unintentional torts, not intentional fraud," or "exceptions have been recognized where a defendant deliberately conceals information to induce the plaintiff to conclude a bargain, or to obfuscate product safety

---

[12] Plaintiff's California Fraudulent Concealment claim is dismissed and is not considered here. *See supra.*

[13] Defendant argues that the written warranty does not cover design defects nor guarantees a product without defects. (ECF No. 21, PageID.636–638.) Thus, the written warranty may not apply to Plaintiffs' claims that Defendant misrepresented the true nature of the Class Vehicles.

37

concerns." *Francis*, 504 F. Supp. 3d at 687 (collecting cases); *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 706 F. Supp. 3d 746, 766 (E.D. Mich. 2023) (collecting cases); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 591 (E.D. Mich. 2018). Here, Plaintiffs allege fraudulent concealment, which is an intentional tort and, as such, falls under these exceptions.

Finally, Defendant challenges the New York Plaintiffs' claims under New York General Business Laws §§ 349 and 350, which are Counts XVII and XVIII, because they are based on an "unmanifested defect" and no "actual injury" was alleged due to the free recall. (ECF No. 21, PageID.643–644.)

> N.Y. GBL Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GBL Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." To successfully assert a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, [ ] 944 N.Y.S.2d 452, 452 [ ] (2012) (internal quotation marks omitted).

*Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)

It is undisputed that §§ 349 and 350 require an allegation of a manifested defect. *See In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d at 968. Here, Schaffner alleges that he "experienced symptoms of the Clutch Defect when the engine compartment filled with smoke and a burning smell coming from the transmission" and "noticed a burning smell at times when 4-wheel-drive is engaged." (ECF No. 19, PageID.421.) Additionally, Myslivecek "is still experiencing significant problems with his clutch," which "routinely slips and/or fails to engage when he runs his vehicle in reverse, and he regularly must press the clutch entirely to the floor of his vehicle before the transmission will engage." (*Id.* at PageID.418.)[14] It is clear that both New York Plaintiffs allege that the Clutch Defect manifested in their vehicles. Furthermore, the New York Plaintiffs allege an actual injury. Not only was Myslivecek charged a $250 deductible for his 2023 repair (*id.*), but Myslivecek and Schaffner have sufficiently alleged that Defendant is unable to repair their vehicles. *See supra* III.B.i.

---

[14] Myslivecek also states in his declaration that he has "smelled [his] clutch burning on multiple occasions while driving under normal conditions" and that his vehicle notified him that his clutch was overheating and that he should reduce "Clutch Use." (ECF No. 44-1, PageID.1107–1108.)

Thus, Defendant's motion to dismiss is granted as to Counts II, III, and VI, and denied as to the other Counts.

### iv.    *Unjust Enrichment Claims*

Defendant challenges Plaintiffs' claims for unjust enrichment, Counts VII, XI, XVI, and XXII. (ECF No. 21, PageID.644.)

According to Defendant, Plaintiffs' unjust enrichment claims are not viable because "a written warranty exists to define the parties' rights/expectations." (*Id.*) In Michigan, California, New Jersey, and New York, if a written contract between the parties exists and pertains to the same subject matter as an unjust enrichment claim, the plaintiff cannot bring an unjust enrichment claim. *See Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 824, 833 (E.D. Mich. 2014); *Kahn v. FCA US LLC*, No. 2:19-CV-00127-SVW-SS, 2019 WL 3955386, at *8 (C.D. Cal. Aug. 2, 2019); *Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 526 (S.D.N.Y. 2017); *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 734 (D.N.J. 2008).

"There is no dispute the subject of [Plaintiffs'] claims (*i.e.*, each of their vehicles) is governed by a written warranty . . . ." (ECF No. 36, PageID.870.)  Further, "[c]ourts have regularly dismissed unjust

enrichment claims filed against automobile manufacturers where a valid, enforceable express warranty covers the same subject matter as plaintiffs' unjust enrichment claims." *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 634 (E.D. Mich. 2019).

However, according to Defendant, Plaintiffs' claims may be based on a design defect, and the written warranty does not cover the "subject matter" of design defects. (ECF No. 21, PageID.636–637); *see also supra* n.13. "[A]lternative pleading of contract and quasi-contract claims routinely is permitted, and particularly is appropriate, where the defendant explicitly disclaims the availability of a contractual remedy," *Francis*, 504 F. Supp. 3d at 694, as it has done here by asserting that Plaintiffs' claims related to a design defect have no contractual remedy. *See GEM Indus., Inc. v. PA Sols.*, No. 2:22-CV-13037-TGB-CI, 2025 WL 2689018, at *6 (E.D. Mich. Sept. 19, 2025) (permitting unjust enrichment claim to survive summary judgment when contract did not cover "subject matter" of claim); *ABC Paving Co. v. Washtenaw Cnty. Rd. Comm'n*, No. 276703, 2008 WL 4605929, at *9 (Mich. Ct. App. Oct. 2, 2008) (determining that unjust enrichment claim should not continue because the contract explicitly discusses the subject matter); *In re LIBOR-Based*

41

*Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 483 (S.D.N.Y. 2014) (rejecting the defendants' "broad interpretation" of "what constitutes the 'subject matter' of this dispute" and finding that the written contract did not "clearly cover" "the subject matter now at issue").

Defendant also avers that "Plaintiffs admit they purchased their vehicles from third-party dealerships, meaning they conveyed no ***direct*** benefit on FCA US" and thus "precludes any viable unjust enrichment claim." (ECF No. 21, PageID.644.) But "courts dismiss such claims only where the plaintiffs fail to allege facts showing that they have bestowed some sort of benefit upon the defendant that the defendant ought not keep in equity and good conscience." *Francis*, 504 F. Supp. 3d at 693 (quoting *Monostable Elec. Gearshift*, 280 F. Supp. 3d at 1008–09); *see also In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 869, 897 (E.D. Mich. 2014) ("The "critical inquiry [i]s not whether the benefit is conferred directly on the defendant, but whether the plaintiff can establish the relationship between his detriment and the defendant's benefit 'flow from the challenged conduct.'" (quoting *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 669 (E.D. Mich. 2000))); *Great W. Ins. Co. v. Graham*, No. 18-CV-6249 (VSB), 2020 WL 3415026, at *32 (S.D.N.Y. June 22,

2020) ("An unjust enrichment claim . . . does not require a 'direct relationship between plaintiff and defendant,' nor does it 'matter whether the benefit [was] directly or indirectly conveyed[.]'" (quoting *Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60, 69 (2d Cir. 2018)); *Kaiser Found. Health Plan, Inc. v. Tiero LLC*, No. CV 23-9191-KS, 2024 WL 5466643, at *9 (C.D. Cal. June 20, 2024) ("[T]the elements of an unjust enrichment claim do not require a direct benefit flowing from the aggrieved party to the party who was unjustly enriched."); *DeFrank v. Samsung Elecs. Am., Inc.*, No. CV 19-21401 (KM) (JBC), 2020 WL 6269277, at *25 (D.N.J. Oct. 26, 2020).

As such, Plaintiffs' unjust enrichment claim may continue as an alternative claim only with regard to the design defect issue.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion to dismiss. The following claims are dismissed: Count II, III, and VI.

Plaintiffs are ORDERED to file an amended complaint that comports with this order and incorporates the allegations in their declarations (ECF No. 44) within 14 days.

IT IS SO ORDERED.

Dated: May 13, 2026                    s/Judith E. Levy
Ann Arbor, Michigan                    JUDITH E. LEVY
                                       United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 13, 2026.

                                       s/William Barkholz
                                       WILLIAM BARKHOLZ
                                       Case Manager